**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

| | |
|---|---|
| **LWD PRP GROUP,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 5:12-CV-00127-TBR** |
| **v.** ) | |
| ) | |
| **ACF INDUSTRIES LLC, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT**
**RELOCATABLE CONFINEMENT FACILITIES' MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

Plaintiff LWD PRP Group filed this cause pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA"), to recover the LWD PRP Group's past and future response costs for response activities at the LWD Incinerator Site. The LWD Group seeks contribution under CERCLA from numerous potentially responsible parties ("PRPs"), including Defendant Relocatable Confinement Facilities, Inc., captioned in the above matter as "Relocatable Confinement Facilities" (hereinafter "RCF").

The CEO of RCF, Kenneth Holloway, filed a Motion to Dismiss on December 21, 2012. The Court should deny RCF's Motion to Dismiss because (1) the Motion to Dismiss was not filed by an attorney on behalf of the Defendant corporation, and (2) RCF is potentially liable as a successor for the waste stream under at least a continuity of business enterprise theory.

## BACKGROUND AND FACTS

The LWD Incinerator Site, located on the western portion of the LWD, Inc. Superfund Site at 2745 Industrial Boulevard in Calvert City, Marshall County, Kentucky, operated under the Resource Conservation and Recovery Act ("RCRA") from approximately 1980 through mid-2004.  Under RCRA, individuals who generate or transport hazardous waste must notify EPA or an authorized State agency of their waste disposal activities, and obtain a U.S. EPA Identification Number (hereinafter "EPA ID No.").  Each Defendant in the instant case generated and/or transported waste containing hazardous substances disposed of at the Incinerator Site, identified by the EPA ID Nos. issued to each Defendant (hereinafter "Manifested Waste").  The LWD Incinerator Site operators then compiled the RCRA hazardous waste manifests, which list the waste shipments sent to the LWD Incinerator Site, into annual reports submitted to EPA (hereinafter "Annual Reports").  EPA then compiled the Annual Reports into a database identifying nexus PRPs and their respective EPA ID Nos. and waste amounts (hereinafter "LWD Database").

EPA conducted initial removal action efforts at the LWD Incinerator Site between March 2006 and February 2007.  In March 2007, 58 PRPs, including members of the LWD PRP Group, entered into an Administrative Settlement Agreement and Order on Consent for Removal Action with EPA to conduct remaining removal action activities at the LWD Incinerator Site.  As a result, and based on other response costs activities conducted and to be conducted by EPA, the State of Kentucky, and the LWD PRP Group, the LWD PRP Group has and continues to incur millions of dollars in past and future response costs at the LWD Incinerator Site.

Before filing the instant lawsuit, the LWD PRP Group sent demands/settlement offers to PRPs who EPA has classified as *de minimis* PRPs, which are those PRPs who contributed less

than 400,000 pounds of waste materials to the LWD Incinerator Site.  By letter dated June 8, 2012, the LWD PRP Group sent a demand and *de minimis* settlement offer to RCF.  The LWD PRP Group based its offer on EPA Annual Report Pages taken from waste manifests, attributing 28,765 pounds of waste to "Johnson Fire Doors," with the EPA ID No. "ILD010224355."

RCF did not respond to the initial offer letter, nor did it execute the Waiver of Service form dated and sent on September 18, 2012.  On December 3, 2012, Mr. Holloway was formally served, and executed the Return of Service.  Plaintiff's counsel electronically filed the Return of Service on January 9, 2013 (Doc. No. 523).   On December 13, 2012, Mr. Holloway called counsel for Plaintiff, Gary Justis, and informed him that the formal service of process was the "first notice" he had received of the CERCLA case involving RCF, and that RCF would refuse the settlement offer.   To date, no attorney has contacted counsel for Plaintiff or entered appearance on behalf of RCF.  Instead, the CEO of RCF, Kenneth Holloway, filed a Motion to Dismiss on December 21, 2012 (Doc. No. 440).  In the Motion to Dismiss, Mr. Holloway states that he founded RCF in 2011, that he has had no dealings with "the entity sued herein as Johnson Fire Door[s]," and that RCF was not properly served.  Def. Mot. at 1-2.

EPA and public records demonstrate that RCF is a potential successor to the entity that originally generated the waste stream, Johnson Fire Proof Door Company, Inc., (hereinafter "Johnson Fire Proof Door").  RCF was formed in 1978 from a partnership between two security companies: Johnson Fire Proof Door, established in 1955, and Universal Security Products, Inc. (hereinafter "Universal Security"), established in 1970.[1]  After incorporating, RCF continued to specialize in the same security business that its predecessors did – comprehensive security

---

[1] *See generally*: http://www.ilsos.gov/corporatellc/CorporateLlcControllerl; http://kepler.sos.ca.gov/cbs.aspx

solutions and improving prison facilities – and has conducted projects at the same sites as its predecessors.

RCF aims to reduce overcrowding in jails by providing a range of services from site selection, to floor planning, to manufacturing temporary facilities such as modular jails.[2]  RCF is located in California; Kenneth Holloway is listed as its CEO.[3]  The California Secretary of State lists RCF as an active company that was incorporated on November 1, 2011.[4]  Contrary to Mr. Holloway's Motion to Dismiss, which states that RCF company was formed in 2011, RCF's website page states that RCF was "established in 1978."[5]  RCF's website contains an "Accomplishments" page, which states that, "RCF has constructed over 1,000 prison beds all across the United States.  We have a proven track record of success in projects large and small."[6]  The page also lists RCF's projects in Broward County, Florida; Yuma, Arizona; Philadelphia, Pennsylvania; the state of New Jersey; and Canada.[7]  A 1985 Chicago Tribune article lists facilities where Johnson Fire Proof Door (along with other companies) conducted similar projects, in Broward County, Florida, Yuma, Arizona; Philadelphia, Pennsylvania; the state of New Jersey; and Canada – the same locations where RCF completed similar projects.[8]

RCF's "About Us" page currently states that, "RCF was formed by two companies who have specialized in the security field …"[9]  The copyright date on the website is 2013.  However, in anticipation of litigation Plaintiff's counsel had previously prepared a summary of research

---

[2] *See*: http://www.modularjailsandprisons.com/Services.
[3] *See*: http://www.modularjailsandprisons.com/Contact; *See generally:* http://kepler.sos.ca.gov/cbs.aspx.
[4] *See generally:* http://kepler.sos.ca.gov/cbs.aspx.
[5] *See*: http://www.modularjailsandprisons.com/About
[6] *See:* http://www.modularjailsandprisons.com/Accomplishments.
[7] *Id.*
[8] *See*: http://articles.chicagotribune.com/1985-07-21/news/8502170402_1_lake-county-jail-modular-jail-lake-michigan.
[9] The full text reads, "[e]stablished in 1978, RCF was formed by two companies who have specialized in the security field.  RCF maintains major manufacturing and assembly plants in both the West and Midwest, and the company is fully bonded, based on our financial strength and proven track record."  *See:* http://www.modularjailsandprisons.com/About.

compiled on RCF on or before May 2012, that cites a statement on RCF's website that it was formed by two companies: "Johnson Fire Proof Door Co." and "Universal Security Products." Both Johnson Fire Proof Door (located in Illinois) and Universal Security Products (located in California) were owned by Norman Johnson and dissolved on or around 1994, and both were engaged in the business of providing security solutions for prison facilities, as outlined below. Although it appears that RCF's website has now been updated in an attempt to obscure the names of the two entities that originally formed RCF, additional facts, when construed in the light most favorable to the Plaintiff, demonstrate that RCF completed similar projects, in the same locations, of the same nature on or about the same time as the waste stream was generated by Johnson Fire Proof Door, and it did so in conjunction with the individual(s) who owned and operated Johnson Fire Proof Door.

The EPA ID No. for "Johnson Fire Doors" is attributable to Johnson Fire Proof Door Company, Inc., an entity owned by Norman H. Johnson that was located in Chicago, IL, and dissolved in 1994 following Mr. Johnson's death.[10] Public records show that Mr. Johnson owned at least two additional companies associated with RCF: Johnson Fire Proof Door, Inc. and Universal Security Products.  Prior to his death, Mr. Johnson gave two interviews where he discussed modular jails as a solution to the problem of prison overcrowding.  A Chicago Tribune article dated July 21, 1985, refers to a modular jail created from a partnership between "Johnson Fireproof Door Co., Rosemont, and California-based Universal Security Products."[11]  The article states that "[t]he biggest jail made by Johnson Fireproof [Door] holds 400 inmates in Broward

---

[10] A Chicago Tribune article dated December 6, 1993 states that, "Norman H. Johnson, 59, chairmen of the board of a Lake Bluff company that manufactured fireproof doors, died Thursday in the University of Chicago Hospitals." See http://articles.chicagotribune.com/1993-12-06/news/9312060102_1_university-of-chicago-hospitals-scottish-rite-cathedral-fireproof.

[11] See: http://articles.chicagotribune.com/1985-07-21/news/8502170402_1_lake-county-jail-modular-jail-lake-michigan.

County Fla., said company President Norman Johnson."[12]   A second Chicago Tribune dated

November 26, 1988, cites Norman Johnson as the "chief executive" of Relocatable Confinement

Facilities, a firm in Lake Bluff, Illinois that built portable jails, including a 400-bed facility in

Broward County, Florida.[13]   A review of RCF's website reveals that RCF provided a total of

approximately 400 beds in the course of two projects it conducted in Broward County, Florida.

## STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court construes the

Complaint in the light most favorable to the Plaintiff, accepting all factual allegations in the

Complaint as true, and drawing all reasonable inferences in Plaintiff's favor.   *Gunesekara v.*

*Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).   Dismissal is inappropriate unless it appears beyond

doubt that the Plaintiff can prove no set of facts that would entitle it to relief.   *Ziegler v. IBP Hog*

*Market, Inc., 249 F.3d 509, 512 (6th Cir. 2001*).

## ARGUMENT

It is well settled law that a corporation can only be represented by a licensed attorney.

*United States v. 9.19 Acres of Land, More or Less, in Marquette County, Mich.*, 416 F.2d 1244,

1245 (6th Cir. 1969).   A corporation is "an artificial entity that can only act through agents, and

cannot proceed *pro se*."   *Jones v. Niagara Frontier Transp. Auth.*, 722 F.2d 20, 22 (2d Cir.

1983).   In the instant case, no attorney has entered an appearance on behalf of the corporation

RCF to date.   The case docket lists Mr. Holloway as a *pro se* litigant and as such, he is

unauthorized to file any pleadings on behalf of any corporation.   Further, while Mr. Holloway

claims that he was not served properly because the Complaint contained missing pages, he

---

[12] *See*: http://articles.chicagotribune.com/1985-07-21/news/8502170402_1_lake-county-jail-modular-jail-lake-michigan.
[13] *See also:* http://articles.chicagotribune.com/1988-11-26/news/8802190674_1_modular-jail-overcrowding-portable.

executed the Return of Service, and then verbally acknowledged that this formal service was his first notice of the lawsuit.  Even if the Complaint that Mr. Holloway accepted service of did not contain the full pages, this omission did not unduly prejudice Mr. Holloway, and does not preclude the LWD PRP Group's effective constructive service of process on RCF.

However, if the Court chooses to consider RCF's Motion to Dismiss on its merits despite these flaws, the facts, when viewed in the light most favorable to the Plaintiff, demonstrate that RCF is a potential successor to Johnson Fire Proof Door under the "continuity of business enterprise" theory of corporate successor liability under CERCLA.  Courts have consistently held successor corporations liable for CERCLA claims.  *Anspec Co. V. Johnson Controls, Inc.*, 922 F.2d 1240, 1247 (6th Cir. 1991) (holding that a surviving corporation succeeds liabilities of former corporations under CERCLA, consistent with the plain reading of the Act and its legislative purposes).  Traditional principles of corporate law dictate that an asset purchaser avoids liability of its predecessor unless one of four generally recognized exceptions apply: (1) the successor explicitly or implicitly agrees to assume such liabilities, (2) the transaction is a *de facto* merger, (3) the successor is "merely continuing the corporation's business," or (4) the transaction was fraudulent.  *Gould, Inc. v. A & M Battery & Tire Serv.*, 950 F. Supp. 653, 656 (M.D. Pa. 1997).  Here, viewing the facts in the light most favorable to the Plaintiff, at a minimum the third exception applies because RCF has merely continued the business of Johnson Fire Proof Door.  Courts have also expanded the third test into a "substantial continuity" or "continuity of enterprise test," and have considered the following factors when determining successor liability: retention of similar managing personnel, employees, physical location, retention of similar assets, production of the same product, etc.  *Id.*  The purpose of this

expanded theory is to "preclude CERCLA-responsible parties from using corporate formalities to escape liability." *Id.* at 657.

Almost all of the factors that aid in demonstrating continuity of business enterprise are present here.  RCF continues to produce similar products as its corporate predecessor responsible for the waste stream (security solutions).  On its website, RCF holds itself out as a successor to Johnson Fire Proof Door by stating that it was formed from two companies specializing in security, and that it was "established" in 1978 – well before its incorporation, which suggests that it was doing business a different corporate name or entity.  These public records, taken together, demonstrate that Mr. Johnson not only presided over the two companies that formed RCF, but also owned one other company with the name RCF, and that these businesses have continued operation under the current RCF for which Mr. Holloway now serves as CEO.

Additionally another strong indicator of continuity is "incorporation of the seller's age into slogans like, 'serving our customers since 1949.'" *Elf Atochem N. Am. v. United States*, 908 F. Supp. 275, 282 (E.D. Pa. 1995).  RCF's website states that it was formed in 1978, and boasts in three different places of its proven "track record" as the "most experienced modular prison builder in America." [14]  Further, RCF's website states that it is now the only "existing" corporation producing modular jails. [15]  RCF's incorporation of its age and reference to its predecessor corporations demonstrates that RCF has merely continued the business of Johnson Fire Proof Door.  Furthermore, following the dissolution of Johnson Fire Proof Door and Universal Security Products in 1994, RCF appears to be the only existing corporation in the business of modular jails – a slogan it uses to persuade customers of its longevity and credibility. The above facts, when taken together and construed in the Plaintiff's favor satisfy the "continuity

---

[14] *See*: http://www.modularjailsandprisons.com; http://www.modularjailsandprisons.com/About; http://www.modularjailsandprisons.com/Accomplishments

[15] *See*: http://www.modularjailsandprisons.com/About.

of business enterprise" theory factors, and should lead the Court to deny the Motion to Dismiss. To conclude otherwise would allow RCF to use corporate formalities to avoid CERCLA liability.

### CONCLUSION

For the foregoing reasons, Plaintiff LWD PRP Group respectfully requests that this Court enter an appropriate Order denying Defendant Relocatable Confinement Facilities' Motion to Dismiss, and for such other and any further relief as the Court deems just and appropriate under the circumstances.

Dated:  January 15, 2013                      Respectfully submitted,

/s/ Ambereen Shaffie
Ambereen Shaffie                    admitted *pro hac vice*
Gary D. Justis                         admitted *pro hac vice*
THE JUSTIS LAW FIRM LLC
5251 W. 116th Place, Suite 200
Leawood, KS  66211-7820
Telephone:  (913) 998-6100
Facsimile:  (913) 998-6101
Email:  gjustis@justislawfirm.com
Email:  ashaffie@justislawfirm.com

and

W. Fletcher McMurry Schrock   (Ky. Bar# 62283)
MCMURRY & LIVINGSTON, PLLC
333 Broadway, 7th Floor
P.O. Box 1700
Paducah, Kentucky  42002-1700
Telephone:  (270) 443-6511
Facsimile:  (270) 443-6548
Email:  fletch@ml-lawfirm.com

ATTORNEYS FOR PLAINTIFF LWD PRP GROUP

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2013 a true and correct copy of the foregoing Response to Defendant Relocatable Confinement Facilities' Motion to Dismiss was served on Kenneth Holloway, CEO of Relocatable Confinement Facilities, Inc., in this matter by means of U.S.P.S. postage prepaid mail, and was served electronically on Kenneth Holloway, CEO of Relocatable Confinement Facilities, Inc. via email.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's Electronic Case Filing System.

Kenneth Holloway, CEO
Relocatable Confinement Facilities, Inc.
1175 Weyand Way
Dixon, CA  95620
kenjholloway@aol.com

/s/ Ambereen Shaffie
Ambereen Shaffie