

VIA EMAIL SUBMITTAL ONLY

May 20, 2013

U.S. Environmental Protection Agency
Region 4
Superfund Division
61 Forsyth Street, SW
Atlanta, Georgia 30303
Attn: Paula V. Painter

Re:     LWD, Inc. Superfund Site; Calvert City, Marshall County, Kentucky; Notice of
        Settlement

        Comments on Proposed 122(h) CERCLA Settlement

Dear Ms. Painter:

Please accept the following comments concerning the proposed 112(h) CERCLA Settlement relating to the LWD, Inc. Superfund Site (the "Site"), notice of which was published in the Federal Register on April 19, 2013.  These comments are submitted on behalf of 70 companies representing the interests of approximately 98 alleged generators at the Site that have formed a joint defense group to defend against claims asserted against them relating to the site (the "JDG").

It has been a long-standing policy of US EPA to "encourage more, early, and expedited settlements, and reduce the transaction costs of all parties …."[1]  We strongly support such efforts in relation to the Site.  The following comments are submitted in such spirit.

1.      *A Large Number of PRPs Wishing to Participate in the Pending Settlement Have Been Excluded from Doing So.*

As EPA is aware, in February 2013, the JDG members submitted to the agency a settlement offer to resolve their potential liability for EPA past costs.  The offer was substantially motivated by the agency's decision to deal exclusively with the so-called LWD PRP Group, which had brought or asserted claims relating to the Site unrelated to the specific matter of EPA's past costs.[2]  In urging the agency to deal justly with the JDG, our February 2013 offer letter made the following points:

---

[1] *Streamlined Approach for Settlements With DeMinimis Waste Contributors under CERCLA Section 122(g)(1)(A) (OSWER Directive #9834.7-1D, July 30, 1993).*
[2] This action is pending in the United States District Court of the Western District of Kentucky and is styled LWD PRP Group v. ACF Industries, LLC, et al, Civil Action No. 5:12CV-127-M.



**Vertellus Specialties Inc.**
900 Lanidex Plaza, Suite 250
Parsippany, NJ  07054
tmescvage@vertellus.com
**Phone.** 973-515-8611  **Fax.** 973-515-9898 www.vertellus.com

May 20, 2013
P a g e  | **2**



- The JDG members long had an expectation of directly settling with the agency concerning its past costs relating to the Site. The tolling agreements JDG members executed with US EPA were in contemplation of participating directly in and funding the agency's request for reimbursement of its past costs. JDG members also executed tolling agreements with the LWD PRP Group with the same expectation.

- In the spring of 2012, prior LWD PRP Group counsel at King & Spalding informed the JDG members of the imminence of the US EPA past cost settlement in which each JDG member could, and was expected to, participate. Contrary to those prior representations, it later became a deliberate intention of the LWD PRP Group and its current counsel Gary Justis to exclude the JDG members from participating in the pending EPA past cost settlement unless the JDG members also paid overstated demands that would give rise to a windfall on the part of the LWD PRP Group and its new counsel.

- Effecting the proposed settlement between the JDG and the agency was practicable and in the public interest. Concluding the proposed settlement with the JDG need not disrupt the agency's pending settlement with the LWD PRP Group.

- A settlement directly with the JDG members presented no unreasonable burden to the US EPA. The JDG members constituted themselves as a group expressly for the purpose of negotiating a simple, fair, and cost-effective resolution of their liability at the Site.

While our recent discussion with EPA Regional Counsel indicates that the agency is now willing to negotiate and conclude a settlement with the JDG members, the unnecessary failure to do so as part of or in conjunction with the pending proposed settlement has needlessly increased the parties' transaction costs in a manner contrary to agency policy. By failing to date to engage directly in settlement discussions with the JDG concerning the agency's past costs, the agency has, perhaps unintentionally, given support to the LWD PRP Group's attempt to recover unrelated costs and counsel fees at the expense of expeditious resolution of claims concerning the Site.

2.      *We strongly support the inclusion of express claim waivers by the Settling Parties against de micromis, de minimis and ability to pay parties and urge the Agency to timely complete such settlements.*

Paragraph 26 and 28 of the proposed 112(h) settlement provide that the Settling Parties (of whom the LWD PRP Group is part) expressly "agree not to assert any claims and to waive all claims or causes of action (including but not limited to claims or causes of action under Section 107(a) and 113 of CERCLA) that they may have for all matters relating to the Site" with respect to de micromis, de minimis and ability to pay parties. We strongly support the inclusion of such terms in the proposed 122(h) settlement.

In particular, the agency must implement its policy regarding de minimis settlement with respect to the Site in a fair and consistent manner. Section 122(g)(1) of CERCLA provides that the agency "as



**Vertellus Specialties Inc.**
900 Lanidex Plaza, Suite 250
Parsippany, NJ  07054
tmcsevage@vertellus.com
Phone.973-515-8611 Fax.973-515-9898 www.vertellus.com



promptly as possible" shall seek to reach a "final" settlement with de minimis PRPs.  *See Interim Guidance on Settlement with De Minimis Waste Contributors under Section 122(g) of SARA (June 19, 1987).* Many of JDG members have an alleged waste-in volume that is <1% of total waste, which has been the cut-off for many de minimis settlements implemented by the agency to date under its existing guidance.  *See Methodologies for Implementation of CERCLA Section 122(g)(1)(A) De Minimis Waste Contributor Settlements (OSWER Dir. 9834.7-1B, Dec. 20, 1989)* (noting de minimis settlements have been approved using up to 2.0% of total waste).

EPA policy regarding such settlements is directed precisely at the circumstances presented at the Site, where the plaintiff LWD PRP Group has engaged counsel on a contingency fee basis who has sued parties for whom the transaction cost of defense far exceeds such party's liability exposure. This has led to opportunism and a drive for windfall recovery at the expense of fairness, while thwarting the agency's stated goal of promoting expedient settlement.

Many remaining PRPs meet the criteria for de minimis settlement.  We take the inclusion of paragraph 28 as an expression of the agency's intent to process such settlements.  We look forward to engaging with the agency to expeditiously resolve these past cost claims.

3.      *The Settling Federal Entities appear to be overpaying in settlement of the Settling Parties' claim.*

It is noted that the proposed 112(h) settlement goes beyond settlement of EPA's claim for its past response costs as it also includes settlement by Settling Federal Agencies of the Settling Parties' past Response Costs.  The proposed settlement requires payment by the Settling Federal Entities to the Settling Parties of $247,044.32.  However, the full amount of the claim asserted by the Settling Parties is not disclosed nor is any justification for the proposed settlement amount offered.  It is presumed, however, that the claim relates to costs incurred by certain (and not all) of the Settling Parties as respondents to a 2007 Administrative Settlement and Administrative Order on Consent for Removal Action (the "2007 ASAOC").

The agency should be advised that the limitation period for the Settling Parties to bring a claim for such costs, against the Settling Federal Agencies or any other party, has long ago expired.[3]  As the agency is aware, the 2007 ASAOC has an effective date of March 1, 2007.[4]  It has long been the position of the United State Department of Justice that parties situated as the Settling Parties are entitled only to a CERCLA Section 113(f) claim for contribution.  *See Attached Memorandum of the United States filed in ITT Industries, Inc. v. Borgwarner, Inc. et al.,* Case No. 1:05-CV-00674 (S.D.Mich.).

Section 113(g)(3) of CERCLA sets forth a single statute of limitations applicable to all such actions for contribution.  Specifically, it provides that:

---

[3] This is doubly so if the Settling Federal Agencies never entered into a tolling agreement with the Settling Parties, of which no mention is made in the proposed 122(h) settlement.

[4] Paragraph 4c of the proposed settlement observes that "on February 28, 2007, a group of fifty-eight (58) potentially responsible parties (the "LWD Work Group") entered into an Administrative Settlement Agreement …," however, the effective date of such Agreement is March 1, 2007.

**Vertellus Specialties Inc.**
900 Lanidex Plaza, Suite 250
Parsippany, NJ 07054
tmesevage@vertellus.com
Phone.973-515-8611 Fax.973-515-9898 www.vertellus.com



May 20, 2013
P a g e | **4**



No action for contribution for any response costs or damages may be commenced more than 3 years after –
(A)     the date of judgment in any action under this chapter for recovery of such costs or damages, or
(B)     The date of an administrative order under section [122(g)] of this title (relating to de minimis settlements) or [122(h)] of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.
42 U.S.C. § 9613(g)(3).

The Supreme Court of the United States has confirmed that this statute provides the appropriate statute of limitations for all contribution actions, noting that "Section 113(g)(3)… provides two corresponding 3-year limitations periods for contribution actions, one beginning at the date of judgment, § 113(g)(3)(A), and one beginning at the date of settlement, § 113(g)(3)(B)." *Cooper Industries, Inc. v. Avial Services, Inc.*, 543 U.S. 157, 167 (2004).

In this case, the "date of settlement" was the Effective Date of the 2007 ASAOC – March 1, 2007. As a result, the Settling Parties' claim against the Settling Federal Entities for contribution under Section 113(f)(3)(B) expired on March 1, 2010.  Given the available information, it would appear there is no justification for the Settling Federal Entities to be making a payment to the Settling Parties given any action against those parties is clearly barred by the applicable statute of limitations.

Respectfully submitted,

Thomas E. Mesevage

Attachment



**Vertellus Specialties Inc.**
900 Landex Plaza, Suite 250
Parsippany, NJ  07054
tmesevage@vertellus.com
**Phone.**973-515-8611**Fax.**973-515-9898www.vertellus.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ITT INDUSTRIES, INC.,

        Plaintiff,

v.

BORGWARNER, INC., et al.,

        Defendants.

_____/

Case No.: 1:05-cv-00674

Hon. Robert Holmes Bell
U.S. District Judge


**MEMORANDUM OF THE UNITED STATES AS AMICUS CURIAE
IN SUPPORT OF THE BRONSON DEFENDANTS' MOTION FOR DISMISSAL
OF ITT'S CLAIM FOR COST RECOVERY INVOLVING THE NBIA SITE**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

INTEREST OF THE UNITED STATES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT:  ITT IS NOT ENTITLED TO PURSUE ITS CLAIM
FOR THE NBIA DECREE COSTS SEPARATELY UNDER § 107
OF CERCLA.  ITT HAD ONLY A CLAIM FOR THESE COSTS
PURSUANT TO § 113(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

A     The Plain Statutory Language of §113(f) Provided ITT
      with a Cause of Action Here. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

B.    Prior to <u>ARC</u> and <u>Cooper</u>, the Circuit Courts Uniformly Held
      that Claims Between PRPs Were for Contribution and Must Be
      Brought Pursuant to § 113(f). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C.    ARC Holds Only That a PRP That Had Neither Been Subject to a
      § 106 or 107 Action or Settled with the Government Has a § 107 Action. . . . . . . . . . .10

D.    ITT's Argument that All Claims for Costs for PRP Work Performed
      May Be Brought under § 107 Alone Misapplies ARC, Ignores the Plain
      Language of § 113(f), and Subverts Congressional Intent. . . . . . . . . . . . . . . . . . . . .13

      1.    The Supreme Court Distinguished §§ 107 and 113 Actions Based on
            their Different Procedural Criteria and Not Based Merely on Whether
            Costs are "Incurred" by a PRP or "Reimbursed" to Another Party. . . . . . . . . . . 13

      2.    ITT's Approach Ignores the Plain Language of § 113(f). . . . . . . . . . . . . . . . . 18

      3.    ITT's Approach Eviscerates Critical Incentives and Provisions
            Congress Enacted in § 113. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

E.    Recent Decisions Confirm that ARC has Not Overruled Precedents that
      Parties That Meet the Terms of § 113(f) Must Use § 113(f). . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

i

## INTRODUCTION

The United States submits this amicus curiae memorandum in support of the Bronson

Defendants' Motion for Dismissal of ITT's Claim for Cost Recovery Involving the NBIA Site,

and specifically to set forth the United States' views concerning the Supreme Court's decision in

United States v. Atlantic Research Corp. ("ARC"), 551 U.S. ___ , 127 S. Ct. 2331 (2007)

("ARC"), and its impact on ITT's claims in this action.

ITT brought this action under the Comprehensive Environmental Response,

Compensation, and Liability Act, 42 U.S.C. 9601 et seq. ("CERCLA") to recover costs incurred

while investigating and addressing hazardous conditions at two sites in Bronson, Michigan. ITT

incurred approximately $1.6 million in costs at the "NBIA Site" pursuant to a federal consent

decree ("NBIA Decree) entered in March 1999. ITT incurred an additional approximately $2

million in costs investigating contamination at the second site, the "NBFF Site," pursuant to an

Administrative Order by Consent (the "NBFF AOC"). ITT Indus., Inc. v. BorgWarner, Inc.

("ITT"), 506 F.3d 452, 454-55 (6th Cir. 2007).

ITT sued various other potentially responsible parties ("PRPs"), including the Bronson

Defendants, and asserted two separate CERCLA claims to recover response costs incurred under

the NBIA Decree and NBFF AOC – one under Section 107(a)(4)(B)[1] and one under Section

113(f). The district court dismissed both of these claims. Id. at 455-56.

ITT appealed. After briefing on the issues was completed, the Supreme Court issued its

---

[1] Claims are brought under different subsections of Section 107(a) depending on whether a party is a private party or the government. Claims by the United States, States and Indian tribes are brought under Section 107(a)(4)(A); claims by private parties are brought pursuant to Section 107(a)(4)(B). Compare 42 U.S.C. § 9607(a)(4)(A) with (a)(4)(B). Because this brief concerns claims brought by private PRPs, this brief will generally use the shorthand "Section 107" when referring to a Section 107(a)(4)(B) claim or cause of action and will specifically reference Section 107(a)(4)(A) when referring to that subsection.

decision in ARC.  Prior to ARC, the law had been in the Sixth Circuit and others that a PRP

could not sue another PRP solely under Section 107 of CERCLA, but rather was limited to

bringing a claim for contribution pursuant to Section 113(f).  See infra § B.  In ARC, as more

fully discussed below, the Supreme Court found that the "any person" language of Section

107(a)(4)(B) was broad enough to authorize suit by a PRP in certain circumstances, and held that

Atlantic Research, which was performing work in the absence of a government enforcement

action or settlement and did not meet the preconditions for suit set forth in Section 113(f)(1) or

(f)(3)(B), could maintain an action under Section 107(a)(4)(B).  ARC, 127 S. Ct. at 2336.

As to the claim for contribution under Section 113(f), the Sixth Circuit concluded that

ITT's action for costs pertaining to the NBIA Decree was time-barred.  ITT, 506 F.3d at 459.

With respect to costs pertaining to the NBFF AOC, the court concluded that ITT could not seek

contribution because the AOC was not a qualifying settlement under Section 113(f)(3)(B).[2]  ITT,

506 F.3d at 459-61.

As to the Section 107 claim, the Court of Appeals acknowledged that after ARC, a PRP

may now state a claim for relief under Section 107, but it noted that  "[t]o maintain the vitality of

§ 113(f), . . . PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have

entered into a judicially or administratively approved settlement must seek contribution under §

113(f)."  506 F.3d at 458 (emphasis added), citing ARC, 127 S. Ct. at 2338.  However, the court

remanded the Section 107 claim in its entirety, including for costs pertaining to the  NBIA

Decree, for further consideration in light of ARC, but expressed "no opinion as to how Plaintiff's

cost recovery action ultimately should be resolved."  506 F.3d at 458.

---

[2] See infra note 22.

2

As set forth below, it is the United States' position that PRPs who have been subject to a civil action pursuant to Section 106 or 107 or who have entered into a judicially or administratively approved settlement (both of which have occurred here with respect to the NBIA Decree) may recover costs only pursuant to Section 113(f), and thus, that ITT's Section 107 claim for the NBIA Decree costs should be dismissed.

## INTEREST OF THE UNITED STATES

The United States, primarily through the U.S. Environmental Protection Agency ("EPA"), administers the program for the cleanup of hazardous waste disposal sites under CERCLA, commonly known as the "Superfund" program. Accordingly, the United States has a substantial interest in assuring that CERCLA is interpreted in a way that promotes the protection of public health and the environment through the efficient and effective cleanup of hazardous waste sites. In addition, some United States agencies may also be PRPs in CERCLA actions. Thus, the United States, from both the enforcement and defensive perspectives, has an interest in ensuring that CERCLA is interpreted in a manner that promotes settlements and ensures the equitable allocation of response costs among PRPs as Congress intended in enacting Section 113. ITT's argument that it may avoid the requirements of Section 113 in recovering costs it incurred performing work required by the NBIA Decree is of critical interest to the United States because it disrupts the carefully crafted scheme that Congress set up in CERCLA Section 113.

3

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 10 of 34 PageID #:
Case 1:05-cv-00674-RHB   Doc #154-2   Filed 09/09/08   Page 7 of 31   Page ID#3278
4259

## **ARGUMENT**

### ITT IS NOT ENTITLED TO PURSUE ITS CLAIM FOR THE NBIA DECREE COSTS SEPARATELY UNDER § 107 OF CERCLA. ITT HAD ONLY A CLAIM FOR THESE COSTS PURSUANT TO § 113(f).

ITT argues that <u>ARC</u> provides a "bright line distinction" that governs when a PRP's action is to be brought under Section 113(f) and when it is properly asserted under Section 107. It asserts that Section 113(f) is for parties who reimburse costs incurred by others while Section 107 is for PRPs who perform the response actions themselves. ITT Corporation's Response in Opposition to the Borgwarner Defendants' Motion for Summary Judgment ("ITT Brief") at 16-17. This simplistic position is contrary to the plain language and congressional intent behind Section 113(f) and is inconsistent with the law that developed prior to <u>ARC</u> and that remains controlling here. <u>ARC</u> held merely that a PRP that had not been sued under CERCLA or settled its liability for response actions or costs, and thus did not meet the terms of Section 113(f)(1) or (f)(3)(B), could bring an action under Section 107. A careful reading of the opinion, as well as the weight of the authority since <u>ARC</u>, further support limiting ITT, which has both been sued and settled concerning the NBIA Site, to a claim for contribution pursuant to Section 113(f). A ruling that ITT had an action pursuant to Section 113(f) and may not avoid its strictures by bringing a claim solely under Section 107 is consistent with the Supreme Court's opinion, gives meaning to the separate procedural aspects of Sections 107 and 113, and promotes and protects settlements with the government as intended by the statutory framework of Section 113.

   A.    The Plain Statutory Language of §113(f) Provided ITT with a Cause of Action Here.

Congress enacted Section 113(f) in 1986 as part of the SARA amendments to "clarif[y] and confirm[ ]" the right of one PRP to seek contribution from another. <u>See, e.g.</u>, H.R. Rep. No.

99-253, pt. I, at 79 (1985), reprinted i 1986 U.S.C.C.A.N. 2861.  First, Section 113(f)(1) of

CERCLA provides:

> Any person may seek contribution from any other person who is liable or
> potentially liable under section 9607(a) of this title, during or following any civil
> action under section 9606 of this title or under section 9607(a) of this title.

42 U.S.C. § 9613(f)(1).  Second, Section 113(f)(3)(B) provides:

> [a] person who has resolved its liability to the United States for some or all of a
> response action or for some or all of the costs of such action in an administrative
> or judicially approved settlement may seek contribution from any person who is
> not party to a settlement referred to in [section 113(f)(2), 42 U.S.C. 9613(f)(2)].

42 U.S.C. 9613(f)(3)(B).

Thus, by CERCLA's explicit terms, ITT had a claim for contribution for the costs of the

work it performed as well as the costs it reimbursed pursuant to the NBIA Decree under two

distinct subparts of Section 113.  First, ITT had a claim under Section 113(f)(1) because it has

been sued by the United States under Sections 106 and 107 of CERCLA.  ITT also had a claim

under Section 113(f)(3)(B) because it has resolved its liability to the United States for

performance of response actions at the NBIA Site and for various response costs related to the

NBIA Site in a judicial consent decree.[3]  As discussed below in §§ C-E, ARC does not change

---

[3] See also United Technologies Corp. v. Browning-Ferris Industries, Inc., 33 F.3d 96, 102
(1st Cir. 1994), discussed infra § D.2.

The fact that ITT does not now have a Section 113(f) cause of action because it allowed
the statute of limitations to lapse, ITT, 506 F.3d at 459, should not compel a different result here.
At the time it entered into the decree, the prevailing law in the Sixth Circuit and others, see
Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp. 153 F.3d 344, 356 (6th Cir. 1998) and
cases cited infra note 7, was that a PRP could only bring a contribution claim governed by
Section 113(f), which claim is governed by the applicable statute of limitations provided by
CERCLA Section 113(g).  The statute of limitations is a fundamental prerequisite to any lawsuit.
ITT should have brought its claim timely.  It should not be able to avoid the finality intended by
Congress in Section 113(g) by bringing its claim under Section 107, when that claim otherwise

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 12 of 34 PageID #:
Case 1:05-cv-00674-RHB   Doc #154-2 Filed 09/09/08   Page 9 of 31   Page ID#3280
4261

this result.

> B.     Prior to <u>ARC</u> and <u>Cooper</u>, the Circuit Courts Uniformly Held that Claims
>        <u>Between PRPs Were for Contribution and Must Be Brought Pursuant to § 113(f).</u>

Courts have widely recognized that in enacting the Superfund Amendments and

Reauthorization Act ("SARA"), which amended CERCLA in 1986, Congress carefully crafted

Section 113 to encourage PRPs promptly to settle their liability with the United States or a state.

<u>See generally</u>, <u>United States v. Cannons Engineering Corp.</u>, 899 F.2d 79 (1st Cir. 1990).

Settlement helps ensure prompt and effective cleanups of sites contaminated by hazardous

substances and provides a means of replenishing the Superfund, which funds EPA cleanups.

EPA has long demonstrated its preference for streamlining and minimizing CERCLA litigation

by entry into settlements. <u>See</u> Interim CERCLA Settlement Policy, 50 Fed. Reg. 5034 (Feb. 5,

1985). Congress specifically endorsed that preference in SARA, which codified procedures for

reaching settlements. Section 122 provides "Whenever practicable... the President shall act to

facilitate agreements under this section... in order to expedite effective remedial actions and

minimize litigation."  42 U.S.C. § 9622. <u>See also</u> H.R. Rep. 99-253, pt. I, at 101 (1985),

<u>reprinted in</u> 1986 U.S.C.C.A.N. 2883 ("Negotiated private party actions are essential to an

effective program for cleanup of the nation's hazardous waste sites and it is the intent of this

Committee to encourage private party cleanup at all sites.").

---

would not be allowed, as shown herein.  (Hereafter, for ease of reading, the brief will not
continue to reiterate that "ITT <u>had</u> a cause of action under Section 113" or that a "person who
has, <u>or had</u>, a cause of action under Section 113 . . . ."  Rather, this brief will discuss the
relationship between Sections 107 and 113 as Congress intended they should apply – that is, to a
person who has not missed the statute of limitations and still has the claim Congress intended
under Section 113(f).)

CERCLA Section 113(f)(3)(B) promotes settlement by providing PRPs with the right to

bring contribution claims against other PRPs if they resolve their liability to the United States or

a state in an administrative or judicially approved settlement.  See, e.g., Matter of Reading Co.,

115 F.3d 1111, 1119 (3rd Cir. 1997).  At the same time, Section 113(f)(2) immunizes settling

parties from liability for contribution for the matters addressed in the settlement.[4]  Congress

specifically intended that the contribution bar would encourage settlements by providing PRPs

with a measure of finality in return for their willingness to settle.  See H.R. Rep. No. 99-253, pt.

I, reprinted in 1986 U.S.C.C.A.N. 2835, 2862.  Thus, a PRP that resolves its liability to the

United States or a State in an administrative or judicially approved settlement receives two

advantages under Section 113(f).  It receives from Section 113(f)(2) protection against claims for

contribution by other PRPs, and it may bring its own claim for contribution against non-settling

PRPs pursuant to Section 113(f)(3)(B).

Section 113 contains other important limitations applicable to claims for contribution.

For example, Congress made sure that any contribution action brought by a party that had

resolved its liability to the United States was subordinate to the right of the United States to

pursue other liable parties (including entering into settlements that provide contribution

protection), thereby ensuring that the United States is made whole before contribution plaintiffs

seek their recovery.  42 U.S.C. § 9613(f)(3)(C).  Congress also adopted a separate, generally

shorter, statute of limitations (with different triggering events) applicable to claims for

---

[4]  Section 113(f)(2) provides that "[a] person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement."  42 U.S.C. 9613(f)(2).

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 14 of 34 PageID #:
4263
Case 1:05-cv-00674-RHB  Doc #154-2  Filed 09/09/08  Page 11 of 31   Page ID#3282

contribution.  42 U.S.C. § 9613(g)(3).[5]

After the enactment of Section 113(f), PRPs began to try to assert their claims for

contribution under Section 107, in an effort to evade Section 113's congressionally-mandated

constraints, such as contribution protection and the generally more restrictive statute of

limitations discussed above.[6]  As the Eighth Circuit explained in reviewing the development of

the circuit law concerning Sections 107 and 113(f) in Atlantic Research Corp. v. United States

("ARC I"), 459 F.3d 827, 832 (8th Cir. 2006):  "[T]o prevent § 107 from swallowing § 113,

courts began directing traffic, . . . steer[ing] liable parties away from § 107 and requir[ing] them

to use § 113."  For example, in finding that "[c]laims by PRPs . . . seeking costs from other PRPs

are necessarily actions for contribution, and are therefore governed by the mechanisms set forth

in § 113(f)," Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 350 (6th Cir.

1998), the Sixth Circuit recognized that "any other reading would render § 113(f)'s contribution

protection provision meaningless," an "absurd" result, which Congress could not have intended.

Id. at 352 n.11.  Similarly, the First Circuit eschewed a reading of CERCLA that would allow

PRPs to choose to bring a "cost recovery" action under Section 107 instead of a contribution

action under Section 113(f) since this would "completely swallow" the more restrictive statute of

limitations provided in Section 113(g)(3) for contribution actions.  United Techs. Corp. v.

---

[5]  Compare 42 U.S.C. § 9613(g)(2)(B) (initial action for recovery of costs under Section
107 must be commenced, e.g., within 6 years after initiation of construction of remedial action)
with 42 U.S.C. § 9613(g)(3) (action for contribution must be commenced within 3 years after,
e.g., date of judgment).

[6]  Indeed, this appears to be exactly what ITT is attempting to do.  Having failed to bring
its action under Section 113(f) within the time period provided by Congress, ITT is now trying to
take advantage of the longer statute of limitations that would apply to "an initial action for
recovery of the costs" of a remedial action under Section 113(g)(2)(B).  42 U.S.C. 9613(g)(2)(B).

Browning-Ferris Ind., 33 F.3d 96, 101 (1st Cir. 1994). The court refused to "follow a course that ineluctably produces judicial nullification of an entire SARA subsection." Id. See also, e.g., New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1119-24 (3rd Cir. 1997) ("Potentially responsible persons would quickly abandon section 113 in favor of the substantially more generous provisions of section 107. We will not read section 107 so broadly that section 113 ceases to have any meaningful application."); United States v. Colorado & E. R.R., 50 F.3d 1534, 1536 (10th Cir. 1995) (if PRPs were allowed to recover expenses under § 107, § 113(f) "would be rendered meaningless."); Bedford Affiliates v. Sills, 156 F.3d 416, 424 (2d Cir. 1998) ("Were we to permit a [PRP] to elect recovery under either § 107(a) or § 113(f)(1), § 113(f)(1) would be rendered meaningless . . . . A recovering liable party would readily abandon a § 113(f)(1) suit in favor of the substantially more generous provisions of § 107(a).").

Ultimately, prior to Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004) (discussed infra § C), the circuit courts, including the Sixth Circuit Court of Appeals, uniformly concluded that a PRP cannot rely on Section 107 alone to seek cost recovery from another PRP; rather, a party that is subject to CERCLA liability is limited to seeking contribution from other jointly liable parties in accordance with the requirements of Section 113.[7] As discussed below §§

---

[7] See e.g., Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 353, 356 (6th Cir. 1998); Redwing Carriers v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996); Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 935 (8th Cir. 1995); Bedford Affiliates v. Sills, 156 F.3d 416, 423-425 (2d Cir. 1998); Pneumo Abex Corp. v. High Point, Thomasville & Denton R.R., 142 F.3d 769, 776 (4th Cir. 1998); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1301 (9th Cir. 1997); New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1121-1123 (3d Cir. 1997); United States v. Colorado & E. R.R., 50 F.3d 1530, 1534-1536 (10th Cir. 1995); United Techs. Corp., 33 F.3d at 103; Akzo Coatings, Inc., v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994); Amoco Oil Co. v. Borden, Inc., 889 F.2d 664 (5th 1989); Dico, Inc. v. Amoco Oil Co., 340 F.3d 525 (8th Cir. 2003).

C, E, <u>ARC</u> does not change this result in the circumstances presented here.

      C.     ARC Holds Only That a PRP That Had Neither Been Subject to a § 106 or
              <u>107 Action Nor Settled with the Government Has a § 107 Action.</u>

      In <u>ARC</u>, the Supreme Court addressed the question whether Section 107 of CERCLA

authorizes suits by PRPs. As discussed directly above, most courts of appeal prior to <u>Cooper</u>

<u>Industries, Inc. v. Aviall Services, Inc.</u>, 543 U.S. 157 (2004) ("<u>Cooper</u>"), held that the only

available CERCLA claim by one PRP against another is a claim for contribution pursuant to

Section 113(f). These courts also assumed, however, that all PRPs claims were brought pursuant

to Section 113(f) regardless of how their claim for contribution arose – that is, whether the PRP

had been sued under Section 106 or 107, settled with the government, been subject to an order

---

      As the case law developed, many circuits, including the Sixth Circuit, found that Sections
107 and 113 work together to provide the contribution remedy in Section 113(f). As the Sixth
Circuit explained, Section 107(a) "establishes the right of parties to seek 'necessary costs of
response,'" the "basis and elements of liability," and defenses, but claims among PRPs are
"necessarily for contribution and are therefore governed by the mechanisms set forth in § 113(f)."
<u>Centerior</u>, 153 F.3d at 350. <u>See also</u>, <u>e.g.</u>, <u>Kalamazoo River Study Group v. Menasha Corp.</u>, 228
F.3d 648 (6th Cir. 2000); <u>Pinal Creek Group</u>, 118 F.3d at 1301-02 (§§ 107 and 113(f) must be
read in conjunction; "while § 107 created the right of contribution, the 'machinery' of § 113
governs and regulates such actions."); <u>Bancamerica Commercial Corp. v. Mosher Steel</u>, 100 F.3d
792, 800 (10th Cir. 1996) ("[A]lthough such cost apportionment actions must be brought under
the rubric of § 113(f), that section does not of itself create any new liabilities. Rather it simply
confirms the right of a person potentially jointly and severally liable under § 107(a) to obtain
contribution from other potentially liable persons."(citations omitted)). These courts, then, did
not recognize a "stand-alone" contribution action, but held that all contribution actions must be
governed by the requirements of Section 113. Some of the circuits, however, viewed them as
providing separate remedies, with Section 107, generally speaking, providing a remedy to the
government and innocent parties and Section 113(f) providing an action to PRPs. <u>See, e.g.</u>,
<u>United Technologies Corp. v. Browning-Ferris Industries Inc.</u>, 33 F.3d 96, 103 (1st Cir. 1994)
("contribution and cost recovery actions are distinct, non-overlapping anodynes," though noting
at n.8 that a person who "spontaneously initiates a cleanup without governmental prodding"
might be able to pursue an implied right of action for contribution under Section 107.); <u>Dico,</u>
<u>Inc.</u>, 340 F.3d at 531.

under Section 106, or performed cleanup in the absence of any of these specific enforcement mechanisms.[8]  In Cooper, the Supreme Court ruled that a person may not bring a claim under Section 113(f)(1) except "during or following" a civil action under Section 106 or 107.  543 U.S. at 165-66.  The Court noted that Section 113(f)(3)(B) provides the other "express avenue[ ]" for contribution under Section 113(f), but to take advantage of this provision a party must have entered into "an administrative or judicially approved settlement that resolves liability to the United States or a State."  Id.  Since Aviall had neither been sued by nor settled with the governments, it did not meet the criteria for a Section 113(f) contribution action.[9]

After Cooper, because Atlantic Research had neither been sued under Section 106 or 107 as required by Section 113(f)(1), or entered into a settlement in accordance with Section 113(f)(3)(B), it had no cause of action for contribution under Section 113(f).  Following applicable Eighth Circuit precedent, the district court also found that it had no claim under Section 107.  ARC I, 459 F.3d at 830, citing Dico, 340 F.3d at 531.

The Eighth Circuit reversed, reasoning that absent a finding that ARC had a Section 107 cause of action for cost recovery, it would have no right to recover any of its cleanup costs from other liable parties, which the Eighth Circuit found would be "contrary to CERCLA's purpose . . . [and an] unjust outcome."  ARC I, 459 F.3d at 837.  Thus, the Eighth Circuit held that

---

[8] See, e.g., Pinal Creek Group, 118 F.3d at 1300-02 (cleanup in the absence of enforcement action); Centerior, 153 F.3d at 351-52 (cleanup pursuant to unilateral administrative order).  See also E.I. DuPont de Nemours and Co. v. U.S., 508 F.3d 126, 132-33 (3rd Cir. 2007) (discussing assumption that all PRPs could sue under Section 113(f) and impact of Cooper); and supra note 7.

[9] The Cooper Court declined to address whether Aviall, as a PRP, could recover costs under Section 107(a)(4)(B), despite the fact that it was itself a PRP under CERCLA.  Id. at 169.

> a liable party may, under appropriate procedural circumstances, bring a cost recovery action under § 107. This right is available to parties who have incurred necessary costs of response, but have neither been sued nor settled their liability under §§ 106 or 107.

Id. at 835. The court stressed, however, that allowing ARC a Section 107 claim would not render Section 113 "meaningless:"

> [L]iable parties which have been subject to §§ 106 or 107 enforcement actions are still required to use § 113, thereby ensuring its continued vitality. But parties such as Atlantic, which have not faced a CERCLA action, and are thereby barred from § 113, retain their access to § 107. This resolution gives life to each of CERCLA's sections, and is consistent with CERCLA's goal of encouraging prompt and voluntary cleanup of contaminated sites.

Id. at 836-37 (citations omitted).

The Supreme Court affirmed the Eighth Circuit. The Court noted that "[t]he dispute centers on what 'other person[s]' may sue under § 107(a)(4)(B)," 127 S. Ct. at 2335, and held that the language covered any person not referenced in Section 107(a)(4)(A), including PRPs. Id. at 2336. But, as even ITT acknowledges, ITT Brief at 18, the Court did not hold that all PRPs have a separate cause of action under Section 107 to recover costs they have spent in cleaning up a site. On the contrary, as discussed further below ¶ D, the Court held merely that a PRP in Atlantic Research's procedural circumstances could bring its claim under Section 107. Id. at 2336, 2339. Unlike ITT, ARC did not have a cause of action for contribution pursuant to Section 113(f)(1) or (f)(3)(B) for its cleanup costs because it was not subject to an enforcement action under Section 106 or 107, and it had not entered into a judicial or administrative settlement for the work. The Court expressly declined to decide whether a stand-alone Section 107 cause of action would be available to PRPs in other situations, including the very situation that presents itself here – that is, where a PRP spends money to clean up a site pursuant to a consent decree

12

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 19 of 34 PageID #:
4268
Case 1:05-cv-00674-RHB   Doc #154-2   Filed 09/09/08   Page 16 of 31   Page ID#3287

following suit under Section 106 or 107. Id. at 2338, n.6. Thus, as discussed further below in §§

D and E, ARC neither decides the issue here nor overrules binding Sixth Circuit precedent on

this issue.

> D.    ITT's Argument that All Claims for Costs for PRP Work Performed May Be
>       Brought under § 107 Alone Misapplies ARC, Ignores the Plain Language of
>       § 113(f), and Subverts Congressional Intent.

ITT argues that after ARC it has a Section 107 action alone and not a Section 113(f)

action for the costs of cleanup under the NBIA Decree. ITT argues that the Supreme Court made

a "bright line distinction" between Section 113(f) actions and Section 107 actions based on

whether a party has performed the work or reimbursed another for performing the work. ITT

Brief at pp. 16-17. ITT's interpretation turns on a hyper-technical approach to categories of costs

that disregards the rest of the Supreme Court's analysis, ignores the language of Section 113(f),

and is inconsistent with the structure of the statute and policies underlying CERCLA (as well as

the body of circuit court precedent that remains in tact today. See §§ B, E.).

> 1.    The Supreme Court Distinguished §§ 107 and 113 Actions Based on their
>       Different Procedural Criteria and Not Based Merely on Whether Costs are
>       "Incurred" by a PRP or "Reimbursed" to Another Party.

The ARC Court's analysis does not limit Section 113(f)'s reach to judgments or

settlements for cost reimbursement, as ITT contends. ITT Brief at p. 17, 18. In determining that

the "any person" language of subparagraph (B) includes PRPs, ARC at 2339, the Court did not

hold, contrary to ITT's assertion, that a separate Section 107 claim "belongs to 'any . . . person'

who incurs necessary costs." ITT Brief at 21. Rather, the Court held only that a person like

ARC, which has performed cleanup not pursuant to an enforcement action or settlement with the

government, and thus who is not in the procedural circumstances required by Section 113(f), has

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 20 of 34 PageID #:
4269
Case 1:05-cv-00674-RHB   Doc #154-2   Filed 09/09/08   Page 17 of 31   Page ID#3288

a cause of action under Section 107.

    As discussed supra § B, prior to ARC and Cooper, the circuits fairly uniformly held that

all claims between PRPs were for contribution and must be brought pursuant to Section 113(f).

In ARC, the Court rejected the notion that every action by a PRP must be brought under Section

113(f). Id. In explaining why Atlantic Research had a cause of action under Section 107, the

Court stated that §§ 107 and 113(f) provide two "clearly distinct" remedies that "complement

each other by providing causes of action to persons in different procedural circumstances."[10]

---

    [10] ITT repeatedly emphasizes the Court's description of the two remedies as "distinct."
ITT Brief at, e.g., pp. 15, 16, 18, 19, n.12, etc.  However, the Court has described these
provisions variously over time.  In Cooper, the Court noted:

> In Key Tronic Corp. v. United States, 511 U.S. 809, 114 S. Ct. 1960, 128 L. Ed.2d 797
> (1994), we observed that §§ 107 and 113 created "similar and somewhat overlapping"
> remedies. Id., at 816, 114 S. Ct. 1960. The cost recovery remedy of § 107(a)(4)(B) and
> the contribution remedy of § 113(f)(1) are similar at a general level in that they both
> allow private parties to recoup costs from other private parties. But the two remedies are
> clearly distinct.

543 U.S. at 163 n.3.  However, the ARC Court specifically cautioned that "We do not suggest
that §§ 107(a)(4)(B) and 113(f) have no overlap."  ARC p. 2338, n.6.

    The Supreme Court did not elucidate its statement that there might be overlap between
Sections 107 and 113, and despite the Court's statements that the remedies were distinct,
footnote 6 leaves open the possibility that there could be overlap in remedies. 127 S. Ct. at 2338
n.6 ("We do not decide whether these compelled costs of response are recoverable under §
113(f), § 107(a), or both.")

    As a practical matter, the remedies under the two provisions cannot be sharply distinct, in
light of the fact that those bringing actions under section 113 must look to section 107 to define
some basic elements of their claim, defenses to liability, and what parties are liable for. See, e.g.,
Centerior, 153 F.3d at 350, and discussion supra note 7.  Likewise, as we explain in this brief,
Section 113 must reciprocally operate to limit the scope of Section 107 remedies in some
circumstances, in order to ensure that the latter provision does not swallow the former. Thus, at a
minimum, some "interdependent construction of the statute," ITT, 506 F.3d at 458, is still
necessary for Section 113(f) to make sense.

ARC, pp. 2338.  The Court said that the "contribution"[11] remedies provided by Section 113(f)(1) and (f)(3)(B) are available to "PRPs with common liability stemming from an action instituted under §106 or §107(a)" or a judicial or administrative settlement that resolves liability to the government for response actions or costs.  In contrast, Section 107 provides a claim to a PRP that has "itself incurred cleanup costs."  ARC p. 2338 and n.5.

ITT latches onto this one phrase for its simplistic "bright line" approach that any person who performs work at a site automatically has an independent Section 107 claim.  However, ITT's interpretation places too much emphasis on the concept of "incur costs" to the exclusion of the rest of the Supreme Court's analysis.  To illustrate the differences between the proper use of a Section 107 vs. Section 113 claim, the Court compared Atlantic Research's situation with a party that had reimbursed costs to satisfy a settlement or court judgment.  The Court explained that the party that had reimbursed costs under a settlement or judgment has an action under Section 113(f), but has not "incurred its *own* costs" and thus cannot pursue a Section 107 action.  In

---

In any event, the extent of any such "overlap" and the extent to which ARC may have abrogated some of the Sixth or other Circuits' analyses, see ITT, 506 F.3d at 458, is irrelevant here.  ITT's claims for response action costs fall within the plain language and procedural criteria of Section 113(f).  Whether this court finds that Sections 113(f) and 107 provide "distinct" remedies, or that they overlap, such that the claim comes under Section 107 but is governed by Section 113, the applicable restrictions of Section 113 should apply.  Even if this Court finds, as ITT appears to argue in the alternative, ITT Brief p. 23, that a PRP may have both a remedy under Section 113(f) and a stand-alone Section 107 claim for some of its costs, consistent with the statutory scheme and policies of Section 113 and the rationale of circuit court precedent, this Court should find that ITT is "still required to use § 113, thereby ensuring its continued vitality." 127 S. Ct. at 2335, quoting ARC I, 459 F.3d at 836-37.

[11]  The Court defined "contribution" in the "traditional sense" as "the 'tortfeasor's right to collect from others responsible for the same tort after the tortfeasor has paid more than his or her proportionate share, the shares being determined as a percentage of fault.'  Black's Law Dictionary, 353 (8th ed. 1999)."  ARC, p. 2337-38.  This is precisely what ITT is seeking to accomplish by its suit here.

contrast, Atlantic Research performed the cleanup in the absence of an action or settlement and

thus had no claim under Section 113(f). Atlantic Research had "incurred its *own* costs" (as

opposed to cleanup costs stemming from a common liability owed to a third party through a

settlement or enforcement action giving rise to a Section 113(f) claim). Id. (emphasis added).

The Court used only these two examples to explain the differences between the two

causes of action, and it specifically declined to address the situation presented here where a PRP

has "sustained expenses [for response action] pursuant to a consent decree following a suit under

§ 106 or § 107(a)." 127 S. Ct. at 2338 n.6.  The Court continued:

> In such a case, the PRP does not incur costs voluntarily but does not reimburse the
> costs of another party.  We do not decide whether these compelled costs of
> response are recoverable under § 113(f), § 107(a), or both.  For our purposes it
> suffices to demonstrate that costs incurred voluntarily are recoverable only by way
> of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a
> legal judgment or settlement are recoverable only under § 113(f).

Id.

Thus, the Court made clear that what distinguished the ARC party from the

reimbursement party was not only that the ARC party was sustaining the costs of doing the work,

but also that it was acting "voluntarily" to perform its "own" work – that is to say, that it was

sustaining these costs in the absence of a government enforcement action or settlement.[12]  A party

---

[12] As quoted above, the Court used the term "voluntarily" in footnote 6 to compare and
contrast a party who is "compelled" to sustain expenses pursuant to a consent decree following a
Section 106 or 107 action from a person who "incurs costs" without the compulsion of a Section
106 or 107 action or settlement.  127 S. Ct. at 2338 n.6.  One court has recently noted that
although the Supreme Court and other courts have used the term "voluntary," what appears to be
the operative consideration is that they have neither been sued under Section 106 or 107, nor
settled within the meaning of Section 113(f)(3)(B), and thus have no cause of action under
Section 113(f).  Appleton Papers Inc. v. George A. Whiting Paper Co., No. 08-C-16, 2008 WL
3891304 *5 (E.D. Wis. Aug. 20, 2008)(discussed further infra § E).  Whatever the importance of
the term "voluntary," the Court expressly did not decide whether a Section 107 cause of action is

that performs the response actions to satisfy a consent decree with EPA is not incurring its "own"

costs – rather, it is sustaining these expenses to extinguish the common liability owed to EPA.[13]

Just as the Court explained that reimbursing costs incurred by others satisfies a common liability

and gives rise to a contribution action, so too does performing work pursuant to a decree or court

order. This is demonstrated by the fact that EPA could itself have performed the entire cleanup

and entered into a Section 107 settlement to recover its response costs. Under the Court's logic,

this settlement would "reimburse" EPA's costs and clearly provide the settlor with a cause of

action under Section 113(f)(3)(B) (and (f)(1) for a judicial settlement following a complaint.). A

PRP's performance of work "owed" to EPA under a settlement should provide the same remedy

to the settlor as the PRP's reimbursement of costs that EPA incurred in performing that same

work. Accordingly, Sections 113(f) provides the same contribution remedy for actions and

settlements involving response action (under Section 106) as it does for actions and settlements

---

available only to "volunteers," and the United States does not address that issue here. In this
case, ITT is not a volunteer, has been sued and settled, has a cause of action that is governed by
the plain language of Section 113(f), and therefore may not bring its action under Section 107
alone.

[13] The Second Circuit in Consolidated Edison Co. of New York, Inc. v. UGI Utilities,
Inc., 423 F.3d 90 (2nd Cir. 2005) explained the distinction this way:

> It may be that when a party expends funds for cleanup solely due to the imposition
> of liability through a final administrative order, it has not, in fact, incurred
> "necessary costs of response" within the meaning of section 107(a). . . . [W]hen a
> party does not conduct its own cleanup, it has not incurred recovery costs. If a
> party expends funds out of obligation under an administrative or court order or
> final judgment, its liability may be "similar to that of a tort feasor's liability for the
> doctor's bills of the injured party. Payment by the tort feasor does not mean it has
> incurred doctor's bills itself.

Id. at 101 (internal quotations and citations omitted).

involving costs (under Section 107).

2.    ITT's Approach Ignores the Plain Language of § 113(f).

Moreover, ITT's argument that <u>ARC</u> provides a separate action under Section 107 to
anyone who performs response action ignores the plain language of both Sections 113(f)(1) and
113(f)(3)(B) and suggests that the Supreme Court *sub silentio* read an entire piece of Section 113
out of the statute.  By allowing a party to seek contribution during or following a Section 106
action, Section 113(f)(1) specifically references the section of CERCLA under which the
government can judicially (or administratively) seek to compel a liable party to conduct response
actions.  Section 113(f)(3)(B) also explicitly provides that a party "who has resolved its liability
for some or all of a response action . . . may seek contribution. . . . ."  Thus, Section 113(f)(3)(B)
provides a right to contribution not only for a settlement for reimbursement of response costs, but
also specifically for settlements that require PRPs to undertake a response action.  As the First
Circuit Court of Appeals noted, given the language of the statute, the argument that response
costs expended by a PRP for cleanup under a consent decree do not fall within the ambit of
Section 113(f)(3)(B) "fails this commonsense test."   <u>United Technologies Corp. v. Browning-
Ferris Industries, Inc.</u>, 33 F.3d 96, 102 (1st Cir. 1994). "The simple reading of this subsection is
that the initial phrase refers to expenses incurred in the course of a liable party's direction of a
site's cleanup while the second phrase refers to reimbursement of cleanup costs incurred under
the government's hegemony."  <u>Id.</u>[14]

---

[14]  ITT argues, in support of its view that all work gives rise to a separate Section 107
action, "[t]here is nothing magical in a consent decree (or the concurrently filed § 107 action
settled by the consent decree) that would transform work-related response costs into
'reimbursement costs.'" ITT Brief at p.16.  There is, however.  A consent decree or complaint (or
an administrative settlement) puts the plaintiff in the "procedural circumstances" outlined by

3.   ITT's Approach Eviscerates Critical Incentives and Provisions Congress
     Enacted in § 113.

ITT's approach would essentially nullify the settlement incentives and other important

provisions that Congress enacted in Section 113.  If PRPs whose claims fall under Section 113

can attempt an end run around contribution protection by bringing a Section 107 action, a strong

incentive for settlement will be eroded.  From the settling party's perspective, the importance of

contribution protection is no different whether the contribution plaintiff has incurred costs

performing work or has reimbursed the United States' costs, and the contribution bar protects

settlors from both kinds of contribution claims.  The legislative history of SARA shows that

Congress intended Section 113(f) to govern all CERCLA claims for contribution, including

claims by parties that perform work.  See H.R. Rep. No. 99-253, pt. I, at 80 (1985), 1986

U.S.C.C.A.N. 2835, 2862 ("Parties who settle for all or part of a cleanup or its costs, or who pay

judgments as a result of litigation, can attempt to recover some portion of their expenses and

obligations in contribution litigation from parties who were not sued in the enforcement action or

who were not parties to the settlement.")(emphasis added).  See also id. at 79, 1986

U.S.C.C.A.N. at 2861 (Section 113 "clarifies and confirms the right of a person held jointly and

severally liable under CERCLA to seek contribution from other potentially liable parties, when

the person believes that it has assumed a share of the cleanup or cost that may be greater than its

equitable share under the circumstances.")(emphasis added); Senate Comm. on Environment and

---

Section 113(f)(1) and/or (f)(3)(B) and brings the claim within the plain language of the remedies
provided by these subsections.  To turn ITT's question around, given the plain language of
Section 113(f)(1), there is no "magic" that changes a claim from one under Section 113(f) when
EPA cleans up a site and sues a PRP under Section 107 to recover its costs, to one under Section
107 when EPA sues that same PRP under Section 106 to compel it to perform the cleanup.

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 26 of 34 PageID #:
4275
Case 1:05-cv-00674-RHB   Doc #154-2   Filed 09/09/08   Page 23 of 31   Page ID#3294

Public Works, Superfund Improvement Act of 1985, at 44, S. Rep. No. 99-11, 99th Cong.

(1985). In United Techs., 33 F.3d at 101, after reviewing the legislative history, the First Circuit

summarized: "These statements show beyond serious question that the drafters intended

contribution, as that term is used in [Section 113], to cover parties' disproportionate payments of

first-instance costs [i.e., costs for performing the work] as well as parties' disproportionate

payments of reimbursed costs." United Techs., 33 F.3d at 102. See also Akzo Coatings, Inc., v.

Aigner Corp., 30 F.3d 761, 764-6 (7th Cir. 1994).

      The notion that Section 107 provides an independent right to cost recovery for a whole

category of claims governed by Section 113 is untenable because it potentially renders many of

Section 113's substantive requirements, including contribution protection and the separate statute

of limitations for contribution actions, largely superfluous.[15]  Congress would not have adopted a

statutory scheme that directly applies to claims for contribution for work performed, only to

allow claims for such costs to be brought independently under Section 107. ARC implies no

such intent. ARC held only that a party in ARC's position could sue under Section 107. As to

other PRPs that have a cause of action pursuant to Section 113(f), nothing in ARC compels or

even suggests that courts should ignore the structure and policies under Section 113 that compel

parties whose claims come within the terms of Section 113 to be governed by Section 113.

      As discussed above, it is for this very reason that the circuit courts, prior to Cooper and

ARC, prohibited PRPs from using Section 107 instead of, or separate from, Section 113(f).

Moreover, the Supreme Court recognized this when it quoted the Eighth Circuit's view that to

---

[15] The United States reserves the right to argue that, even if parties in ITT's position can
assert a Section 107 claim, other limitations nevertheless apply to prevent such claims from
impairing contribution protection.

harmonize Sections 107 and 113 and to prevent the latter from becoming "meaningless," 459

F.3d at 836, a person who has a contribution claim under Section 113 must use it, and cannot

choose to use Section 107 instead.  The Supreme Court explained the Eighth Circuit's reasoning

as follows:

> The court reasoned that § 107(a)(4)(B) authorized suit by any person other than
> the persons permitted to sue under § 107(a)(4)(A).  Accordingly, it held that §
> 107(a)(4)(B) provides a cause of action to Atlantic Research.  To prevent a
> perceived conflict between § 107(a)(4)(B) and § 113(f)(1), the Court of Appeals
> reasoned that *PRPs that 'have been subject to §§ 106 or 107 enforcement actions
> are still required to use § 113*, thereby ensuring its continued vitality.'  We
> granted certiorari, *and now affirm*."

ARC at 2335. (emphasis added, citations omitted).  The Supreme Court's selection of this

passage to quote immediately before its statement of affirmance provides further support that the

Court would require PRPs that have a cause of action for contribution under Section 113(f) to use

it.  Elsewhere, the Court's opinion further indicates that it would not endorse a scheme that

would allow a PRP to choose between a contribution and a cost recovery action to evade the

statutory limitations of Section 113.  See ARC at 2339.  Taken together, these passages support

the conclusion that PRPs, such as ITT, that clearly have a cause of action under Section 113(f),

may not bring a separate Section 107 action instead.

     E.     Recent Decisions Confirm that ARC has Not Overruled Precedents that Parties
           That Meet the Terms of § 113(f) Must Use § 113(f).

     The Courts of Appeal that have examined the issue since ARC have similarly analyzed

the case as providing a Section 107 cause of action to PRPs who have cleaned up sites in the

absence of government enforcement efforts, but requiring parties that expend costs as a result of

suit or settlement to use Section 113(f).  For example, in the recent Ninth Circuit case Kotrous v.

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 28 of 34 PageID #:
4277
Case 1:05-cv-00674-RHB   Doc #154-2 Filed 09/09/08   Page 25 of 31   Page ID#3296

<u>Goss-Jewett Co. of N. Cal.</u>, No. 06-15162 and 06-16019, 2008 WL 1745338, at *7 (9th Cir. Apr.

17, 2008), the court reviewed its prior precedents, and determined that <u>ARC</u> had overruled them

to the extent they held that "an action between PRPs is <u>necessarily</u> for contribution." <u>Id.</u> at *7

(footnote omitted; emphasis added).  The court continued:

> Under <u>Atlantic Research</u>, a PRP such as Kotrous or Adobe that incurs
> costs voluntarily, without having been subject to an action under § 106 or
> § 107, may bring suit for recovery of its costs under § 107(a) . . . .  Any of
> the defendants sued by such a PRP may seek contribution under § 113(f)
> because they now will have been subject to an action under § 107.

<u>Id.</u>  <u>See also</u> <u>E.I. DuPont de Nemours and Co. v. U.S.</u>, 508 F.3d 126, 134 (3rd Cir. 2007)

(overruling prior precedent that § 113(f) provided sole cause of action for PRPs; PRPs who

"voluntarily" incurred cleanup costs but had not been sued or settled may assert cause of action

for cost recovery under § 107).[16]

Several Courts of Appeals that addressed the issue after <u>Cooper</u>, but before <u>ARC</u>,

similarly distinguished between PRPs that cleaned up their sites without having been sued by or

---

[16] <u>See also</u> <u>OSI, Inc. v. U.S.</u>, No. 07-10941, 2008 WL 1932117, at *2 n.1 (11th Cir. May
5, 2008) (in dicta, citing <u>ARC</u> for the proposition that § 107 permits recovery of removal and
remediation costs "voluntarily incurred").

The Sixth Circuit also appeared to understand the critical distinction between PRPs that
have a cause of action under Section 113 and those who do not.  Taking its cue from the Supreme
Court's quoting of the Eighth Circuit's <u>ARC I</u> opinion, the Sixth Circuit noted that:

> To maintain the vitality of § 113(f), however, PRPs who have been subject to a
> civil action pursuant to §§ 106 or 107 or who have entered into a judicially or
> administratively approved settlement <u>must</u> seek contribution under § 113(f).

506 F.3d at 458, citing <u>ARC</u>, 127 S. Ct. at 2338.  Although the Sixth Circuit remanded all of
Borg-Warner's claim under Section 107, including the portion pertaining to costs incurred under
the NBIA Decree, to this Court for "further consideration" in light of <u>ARC</u>, the court's statement
in this regard is highly instructive.  506 F.3d at 458.

settled with the government, and thus, after <u>Cooper</u>, had no cause of action under § 113(f), and those who cleaned up their sites after the compulsion of a suit or settlement. These Courts of Appeals, including the Second, Seventh, and Eighth Circuits, would allow the former group of PRPs, who have no cause of action under § 113(f), to bring suit under Section 107, but, consistent with their prior precedents, would deny this right to PRPs that otherwise have a Section 113(f) claim.[17]

Moreover, recent district court cases have specifically analyzed and rejected claims under Section 107 brought by PRPs who had been previously sued or settled and thus had claims under Section 113(f). In a thorough analysis, the district court in <u>Appleton Papers Inc. v. George A. Whiting Paper Co.</u>, No. 08-C-16, 2008 WL 3891304 (E.D. Wis. Aug. 20, 2008), summarized the state of law after <u>ARC</u> as following two principles:

> 1. Costs incurred involuntarily (<u>e.g.</u> as the result of adverse litigation or government order) must be recovered through a contribution action under § 113(f).

> 2. Costs incurred voluntarily when no adverse litigation has occurred (as in <u>Atlantic Research</u> and <u>Metropolitan Water</u>) may be recouped through a cost recovery action under § 107.

<u>Id.</u> at *4. The court probed further, however.

Despite the courts' use of the terms "voluntary" and "involuntary" to distinguish

---

[17] <u>See</u>, <u>e.g.</u>, <u>Metro. Water Reclamation Dist. v. N. Am. Galvanizing & Coatings, Inc.</u>, 473 F.3d 824, 836 (7th Cir. 2007) (PRP that had neither settled with nor been sued by the government has cause of action under § 107, but where PRP has been compelled to perform cleanup, claim for recovery is claim "by and between jointly and severally liable parties for an appropriate division of the payment one of them has been compelled to make" and must be brought under § 113(f)(1)); <u>ARC I</u>, 459 F.3d at 834-35 (PRP has cause of action for "cost recovery" under § 107 if it cannot meet the requirements of § 113(f)); <u>Consol. Edison Co. v. UGI Util., Inc.</u>, 423 F.3d 90, 100 (2d Cir. 2005) ("PRP" that has not previously been sued or made to participate in an "administrative proceeding" may recover necessary response costs incurred voluntarily, not under a court or administrative order or judgment).

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 30 of 34 PageID #:
4279
Case 1:05-cv-00674-RHB   Doc #154-2 Filed 09/09/08   Page 27 of 31   Page ID#3298

> between payments recoverable under § 107(a) and those recoverable under §
> 113(f), the operative principle appears to be that § 107(a) is available to recover
> payments only in cases where § 113(f) is not.  In cases where a claim for
> contribution can be asserted under § 113(f), § 107(a) cannot be used.

Id. at *5.  This result, the court found, was consistent with the rationale of Bedford Affiliates

(and other earlier CERCLA cases discussed above) as it prevented parties from choosing Section

107 and rendering Section 113(f) meaningless.  The court held that once the United States sued

the plaintiff, it was free to assert its contribution claims under the plain language of Section

113(f)(1) for any costs in excess of their fair share that were incurred to discharge the common

liability shared with the other defendants for the site.  Accordingly, the court dismissed the

plaintiff's Section 107 claim.  Id. at *7.

Similarly, another district court recently held that a PRP could not assert a § 107 claim for

response costs that it alleged it had incurred and may incur in the future as the result of a State

enforcement action.  New York v. Next Millennium Realty, LLC, No. 03-5985, 2008 WL

1958002, *6 (E.D.N.Y. May 2, 2008).  The State of New York sued defendant seeking, inter alia,

"recovery costs under § 107 of CERCLA for the completion of the remediation of off-site

groundwater plumes." Id. at *3.[18]  After reviewing ARC, and other cases, the court held that the

---

[18]   ITT argues that Next Millennium Realty is inapt because the defendants/contribution
plaintiffs had not performed work.  ITT Brief at 28.  ITT is wrong.  Because only the United
States can bring a claim for response action pursuant to Section 106(a), 42 U.S.C. § 9606(a) (". .
. [T]he President . . . may require the Attorney General of the United States to secure such relief
as may be necessary . . . ."), the State did not allege a claim for the work under Section 106(a).
Instead, the State's complaint asserted a Section 107 claim and a claim under State law for
injunctive relief to abate the contamination and for reimbursement of the State's costs and other
claims.  See New York v. Next Millennium Realty, LLC, No. 03-5985, 2007 WL 2362144, at *4
(E.D.N.Y. Aug. 14, 2007).  Thus, the State was seeking to have the response action performed
(in addition to reimbursement of its response costs), and, as the court noted, defendants were
indeed seeking to recover "remediation costs" that they "have incurred and may incur in the
future." Id at *6.

defendants could not bring their action under § 107:

> In the case at hand, there is no evidence that the [defendants] are seeking to recover necessary response costs that they themselves have voluntarily incurred. To the contrary, the [defendants'] claim pursuant to § 107 of CERCLA is based on remediation costs that the [defendants] and others have incurred and may incur in the future as the result of the lawsuit instituted under § 107(a) by the [State] to recover the State's costs for cleaning up the NICA Site.

Id. at *6 (citations omitted).[19]

Importantly, as Koutros and the other cases discussed above have recognized, except for parties in ARC's situation, ARC does not stand for the proposition that courts should put aside their longstanding view that PRPs that have (or had) claims for contribution pursuant to § 113(f) are governed by § 113(f). As discussed above however, the ARC Court clarified that in certain procedural circumstances, where a PRP does not meet the procedural prerequisites for a remedy under Section 113(f), it has a cause of action under § 107. Thus, ARC overrules the various circuit decisions that held that there was no Section 107 cause of action in circumstances where a PRP cleaned up a site "voluntarily" – that is, without yet having been subject to a government enforcement action or settlement.[20]

Similarly, ARC would render incorrect the Sixth Circuit's statement in Centerior that

---

[19] See also Niagara Mohawk Power Corp. v. Consolidated Rail Corp., 2008 WL 2756912 (N.D.N.Y. July 16, 2008) (ARC holds that a PRP precluded from suing under § 113(f) because it had not been sued under § 106 or 107, who cleaned up site "voluntarily" may recover under § 107; ARC does not overrule Second Circuit law that costs "involuntarily" incurred pursuant to consent orders can only be recovered under § 113(f).).

[20] See, e.g., Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1301 (9th Cir. 1997), now limited by Kotrous v. Goss-Jewett Co. of N. Cal., No. 06-15162 and 06-16019, 2008 WL 1745338 (9th Cir. Apr. 17, 2008); Amoco Oil Co. v. Borden, Inc., 889 F.2d 664, 672 (5th Cir. 1989).

PRP actions must "necessarily" be governed by Section 113(f). Centerior, 153 F.3d at 350. However, as the remainder of the decision reveals, this statement was not its holding. The court specifically declined to address the situation, later presented in ARC, of a "PRP who initiated cleanup voluntarily without any governmental prodding." 153 F.3d at 352 n.10, 355-56. Rather, the court held that "parties who themselves are PRPs, potentially liable under CERCLA and compelled to initiate a hazardous waste site cleanup, may not bring an action for joint and several cost recovery, but are limited to actions for contribution governed by the mechanisms set forth in CERCLA § 113(f)." 153 F.3d at 356. This holding is as applicable to ITT's situation now as it was then.

In short, ARC does not overrule binding precedent or other circuit court decisions that claims for costs expended in performing a cleanup pursuant to a judicial or administrative settlement or pursuant to a § 106 or 107 action can and must be brought pursuant to § 113(f).[21] Parties, like ITT, that have or had claims for contribution and are merely trying to shop for a better deal than Congress gave them, are "still required to use § 113, thereby ensuring its

---

[21] See, e.g., Bedford Affiliates, 156 F.3d at 423-25; New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1121-1123 (3d Cir. 1997); Redwing Carriers v. Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996); Control Data Corp. v. S.C.S.C. Corp., 53 F.3d 930, 935 (8th Cir. 1995); United States v. Colo. & E. R.R. Co., 50 F.3d 1530, 1534-1536 (10th Cir. 1995); United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 103 (1st Cir. 1994); Akzo Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994). To be sure, the precise rationales in some of these cases are affected by ARC. For example, the First Circuit in United Technologies based its holding that parties to an administrative settlement are limited to a contribution action under § 113(f) in part on their view that only governments and "innocent parties" can use § 107. 33 F.3d at 99. However, ARC does nothing to call into question the reasoning of these courts that claims that come within the terms of Section 113(f) must be governed by Section 113(f). Echoing the Eighth Circuit's concerns, the First Circuit explained, to find otherwise would "produce[] judicial nullification" of § 113(g)'s statute of limitations provisions and "emasculate[] the contribution protection component of CERCLA's settlement framework." Id. at 101-02.

Case 5:12-cv-00127-GNS-HBB   Document 935-2   Filed 06/28/13   Page 33 of 34 PageID #:
Case 1:05-cv-00674-RHB   Doc #154-2   Filed 09/09/08   Page 30 of 31   Page ID#3301
4282

continued vitality. . . . This resolution gives life to each of CERCLA's sections, and is consistent

with CERCLA's goal of encouraging prompt and voluntary cleanup of contaminated sites."

ARC I, 459 F.3d at 836-37.[22]

## CONCLUSION

Under binding Sixth Circuit law, and consistent with the plain language of, and

congressional intent concerning, Section 113(f), ITT is limited to a claim in conformance with

Section 113 (the statute of limitations for which has run).   Thus, ITT's separate Section 107

claim for costs related to the NBIA Decree should be dismissed.

---

[22] As noted above, the Sixth Circuit held the NBFF AOC was not a qualifying settlement under Section 113(f)(3)(B), and thus did not give rise to a contribution action under that subsection.  The Sixth Circuit allowed ITT to proceed with a Section 107 action for its costs under the NBFF AOC. (As set forth in the United States' Brief as Amicus Curiae in Support of Petition for Panel Rehearing, the United States disagrees with this holding and believes that the NBFF AOC was intended to, and did, resolve liability to the United States within the meaning of Section 113(f)(3)(B), and that, as discussed in the foregoing, ITT's claims should be governed by Section 113.)  The Bronson Defendants have moved for summary judgment on ITT's Section 107 claim for the NBFF AOC costs on various grounds.  The United States takes no position on this motion.

However, to the extent this Court rules, contrary to the arguments herein, that ITT may maintain an action under Section 107 for the NBIA Decree costs and/or that it may continue to pursue its Section 107 claim for the NBFF AOC costs, ITT may attempt to pursue a joint and several claim. (ITT's Amended Complaint asserts that defendants are jointly and severally liable to it.)  In ARC, the Supreme Court expressly declined to decide whether a cause of action under § 107(a)(4)(B) is for joint and several liability.  Atlantic Research, 127 S. Ct. at 2333-39 and n.7. It is the United States' view that a PRP suing under § 107(a)(4)(B) cannot invoke the presumption of joint and several liability, but is limited to recovering a fair share of costs, as determined by the significant body of case law on equitable allocation that has developed under § 113(f).  As the Supreme Court noted, though, even if ITT were allowed to assert joint and several liability, Defendants could file counterclaims under § 113(f) to "blunt any inequitable distribution," and return the parties to such principles of equitable allocation.  Id.  The question whether a PRP who initiates a Section 107(a)(4)(B) action may sue jointly and severally is of critical importance to the United States because the United States is interested in ensuring that CERCLA response costs are allocated fairly and through equitable proceedings.  If these issues arise in the future, the United States might seek leave to file an *amicus* brief at that time.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Div.
U.S. Department of Justice

LESLIE ALLEN
Senior Attorney

*/s/ Leslie Allen*
U.S. Department of Justice
Environment and Natural Resources Div.
Environmental Enforcement Section
P.O. Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-4114
leslie.allen@usdoj.gov

LOCAL COUNSEL:

CHARLES R. GROSS
United States Attorney
RYAN D. COBB
Assistant United States Attorney
PO Box 208
Grand Rapids, Michigan  49501-0208
(616) 456-2404

28