UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | |
|---|---|
| LWD PRP GROUP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>AK STEEL CORPORATION, et al., )<br>)<br>Defendant. )<br>_____ ) | Civil Action No. 5:12-cv-00127-M |

**MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS AMERICA FUJIKURA LTD.**

This memorandum is submitted in support of Defendant America Fujikura Ltd.'s ("AFL") Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. The Affidavit of Robert Crowder, the Chief Financial Officer and Secretary of AFL, is attached hereto as Exhibit A.

**BACKGROUND**

This action concerns the removal of hazardous substances at the LWD Incinerator Site (the "Site"), pursuant to an administrative settlement with the U.S. Environmental Protection Agency ("EPA"). (Second Amended Complaint ¶ 1). The LWD PRP Group seeks cost recovery and contribution pursuant to CERCLA Sections 107(a) and 113(f), as well as K.R.S. §§ 224.01-400; declaratory relief; and an allocation of past and future response costs. (*Id.* at ¶ 2). The PRP Group brought suit against more than 300 defendants, alleging that each defendant generated or transported hazardous materials as manifested waste to the Site. (*Id.* at ¶ 9).

With respect to AFL, the Second Amended Complaint ("Complaint") makes only these allegations:

- AFL is the "successor" to Texas Magnet Wire Company ("Texas Magnet"). (*Id.* at ¶ 66).

- EPA issued EPA ID No. TXD987986908 to Texas Magnet. (*Id.* at ¶ 67).

- According to annual reports for the Site, four shipments of manifested waste containing hazardous substances totaling 41,968 pounds were transported from Texas Magnet to the Site in 1990; and nine shipments of manifested waste containing hazardous substances totaling 196,464 were transported from Texas Magnet to the Site in 1991. (*Id.* at ¶ 68).

- The total weight attributable to AFL at the Site is 238,432 pounds. (*Id.* at ¶ 69).

- To date, AFL has not paid toward any response costs incurred by the LWD PRP Group at the Site. (*Id.* at ¶ 70).

In 1984, Alcoa, Inc. and Fujikura Ltd. jointly formed Alcoa Fujikura Ltd. (Crowder Aff. at ¶ 4).[1] Alcoa Fujikura Ltd. was headquartered in Tennessee and conducted its manufacturing operations in Duncan, South Carolina. (*Id.* at ¶ 5). In 2005, Fujikura Ltd. assumed 100% ownership of Alcoa Fujikura Ltd., changed the name to America Fujikura Ltd., and moved the AFL headquarters to Duncan, South Carolina, where AFL still conducts its manufacturing operations. (*Id.* at ¶ 6).

Separately, in 1988, Fujikura Ltd. and Rea Magnet Wire Company ("Rea") formed Texas Magnet Wire Company. (Rea Magnet Wire Company History, available at www.reawire.com/About/HistoryofRea/tabid/81/language/en-US/Default.aspx, attached hereto as Exhibit C ("Rea History")).[2] The manufacturing operations of Texas Magnet were conducted in El Paso, Texas. (*Id.*). In 1993, Fujikura Ltd. and Rea sold the assets of Texas Magnet to Phelps Dodge Magnet Wire Company. (*Id.*; Press Release: Phelps Dodge Acquires Wire

---

[1] The pertinent facts regarding the history of AFL are reflected in a timeline that appears on AFL's website, available at www.aflglobal.com/Company/Company-Profile/AFL-Timeline.aspx, which is attached hereto as Exhibit B. Counsel for the PRP Group provided this document in a letter to AFL's legal counsel dated May 17, 2013, and expressly relied upon this document for the assertion that AFL is a successor to Texas Magnet. This correspondence is attached as Exhibit F. The apposite attachments to the May 17, 2013 letter are included as Exhibits B, C and D to this Motion. The remaining attachments are omitted from Exhibit F.

2

Fabricators in Texas and North Carolina, attached hereto as Exhibit D ("Phelps Dodge Press Release")).[3] In 2006, Rea purchased the assets of Phelps Dodge Magnet Wire Company. (Rea History).

AFL and Texas Magnet have always been separate companies, and have always conducted separate manufacturing operations making different products. AFL and Texas Wire had some common ownership by Fujikura Ltd., but were also partially owned by other, different entities. (*See* AFL Timeline, Rea History, Phelps Dodge Press Release). AFL has never purchased assets of nor had any ownership interest in Texas Magnet. (Crowder Aff. at ¶ 7). AFL is a Delaware corporation and has its principal place of business in South Carolina. (*Id.* at ¶ 3).

## ARGUMENT

Under Rule 12(b)(6), a claim must be dismissed if it is not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must set forth the grounds of entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. This standard is only satisfied when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The LWD PRP Group names AFL as a defendant in this action and asserts liability based on an unsupported allegation that AFL is the "successor" to Texas Magnet. The LWD PRP Group makes no allegations in the Second Amended Complaint to support this allegation. As the

---

[2] Counsel for the PRP Group also provided this document in a letter to AFL's legal counsel dated May 17, 2013, and expressly relied upon this document for the assertion that AFL is a successor to Texas Magnet.
[3] Counsel for the PRP Group also provided this document in a letter to AFL's legal counsel dated May 17, 2013, and expressly relied upon this document for the assertion that AFL is a successor to Texas Magnet.

3

facts above demonstrate, AFL is not, and has never been, a successor to Texas Magnet. Thus, even if the PRP Group is able to prove its claims against Texas Magnet, it cannot maintain an action against AFL.

The Court of Appeals for the Sixth Circuit has made clear that courts apply state law on successor liability in the context of CERCLA actions. *See Anspec Co., Inc. v. Johnson Controls, Inc.*, 922 F.2d 1240, 1245 (6th Cir. 1991). In Kentucky, a "successor in interest" has been defined as "[o]ne who follows another in ownership or control of property. In order to be a successor in interest, a party must continue to retain the same rights as the original owner without a change in ownership and there must be a change in form only and not in substance … In the case of corporations, the term ordinarily indicates statutory succession, for instance, when a corporation changes its name but retains the same property." *Dynabody Fitness Center, Inc. v. Skynexx, LLC*, No. 2003-CA-001574-MR, 2004 WL 2367231 (Ky. Ct. App. Oct. 22, 2004) (citing Black's Law Dictionary 1431–32 (6th ed. 1990) (internal citations omitted)). AFL has in no way followed Texas Magnet in ownership or control of property, through a name change or any other type of succession.

Kentucky case law finds successor liability only in the context of a corporation purchasing, or merging with, another corporation. Even when a corporation purchases another corporation, it is well settled under Kentucky law that the successor corporation does not assume the debts or liabilities of the corporation it has purchased unless a narrow exception applies, such as a transaction where the transaction is entered into fraudulently in order to escape liability for such debts. *Pearson ex rel. Trent v. National Feeding Systems, Inc.*, 90 S.W.3d 46, 49 (Ky. 2002). But here, AFL has not purchased any stock or assets from Texas Magnet. AFL does not own or control any property formerly owned or controlled by Texas Magnet. AFL and Texas

Magnet conducted separate operations at separate facilities. The only connection between AFL and Texas Magnet is that both were partially owned by Fujikura Ltd. between 1988 and 1993, before the assets of Texas Magnet were sold to Phelps Dodge in 1993.

AFL has made the LWD PRP Group fully aware of its lack of connection to Texas Magnet, as the correspondence attached as Exhibits E and G show.[4] Yet the PRP Group persists in maintaining its claims against AFL, despite their lack of factual basis. Because the Second Amended Complaint is devoid of any factual allegations that would allow the court to "draw the reasonable inference" that AFL is liable for the disposal of hazardous substances by Texas Magnet at the Site, the Complaint against AFL should be dismissed under Rule 12(b)(6).

## CONCLUSION

For the reasons set forth above and in accordance with Fed. R. Civ. P. 12(b)(6), AFL respectfully requests that this Court dismiss Plaintiff's claims against it, with prejudice, for failure to state a claim upon which relief can be granted.

Respectfully submitted,

/s/ Dennis J. Conniff
Dennis J. Conniff
Emily C. McKinney
Frost Brown Todd LLC
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202
(502) 589-5400
(502) 581-1087 (fax)

*Counsel for America Fujikura Ltd.*

---

[4] The LWD PRP Group's response to AFL's letter of May 22, 2013 (Exhibit G) was a June 26, 2013 e-mail from counsel for the LWD PRP Group stating that the LWD PRP Group would not voluntarily dismiss AFL, without explanation or rationale, thus making this motion necessary.