# EXHIBIT G



**Dennis J. Conniff**
Member
502.568.0398 (t)
502.581.1087 (f)
dconniff@fbtlaw.com

May 22, 2013

<u>*(Via E-Mail)*</u>

Ambereen Shaffie, Esq.
The Justice Law Firm LLC
5251 West 116th Place, Suite 200
Leawood, Kansas 66211-7820

      Re: LWD PRP Group v. America Fujikura Ltd.

Dear Ms. Shaffie:

      Thank you for speaking with me on May 21, 2013 regarding the status of America Fujikura Ltd. ("AFL") as the alleged successor to Texas Magnet Wire Company ("TMW"). As we discussed, the allegation that AFL is the corporate successor to TMW is incorrect and is not supported by the documentation that you provided with your letter of May 17th. In addition, in your letter you assert that AFL is the successor to TMW based on the "'continuity of business enterprise' theory of corporate successor liability". That theory of successor liability does not apply to AFL.

      As discussed in *Gould*, the general tenet is that an "**asset purchaser** is not considered to be a corporate successor to its predecessor" unless a specified exception to that tenet applies. (**Emphasis** added.) What you term to be the "'continuity of business enterprise' theory of corporate successor liability" is one of those exceptions to the general tenet. See *Gould* at 656. In *Gould*, the party objecting to CERCLA liability was the purchaser of the assets of the company that generated the waste that gave rise to CERCLA liability.

      There appears to be no dispute between us as to these facts:

- In 1984, AFL was formed by Alcoa, Inc. and Fujikura Ltd. as Alcoa Fujikura Ltd. In 2005, Fijikura Ltd. assumed 100% ownership of AFL and changed the name to America Fujikura Ltd.
- In 1988, Fijukura Ltd. and Rea Magnet Wire Company ("Rea") formed TMW as a joint venture. In 1993, Fujikura and Rea sold the assets of Texas Magnet Wire to Phelps Dodge Magnet Wire Company ("Phelps Dodge").

Based upon those facts, AFL cannot be the corporate successor to TMW under the "'continuity of business enterprise' theory of corporate successor liability", because AFL did not purchase the assets of TMW. For the same reason, none of the other exceptions identified in *Gould* could apply to AFL, and the analysis and holding in *Gould* is inapplicable and inapposite as to AFL.

Based upon the documents you provided, Phelps Dodge, and subsequently Rea from Phelps Dodge, purchased the assets of TMW. Therefore, the theory of successor liability that you rely upon in your letter applies to a determination of whether Phelps Dodge, or Rea, has successor liability for TMW.[1] Even if the "'continuity of business enterprise' theory of corporate successor liability" could apply in this situation, the information that you have provided does not support its application, as discussed in more detail below.

Since AFL did not purchase the assets of TMW, the only way that you can establish that AFL has CERCLA liability for TMW is to allege that Fujikura, Ltd. ("Fujikura") retained CERCLA liability for TMW as the partial parent corporation of TMW (in conjunction with Rea as a parent corporation) following the sale of the TMW assets to Phelps Dodge. Consequently, the theory of CERCLA liability to be applied in this circumstance is the theory of derivative CERCLA liability for a parent corporation addressed in *U.S. v. Bestfoods*, 524 U.S. 51 (1998).

In *Bestfoods*, the United States Supreme Court held that a parent corporation may only be charged with derivative CERCLA liability under two circumstances:

1. When the corporate veil may be pierced; or
2. The parent corporation actually participated in and exercised control over the actions of the subsidiary giving rise to CERCLA liability.

The only fact that you have asserted to establish that Fujikura retained the CERCLA liability of TMW following the asset sale is that Fujikura was the "majority owner" of TMW. You have not asserted any facts to demonstrate that the corporate veil of Fujikura might be pierced as it relates to TMW, nor have you asserted any facts to demonstrate that Fujikura actually participated in and exercised control over the actions of TMW that resulted in TMW sending its waste to the LWD Site in 1990 and 1991 to an extent that would give rise to CERCLA liability.

As noted in your letter, Fujikura is a viable international corporation. Therefore, you must establish that Fujikura has derivative CERCLA liability for TMW as a predicate to any claim of CERCLA liability against AFL. Even if we assume, for the sake of argument, that you

---

[1] The other case cited in your letter, *Anspec*, is also inapposite as to AFL. In *Anspec*, the party objecting to CERCLA liability was the successor by merger to the company that generated the waste that gave rise to CERCLA liability. AFL is not a successor by merger to TMW, and you have presented no documents and alleged no facts that it is.

are able to establish that Fujikura has derivative CERCLA liability for TMW, you must then establish that Fujikura has somehow transferred that liability to AFL. The mere fact that AFL is a subsidiary of Fujikura is insufficient to establish that AFL now has the derivative CERCLA liability of Fujikura for TMW.

The following is provided as a specific rebuttal to the allegations made in your letter. In summary, you allege that AFL shares the following with TMW:

1. Both entities were manufacturers of copper and/or aluminum apparatus/wire.

As noted in the AFL timeline that you provided, AFL initially focused on manufacturing optical ground wire (OPGW) and accessories for the electric utility communication networks. As demonstrated by the AFL timeline you provided, AFL's manufacturing of other products was due to acquisitions unrelated to TMW.

TMW was formed to manufacture magnet, also known as enameled, wire, which is a very different product used for distinctly different purposes than OPGW. See the Rea Magnet Wire Company history that you provided. See also the news release you provided which states that REA and Fujikura formed a venture to manufacture copper wire for motors, transformers and other winding uses.

2. Alcoa Fujikura Ltd., now known as America Fujikura Ltd., shared the same business address of 105 West Park Drive, Brentwood, Tennessee.

AFL and TMW may have shared a business address in Brentwood, Tennessee, but that fact is immaterial to whether AFL is the corporate successor to TMW based upon the theories discussed above.

3. Alcoa Fujikura, now known as American Fujikura Ltd., was in operation during the applicable time period.

By "applicable time period", I assume that you mean the time period during which TMW sent waste to the LWD incinerator site. Based upon the LWD portions of the Annual Hazardous Waste Facility Reports that you provided, TMW sent waste to the LWD incinerator site in 1990 and 1991. During that time, AFL conducted all of its manufacturing operations in South Carolina. During that period of time, and until Fujikura Ltd. acquired sole ownership of AFL in 2005, AFL was owned jointly by Alcoa, Inc. and Fujikura Ltd. However, TMW was formed in 1988 as a joint venture between REA Magnet Wire Company and Fujikura Ltd., and was owned jointly by those companies until the assets of TMW were sold to Phelps Dodge Magnet Wire Company in 1993. During the applicable time period, TMW conducted all of its operations in El Paso, Texas. The mere fact that AFL and TMW were both in operation during the applicable

Ambereen Shaffie
May 22, 2013
Page 4

time period is immaterial to whether Fujikura or AFL has derivative CERCLA liability for TMW.

    4.    *Both entities were owned by Fujikura Ltd.*

This statement is only partially correct. As indicated in the preceding response, AFL was owned jointly by Alcoa and Fujikura, and TMW was owned jointly by Rea and Fujikura. None of the documentation you have provided gives any indication that AFL ever had an ownership interest of any type in TMW. Mere ownership of a subsidiary is insufficient to establish derivative CERCLA liability for the parent corporation, as discussed in *Bestfoods*. Mere ownership of a subsidiary with CERCLA liability does not cause that liability to be transferred to a different subsidiary with different ownership.

    5.    *At least one employee (Texas Magnet's President, Kichizo Ito).*

By this statement, I presume that you mean that Kichizo Ito was an employee of both AFL and TMW. AFL has no records that Kichizo Ito was ever an employee, officer or director of AFL. The documentation that you provided does not indicate any link between Kichizo Ito and AFL. While the documents you provided indicate that Mr. Ito was at one time the President of TMW, there is no indication that he was ever an employee, officer or director of AFL. The documents you provided indicate that Kichizo Ito holds patents for a self-bonding enameled wire, which is the type of product that was manufactured by TMW. There is no indication that Mr. Ito was an inventor of any type of OPGW.

Simply stated, whether taken singly or as a whole, the summary of facts that you have provided establishes absolutely no relationship whatsoever between AFL and TMW that could possibly be construed to establish AFL as the successor to TMW.

This is also demonstrated by the factors to be considered in your alleged "continuity of business enterprise" theory of corporate successor liability. As discussed in *Gould*, the relevant factors to be considered are:

    1.    *Retention of the same employees.* As discussed above, you have not identified any employee of TMW that was retained by AFL. Employees working for TMW in El Paso at the time of the asset sale to Phelps Dodge would have continued as employees of Phelps Dodge.

    2.    *Retention of the same supervisory personnel.* You seem to attempt to assert that Mr. Ito was a supervisor for both TMW and AFL, but none of the documentation that you have provided supports such an allegation.

3. *Retention of the same production facilities in the same location.* When the assets of TMW were sold to Phelps Dodge in 1993, AFL did not retain the production facilities of TMW in El Paso, Texas.

4. *Retention of the same name.* AFL has not used, much less retained, the name of TMW.

5. *Production of the same product.* As discussed above, AFL manufactures OPGW cable, while TMW manufactures magnet wire. These are not the same products.

6. *Continuity of assets.* As discussed above, there is no continuity of assets between TMW and AFL, since Rea and Fujikura sold the assets to Phelps Dodge in 1993, while Fujikura and Alcoa continued to own AFL.

7. *Continuity of general business operations.* AFL did not continue the general business operations of TMW, since the TMW assets were sold in 1993 to Phelps Dodge Magnet Wire.

8. *Whether the successor holds itself out as the continuation of the previous enterprise.* AFL has never held itself out as the continuation of TMW. The AFL company timeline demonstrates this, since it makes no reference to TMW.

Consequently, I again respectfully request that you and your client reconsider your allegations against AFL and agree to voluntarily dismiss AFL from the pending litigation. If you do not do so, AFL will vigorously defend the erroneous allegations made against it, including seeking the recovery of its attorney fees.

Please contact me if you want to discuss this.

Sincerely,

Dennis J. Conniff

cc: Grant Burns

LOULibrary 0126770.0605483 1472007v1

400 West Market Street | 32nd Floor | Louisville, Kentucky 40202-3363 | 502.589.5400 | frostbrowntodd.com
Offices in Indiana, Kentucky, Ohio, Tennessee and West Virginia