# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### PADUCAH DIVISION

**CIVIL ACTION NO. 5:12-CV-00127-JHM**

**LWD PRP GROUP**                                                                          **PLAINTIFF**

**V.**

**ACF INDUSTRIES, LLC,** *et al.*                                              **DEFENDANTS**

#### MEMORANDUM OPINION AND ORDER

On August 31, 2012, the LWD PRP Group filed this civil action under the Comprehensive Environmental Response, Compensation & Liability Act, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA"). On April 8, 2013, seventy-seven of the Defendants filed a motion to dismiss [DN 776]. The list of the Defendants filing this motion was amended through a motion for leave to substitute [DN 849], which the Court granted on April 12, 2013 [DN 853]. Thereafter, two of the listed Defendants—AK Steel Corp. and Avery-Dennison Corp.—were dismissed from the action with prejudice and withdrew from the pending motion to dismiss. (See Order [DN 956].)

Subsequently, several additional Defendants filed their own motions to dismiss, in which they incorporated the arguments raised in the first motion. (Mots. to Dismiss of Defs. PSC, LLC & Philip Servs. Corp. [DN 857]; Def. Mega Fabrication, Inc. [DN 865]; Defs. Columbia Cnty., N.Y., Nat'l Ry. Equip. Co., Perma-Fix Envtl. Servs., Inc., Perma-Fix of Dayton, Inc., Perma-Fix of Orlando, Inc., & Perma-Fix of S. Ga., Inc. [DN 881]; Def. Yenkin-Majestic Paint Corp. [DN 921]; Def. Printpack, Inc. [DN 934]; & Def. Village of Sauget, Ill. [DN 950].) The LWD PRP Group responded. (See Pls.' Resp. [DNs 914, 922, 937, 952].) The Defendants replied. (Reply to Pl.'s Resp. [DN 935].) This matter is now before the Court on the pending motions to dismiss.[1]

---

[1] For purposes of this Memorandum Opinion & Order only, the Court will collectively refer to the Defendants who have filed these pending motions as the "Moving Defendants."

# I. BACKGROUND

Plaintiff, the LWD PRP Group, is a group of companies that generated and/or transported hazardous waste to a former hazardous waste incinerator at the LWD Incinerator Site in Calvert City, Kentucky. The LWD PRP Group is comprised of over fifty potentially responsible parties ("PRPs"), in their own right, along with other PRPs who settled with the LWD PRP Group and assigned their rights to the LWD PRP Group. The LWD PRP Group is cooperating with the U.S. Environmental Protection Agency ("EPA") and the State of Kentucky to address environmental concerns related to the LWD Incinerator Site. (See 2d Am. Compl. [DN 758] ¶¶ 1-2, 22-27, 30.) The LWD Incinerator Site is the area of the LWD, Inc. Superfund Site where a hazardous waste incinerator operated from the 1970s until January 2004. (See id. ¶ 5.)

In January 2004, the on-site incineration of waste at the LWD Incinerator Site ceased. In October 2005, Defendant Bluegrass Incineration Services, LLC, the last-known owner and/or operator of the LWD Incinerator Site, abandoned the LWD Incinerator Site, leaving behind both hazardous and non-hazardous waste. (Id. ¶¶ 5, 7.) In February 2006, the Kentucky Department of Environmental Protection ("KDEP") requested assistance from the EPA's Emergency Response & Removal Branch ("ERRB") Superfund Division in an effort to categorize the environmental hazards at the LWD Incinerator Site. As a result, the ERRB performed a removal site evaluation and found that emergency action was needed to eliminate certain environmental threats that were caused by the hazardous waste. Between March 2006 and February 2007, the EPA conducted initial removal efforts at the LWD Incinerator Site. (Id. ¶¶ 14-15, 16-21.)

On March 1, 2007, following the EPA's initial removal efforts, the EPA entered into an Administrative Settlement Agreement and Order on Consent for Removal Action (the "Removal Action AOC") with fifty-eight former LWD customers, including the members of the LWD PRP

Group. In the Removal Action AOC, the LWD customers agreed to perform specified remaining time-critical removal action activities at the LWD Incinerator Site and pay for the EPA's future response costs associated with the LWD Incinerator Site. (Id. ¶ 22.) The LWD PRP Group, and the other PRPs who entered into the Removal Action AOC, completed the removal activities in September 2009. The EPA issued a Notice of Completion on September 29, 2009. (Id. ¶ 23.)

The LWD PRP Group alleges that in addition to entering into the Removal Action AOC, as of March 29, 2013, it was negotiating with the EPA regarding a settlement under § 122(h) of CERCLA for the EPA's past response costs at the LWD Incinerator Site, (id. ¶ 24), and also negotiating with the KDEP on "certain remediation, monitoring and maintenance activities . . . ." (Id. ¶ 25.)[2] The LWD PRP Group further alleges that as of March 29, 2013, it had paid over $9.5 million in response costs relating to the LWD Incinerator Site. (Id. ¶ 27.) The LWD PRP Group has now filed suit against the Defendants, seeking to recover some of these costs. The Defendants are other companies that allegedly generated and/or transported hazardous waste to the LWD Incinerator Site, or that allegedly owned and operated the LWD Incinerator Site. (See id. ¶¶ 7-9.)

In Count I of its Second Amended Complaint, the LWD PRP Group seeks cost-recovery under § 107(a) of CERCLA, 42 U.S.C. § 9607, for "past and future response costs incurred and to be incurred in response to the release or threatened release of hazardous substances at and from the LWD Incinerator Site." (Id. ¶ 864.) In Count II, the LWD PRP Group seeks contribution under § 113(f) of CERCLA, 42 U.S.C. § 9613, for the "Defendants' respective equitable shares of all costs and damages incurred" by the LWD PRP Group. (Id. ¶ 870.) With respect to Counts I and II, the LWD PRP Group also states that it is entitled to cost-recovery and contribution under

---

[2] In response to the Moving Defendants' motions to dismiss, the LWD PRP Group asserts that since March 29, 2013, "the LWD PRP Group and several of its assignors have entered into an Administrative Order on Consent to pay the EPA $4.116 million of its unreimbursed past response costs . . . [which] has been executed and published in the Federal Register." (Pl.'s Resp. to Defs.' Rule 12(b) Mots. to Dismiss ("Pl.'s Resp.") [DN 914] 7.) The LWD PRP Group also asserts that its negotiations with the KDEP "have culminated in a recent settlement-in-principle between the LWD PRP Group and the State (KDEP) . . . ." (Id.)

state law because K.R.S. § 224.01-400(25) provides that any defenses to liability, limitations to liability, and rights to contribution shall be determined in accordance with §§ 107(a) and 113(f) of CERCLA. (Id. ¶¶ 865, 871.) Lastly, in Count III, the LWD PRP Group seeks a declaratory judgment against the Defendants, "holding them liable for their respective equitable shares of response costs . . . ." (Id. ¶¶ 875-76.) The Moving Defendants argue that the LWD PRP Group's lawsuit must be dismissed under Fed. R. Civ. P. 12(b)(6).

## II. STANDARD OF REVIEW

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), a court "must construe the complaint in the light most favorable to plaintiff[]," League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007) (citation omitted), accepting all of the plaintiff's allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Under this standard, the plaintiff must provide the grounds for its entitlement to relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff satisfies this standard when it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. A complaint falls short if it pleads facts that are merely "consistent with a defendant's liability" or if the facts do not "permit the court to infer more than the mere possibility of misconduct." Id. at 678–79. The allegations must "'show[] that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

The Moving Defendants set forth six main arguments in their motions to dismiss: (1) the Court must dismiss the LWD PRP Group's § 107(a) cost-recovery claim because the LWD PRP Group's exclusive remedy against the Moving Defendants is contribution under § 113(f); (2) the

Court must dismiss the LWD PRP Group's contribution claim under § 113(f) because the claim is time-barred; (3) the Court must dismiss the LWD PRP Group's cost-recovery and contribution claims under state law because the viability of those claims depends on the viability of the LWD PRP Group's federal cost-recovery and contribution claims; (4) the LWD PRP Group cannot seek a declaratory judgment under CERCLA since it has no current substantive cause of action under CERCLA; (5) the LWD PRP Group cannot seek a declaratory judgment under CERCLA for the Moving Defendants' future liability at the LWD Incinerator Site since such claims are speculative and unripe; and (6) the LWD PRP Group cannot sue in the name of the "LWD PRP Group" since the LWD PRP Group is not the real party in interest. (Mem. in Supp. of Mot. to Dismiss ("Moving Defs.' Mem.") [DN 776-1].) The Court will consider these arguments in turn.

### A. LWD PRP GROUP'S COST RECOVERY CLAIM UNDER § 107(A) OF CERCLA

In Count I, the LWD PRP Group asserts that it is entitled to cost-recovery under § 107(a) of CERCLA for "past and future response costs incurred and to be incurred in response to the release of hazardous substances at and from the LWD Incinerator Site." (2d Am. Compl. [DN 758] ¶¶ 848-65.) The Moving Defendants argue that the Court must dismiss this § 107(a) cost-recovery claim because the LWD PRP Group's exclusive remedy against the Moving Defendants is contribution under § 113(f). (See Moving Defs.' Mem. [DN 776-1] 6-12.) For the following reasons, the Court finds that it would be premature at this point in the litigation to dismiss the LWD PRP Group's § 107(a) cost-recovery claim. The LWD PRP Group has sufficiently pleaded a § 107(a) cost-recovery claim to the extent that some of its alleged $9.5 million in clean-up costs were voluntarily incurred as a result of the LWD PRP Group's negotiations with the KDEP. As such, to the extent the Moving Defendants argue that the LWD PRP Group's exclusive remedy is § 113(f), the Court disagrees. The Moving Defendants' motions are **DENIED** in this respect.

Broadly speaking, CERCLA "facilitates cleanup and remediation of contaminated lands, and shifts the financial burden of such environmental response actions to the parties responsible for releasing hazardous substances." ITT Indus., Inc. v. BorgWarner, Inc., 506 F.3d 452, 456 (6th Cir. 2007) (citation omitted). As the parties have correctly noted, in United States v. Atlantic Research Corp., the Supreme Court held that CERCLA provides two distinct remedies by which PRPs may recover some or all of their hazardous waste clean-up costs from other PRPs: (1) cost-recovery claims under § 107(a); and (2) contribution claims under § 113(f). 551 U.S. 128, 129 (2007). Here, the parties disagree as to which remedy, or remedies, the LWD PRP Group may seek.

The first option, § 107(a), provides that PRPs are liable for "any . . . necessary costs of response incurred by any other person . . . ." 42 U.S.C. § 9607(a)(4)(B). The Sixth Circuit has held that § 107(a) "creates an implied *private* right of action to recover 'necessary costs of response.'" ITT Indus., Inc., 506 F.3d at 456 (citing Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d 344, 347 (6th Cir. 1998)). The second option, § 113(f), is the result of the Superfund Amendments & Reauthorization Act ("SARA"), which was enacted by Congress in 1986. See 42 U.S.C. § 9613(f). Under § 113(f)(1), any person "may seek contribution from any other person who is liable or potentially liable under [§ 107(a)], during or following any civil action under [§ 106] or under [§ 107(a)]." Id. § 9613(f)(1). In addition, under § 113(f)(3)(B), PRPs who resolve their liability to the United States or to a state through an administratively- or judicially-approved settlement may seek contribution from other PRPs. Id. § 9513(f)(3)(B).

In Atlantic Research Corp., the Supreme Court addressed the relationship between §§ 107(a) and 113(f), noting that the sections offer two "clearly distinct" remedies that "complement each other by providing causes of action to persons in different procedural circumstances." 551 U.S. at 138-39. According to the Supreme Court, a PRP that incurs response costs directly may have a cause of action against other PRPs under § 107(a); however, a PRP that simply reimburses

response costs paid by other parties "has not incurred its own costs of response and therefore cannot recover under § 107(a)." Id. at 139. The Sixth Circuit has explained this framework, noting:

> To distinguish when a cost recovery action under § 107(a) is appropriate, as opposed to a contribution action under § 113(f), . . . a § 107(a) action may lie where a party has itself 'incurred' cleanup costs as opposed to reimbursing costs paid by other parties, which is more appropriately covered under § 113(f). To maintain the vitality of § 113(f), however, PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f).

ITT Indus., Inc., 506 F.3d at 458 (citations omitted).

The Moving Defendants argue that under this standard, the LWD PRP Group's exclusive remedy is contribution under § 113(f). Thus, the Moving Defendants urge the Court to dismiss the LWD PRP Group's § 107(a) cost-recovery claim. According to the Moving Defendants, all of the LWD PRP Group's alleged clean-up costs are compelled, as they all relate to the Removal Action AOC. (See Moving Defs.' Mem. [DN 776-1] 8-12.) In its Second Amended Complaint, the LWD PRP Group pleaded that it entered into the Removal Action AOC on March 1, 2007. (2d Am. Compl. [DN 758] ¶ 22.) The Moving Defendants argue that this Removal Action AOC is properly characterized as an "administratively approved settlement," as it states that the parties "agree that this Settlement Agreement constitutes an administrative settlement for purposes of [§] 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B) . . . ." (Removal Action AOC [DN 776-3] ¶ 78(b).) Therefore, the Moving Defendants state that under ITT Indus., Inc., the LWD PRP Group is limited to seeking contribution under § 113(f).

In response, the LWD PRP Group does not dispute that the Removal Action AOC is an "administratively approved settlement," that its response costs under the Removal Action AOC are likewise compelled, or that it must use § 113(f) as the vehicle to recover some of these costs from the Moving Defendants. (See Pl.'s Resp. [DN 914] 10-11.) According to the LWD PRP

Group, however, it can still maintain a § 107(a) cost-recovery action for the costs that it incurred voluntarily during its clean-up of the LWD Incinerator Site.

In support of this argument, the LWD PRP Group first states that in its Second Amended Complaint, it adequately alleges that it incurred voluntary costs. In this respect, the LWD PRP Group highlights Paragraph 25, in which it alleges that it was "currently negotiating with KDEP regarding certain remediation, monitoring and maintenance activities . . . ." (2d Am. Compl. [DN 758] ¶ 25.) The LWD PRP Group argues that the costs it has incurred with the KDEP during its negotiations should be classified as voluntary costs, and that they will not properly be classified as compelled costs until the LWD PRP Group's settlement-in-principle with the KDEP is finalized. (Pl.'s Resp. [DN 914] 9-14.) Next, the LWD PRP Group cites an oft-quoted footnote from the <u>Atlantic Research Corp.</u> decision. In that footnote, the Supreme Court expressly noted that there is an overlap between § 107(a) and § 113(f), and that certain questions remain open with respect to that overlap. The Supreme Court stated:

> We do not suggest that §§ 107(a)(4)(B) and 113(f) have no overlap at all. For instance, we recognize that a PRP may sustain expenses pursuant to a consent decree following a suit under § 106 or § 107(a). In such a case, the PRP does not incur costs voluntarily but does not reimburse the costs of another party. We do not decide whether these compelled costs of response are recoverable under § 113(f), § 107(a), or both. For our purposes, it suffices to demonstrate that costs incurred voluntarily are recoverable only by way of § 107(a)(4)(B), and costs of reimbursement to another person pursuant to a legal judgment or settlement are recoverable only under § 113(f). Thus, at a minimum, neither remedy swallows the other . . . .

551 U.S. at 139 n.6. According to the LWD PRP Group, it can thus bring both a § 107(a) action for its voluntary costs and a § 113(f) action for its compelled costs. (Pl.'s Resp. [DN 914] 10-11.)

The Court agrees with the LWD PRP Group that it can maintain a cost recovery action under § 107(a) for any costs that it voluntarily incurred during its negotiations with the KDEP. However, as the Moving Defendants correctly note, the Second Amended Complaint does not

clearly indicate that some of the allegedly incurred $9.5 million in response costs were incurred in connection with the LWD PRP Group's negotiations with the KDEP. (See Reply to Pl.'s Resp. [DN 935] 10.) In the Second Amended Complaint, the LWD PRP Group alleges that it "incurred over $9.5 million in LWD Incinerator Site response costs." (2d Am. Compl. [DN 758] ¶ 27.) The LWD PRP Group also alleges that it was "currently negotiating with KDEP regarding certain remediation, monitoring and maintenance activities . . . ." (Id. ¶ 27.) However, the LWD PRP Group failed to indicate whether the alleged $9.5 million in response costs included costs that were incurred during negotiations with the KDEP—or whether the alleged $9.5 million in response costs were solely incurred in connection with the Removal Action AOC.[3] As such, the Court finds the factual allegations in the Second Amended Complaint to currently be insufficient to support the LWD PRP Group's § 107(a) cost-recovery claim.

The fact that the LWD PRP Group failed to allege the nature of the $9.5 million in costs, however, does not mean that the § 107(a) cost-recovery claim must be dismissed. Instead, the Court finds that the appropriate response is to allow the LWD PRP Group to amend its Second Amended Complaint. In its response, the LWD PRP Group sought leave to amend its Second Amended Complaint if the Court decides that its allegations are insufficient. Generally, leave to amend is "freely given when justice so requires." Keweenaw Bay Indian Cmty. v. State of Mich., 11 F.3d 1341, 1348 (6th Cir. 1993) (quoting Fed. R. Civ. P. 15(a)); Morse v. McWhorter, 290 F.3d 795, 799-800 (6th Cir. 2002). A court may consider many factors when determining whether justice requires allowing an amendment, including: undue delay, bad faith or dilatory motive on the movant's part, undue prejudice, the futility of the amendment, or the repeated failure to cure

---

[3] Contrary to the Moving Defendants' argument, however, a review of the Second Amended Complaint also does not show that "all the alleged costs to date relate to work performed pursuant to the [Removal Action AOC]." (Reply to Pl.'s Resp. [DN 935] 10.) Indeed, the Second Amended Complaint contains no allegation that somehow limits the "$9.5 million in LWD Incinerator Site response costs" to costs incurred under the Removal Action AOC.

deficiencies by amendments previously allowed. <u>Forman v. Davis</u>, 371 U.S. 178, 182 (1962). To deny a motion to amend, a court must decide that there is "at least some significant showing of prejudice to the opponent." <u>Duggins v. Steak 'N Shake</u>, 195 F.3d 828, 834 (6th Cir. 1999).

Here, the Court does not find that the LWD PRP Group acted with bad faith or dilatory motive, nor did its actions constitute undue delay. The LWD PRP Group simply failed to allege in its Second Amended Complaint the nature of the $9.5 million in response costs—and whether those costs included costs that were incurred during negotiations with the KDEP. Further, the Court finds that if it granted the LWD PRP Group leave to amend, the prejudice to the Moving Defendants would be relatively mild, as the LWD PRP Group is not trying to assert a new claim. Instead, it is simply clarifying the factual basis to support its current § 107(a) claim. Little or no additional discovery will be required. As such, the Court concludes that it is appropriate to allow the LWD PRP Group to amend its Second Amended Complaint to allege the nature of the $9.5 million in response costs. To the extent that the LWD PRP Group alleges that it incurred some of the $9.5 million in response costs during negotiations with the KDEP, the LWD PRP Group will have adequately alleged facts to support its cost-recovery action under § 107(a).

The Court notes that the Moving Defendants argue that even if the LWD PRP Group's Second Amended Complaint could be read to have pleaded costs other than those related to the Removal Action AOC, "the pleading simply does not set forth that such 'costs' were voluntarily incurred." (Reply to Pl.'s Resp. [DN 935] 11.) In this respect, the Moving Defendants highlight that the LWD PRP Group alleged that its negotiations with the KDEP involved "activities that KDEP is **requiring** to be conducted at the LWD Incinerator Site . . . ." (2d Am. Compl. [DN 758] ¶ 27 (emphasis added).) According to the Moving Defendants, the LWD PRP Group's use

of the word "requiring" indicates that any costs relating to the KDEP were all compelled, and the LWD PRP Group's inability to identify voluntarily incurred costs is fatal to its § 107(a) claim.

The Court finds, however, that the LWD PRP Group's use of the word "requiring" does not indicate that the costs were "compelled" under the <u>Atlantic Research Corp.</u> and <u>ITT Indus., Inc.</u> framework. As other courts have explained, the "distinction between compelled and voluntary cleanups is in some measure artificial; virtually all cleanups are performed by a party who is at least facing the specter of potential liability under CERCLA." <u>Solutia, Inc. v. McWane, Inc.</u>, 726 F. Supp. 2d 1316, 1340-41 (N.D. Ala. 2010) (internal quotation marks omitted) (citing <u>Atlantic Research Corp.</u>, 551 U.S. at 136-37). Thus, while the LWD PRP Group alleged it was "required" to take certain actions by the KDEP, that does not suggest that the costs were "compelled" as opposed to "voluntary." When the facts are construed in the light most favorable to the LWD PRP Group, the use of the word "requiring" could simply indicate that the LWD PRP Group was voluntarily incurring costs due to fears of potential liability. Again, the LWD PRP Group may amend its Second Amended Complaint and maintain a § 107(a) claim for any costs that were related to its negotiations with the KDEP.

The Moving Defendants argue that this conclusion is inconsistent with case law and that the LWD PRP Group should not be permitted to maintain a § 107(a) cost-recovery claim. In this respect, the Moving Defendants contend that "[e]very United States Court of Appeals to consider the question, including the Sixth Circuit has held that a party with a CERCLA § 113(f) contribution claim cannot also seek recovery under CERCLA § 107(a)." (Moving Defs.' Mem. [DN 776-1] 8 (citing cases).) The Court disagrees with this analysis. To be sure, the Supreme Court has held that a PRP that incurs response costs directly may have a cause of action against other PRPs under § 107(a), but a PRP that reimburses response costs paid by other parties "has not incurred its own costs of response and therefore cannot recover under § 107(a)." <u>Atlantic Research Corp.</u>,

551 U.S. at 139. Also, the Sixth Circuit has held that a PRP must seek contribution under § 113(f) of CERCLA when it has entered into an administratively approved settlement. However, in these cases, neither the Supreme Court nor the Sixth Circuit addressed the question present here—namely, what remedies are available to a PRP that allegedly incurred response costs both voluntarily and under compulsion. Thus, the courts have left open the potential for a PRP, such as the LWD PRP Group, to assert both a § 107(a) cost-recovery claim for its voluntary response costs and a § 113(f) contribution claim for its compelled response costs. Accordingly, the Court finds that dismissing the LWD PRP Group's § 107(a) claim would be premature at this point in the litigation.[4] Notably, the LWD PRP Group is not seeking to double-recover for the same costs under both § 107(a) and § 113(f). The Moving Defendants' motions to dismiss the LWD PRP Group's cost-recovery claim under § 107(a) are **DENIED**.

### B. LWD PRP GROUP'S CLAIM FOR CONTRIBUTION UNDER § 113(F) OF CERCLA

The Moving Defendants next argue that the LWD PRP Group's § 113(f) contribution claim is time-barred with respect to the costs incurred under the Removal Action AOC. (Moving Defs.' Mem. [DN 776-1] 12-14.) According to the Moving Defendants, the statute of limitations applicable to the LWD PRP Group's contribution claim is found in § 113(g)(3), which provides:

> No action for contribution for any response costs or damages may be commenced more than 3 years after –
>> (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or
>> (B) the date of an administrative order under [§ 122(g)] of this title (relating to de minimis settlements) or [§ 122(h)] of this title (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.

---

[4] The Court notes that the LWD PRP Group concedes that "there may come a time in this case where the LWD PRP Group's incurred response costs may all become 'compelled' response costs limiting the LWD PRP Group to only a CERCLA Section 113(f) contribution claim . . ." (Pl.'s Resp. [DN 914] 14.) In this respect, the LWD PRP Group states that "once the settlement with the State to perform certain further remedial actions at the LWD Incinerator Site is completed, it may very well be the case that all of the 'voluntary' actions and attendant response costs incurred by the LWD PRP Group . . . are properly reclassified as 'compelled' actions and response costs . . . ." (Id.)

42 U.S.C. § 9613(g)(3). The Moving Defendants state that this statute provides the appropriate statute of limitations for this—and all—contribution claims which are brought under § 113(f).

In support of their position that § 113(f) contribution claims are subject to the three-year statute of limitations found in § 113(g)(3), the Moving Defendants cite <u>Cooper Industries, Inc. v. Aviall Servs., Inc.</u>, 543 U.S. 157 (2004). There, the Supreme Court noted that § 113(f) "provides two express avenues for contribution: § 113(f)(1) ('during or following' specified civil actions) and § 113(f)(3)(B) (after an administrative or judicially approved settlement that resolves liability to the United States or a State)." <u>Id.</u> at 167. The Court then noted that § 113(g)(3) "provides two corresponding 3-year limitations periods for contribution actions, one beginning at the date of judgment, § 113(g)(3)(A), and one beginning at the date of settlement, § 113(g)(3)(B)." <u>Id.</u> at 167. The Moving Defendants argue that this language indicates that all limitations periods for CERCLA contribution claims can be found in § 113(g)(3).

As additional support for their position that all § 113(f) contribution claims are subject to the three-year statute of limitations found in § 113(g)(3), the Moving Defendants cite <u>ITT Indus., Inc.</u>, in which the Sixth Circuit noted that the "statute of limitations for asserting a contribution claim under [§ 113(f)] is three years, and it begins to run on 'the date of . . . entry of a judicially approved settlement.'" 506 F.3d at 459 n.3. Further, the Moving Defendants cite <u>Hobart Corp. v. Waste Management of Ohio, Inc.</u>, in which the district court stated that courts "have generally recognized that CERCLA contains a 3-year statute of limitations period for [§] 113 contribution claims, without further refining the scope of the types of contribution claims . . . ." 840 F. Supp. 2d 1013, 1034 (S.D. Ohio 2011) ("<u>Hobart I</u>"). According to the Moving Defendants, the three-year statute of limitations thus applies—and began to run on March 1, 2007, the effective date of the Removal Action AOC. Likewise, the statute expired on March 1, 2010, well before the LWD

PRP Group filed suit on August 23, 2012 and before the Moving Defendants were added as party defendants on December 31, 2012. The Moving Defendants contend that the LWD PRP Group's § 113(f) contribution claim is time-barred and must be dismissed.

The LWD PRP Group responds that the Moving Defendants rely on the wrong statute of limitations with respect to the costs incurred under the Removal Action AOC. According to the LWD PRP Group, the proper statute of limitations for those costs is contained in § 113(g)(2), as opposed to § 113(g)(3). The LWD PRP Group states that § 113(g)(3), by its very terms, only applies to § 122(g) *de minimis* settlements, § 122(h) cost-recovery settlements with the EPA or a state, or judicially-approved settlements. The LWD PRP Group then argues that the Removal Action AOC is not a § 122(g) *de minimis* settlement, § 122(h) cost-recovery settlement with the EPA, or a judicially-approved settlement. The LWD PRP Group states that without a § 113(g)(3) triggering event, the Court must borrow a triggering event from § 113(g)(2), which provides:

> An initial action for recovery of the costs referred to in [§ 107(a)] of this title must be commenced—
>
> (A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section 9604(c)(1)(C) of this title for continued response action; and
>
> (B) for remedial action, within 6 years after initiation of physical on-site construction of the remedial action, except that, if the remedial action is initiated within 3 years after the completion of the removal action, costs incurred in the removal action may be recovered in the cost recovery action under this paragraph.

42 U.S.C. 9613(g)(2). The LWD PRP Group argues that the applicable statute of limitations thus began running the date the removal action was completed—not the effective date of the Removal Action AOC. Therefore, the three-year statute of limitations began running September 29, 2009, when the EPA issued a Notice of Completion. (2d Am. Compl. [DN 758] ¶ 23.)

To support its position that a court must borrow from one of the § 113(g)(2) triggering events when there is no § 113(g)(3) triggering event, the LWD PRP Group cites cases from the Fifth and Tenth Circuits. In these cases, the Fifth and Tenth Circuits held that without a § 122(g) *de minimis* settlement, a § 122(h) cost-recovery settlement with the EPA or a state, or a judicially-approved settlement, the court must borrow from one of the triggering events in § 113(g)(2). <u>See Geraghty & Miller, Inc. v. Conoco Inc.</u>, 234 F.3d 917, 924-26 (5th Cir. 2000); <u>Sun Co., Inc. v. Browning-Ferris, Inc.</u>, 124 F.3d 1187, 1192-93 (10th Cir. 1997). In essence, the Courts held that a § 113(f) contribution action is a claim for the collection of costs referred to in § 107(a). Thus, if there has been no prior § 107(a) cost-recovery action, the § 113(f) contribution action becomes an "initial action for recovery of the costs," as contemplated in § 113(g)(2). <u>Geraghty & Miller, Inc.</u>, 234 F.3d at 924-26; <u>Sun Co., Inc.</u>, 124 F.3d at 1192-93. According to the Tenth Circuit, "[i]n this way, Congress has provided an express statute of limitations to cover all CERCLA contribution actions, regardless of how the PRPs in question incurred their cleanup costs." <u>Sun Co., Inc.</u>, 124 F.3d at 1193.

The LWD PRP Group argues that this analysis should apply here, and that under § 113(g)(2), its action is timely. The LWD PRP Group filed its complaint naming the original *de minimis* Moving Defendants on August 31, 2012. Thus, it contends that its action against the *de minimis* Moving Defendants was filed before the limitations period expired on September 29, 2012. (Pl.'s Resp. [DN 914] 21.) Also, the LWD PRP Group filed its First Amended Complaint naming the non-*de minimis* Moving Defendants on December 31, 2012. (1st Am. Compl. [DN 466].) The LWD PRP Group contends that while this was after September 29, 2012, its action is nonetheless timely, as the non-*de minimis* Moving Defendants had entered into tolling agreements with the LWD PRP Group and the EPA, in which they agreed to toll the time period between

April 2, 2012 to December 31, 2012 for the LWD PRP Group to bring claims against the non-*de minimis* Moving Defendants. (See Pl.'s Resp. [DN 914] 21-22; Tolling Agreement [DN 914-3].) The LWD PRP Group also argues that the Hobart I case cited by the Moving Defendants did not involve a removal action like this, and that the Moving Defendants have not cited a case holding that the statute of limitations for a removal action is three years from the date that the agreement to conduct the removal action is executed. (Pl.'s Resp. [DN 914] 19.)

The Court finds the LWD PRP Group's position more persuasive and holds that without a § 122(g) *de minimis* settlement, a § 122(h) cost-recovery settlement with the EPA or a state, or a judicially-approved settlement, a district court must borrow from one of the triggering events in § 113(g)(2). As the LWD PRP Group notes, Sun Co., Inc. is an oft-cited CERCLA case on the statute of limitations issue, and it has been cited by the Sixth Circuit on more than one occasion. See, e.g., RSR Corp. v. Comm. Metals Co., 496 F.3d 552, 559 (6th Cir. 2007) (noting that its holding did not conflict with the Tenth Circuit's decision in Sun Co., Inc.); GenCorp., Inc. v. Olin Corp., 390 F.3d 433, 442 (6th Cir. 2004) (citing Sun Co., Inc. for the proposition that "where a party bringing a contribution suit incurs clean-up costs by means other than a judgment or a settlement . . . that suit *is* the 'initial action' for recovery of costs under § 113(g)(2)"). Also, at least two other district courts from the Sixth Circuit have expressly adopted the analysis and holding of Sun Co., Inc. on this issue, including a court from the Southern District of Ohio, from which the Hobart I opinion was issued. See Douglas Autotech Corp. v. The Scott Fetzer Co., 2008 WL 205217, at *3-4 (W.D. Mich. Jan. 23, 2008); Cytec Indus., Inc. v. B.F. Goodrich Co., 232 F. Supp. 2d 821, 830-32 (S.D. Ohio 2002).

Deciding that the Sun Co., Inc. analysis is appropriate, however, does not end the inquiry. The Court must determine whether the Removal Action AOC constitutes a § 122(g) *de minimis*

settlement, a § 122(h) cost-recovery settlement with the EPA, or a judicially-approved settlement

such that § 113(g)(3) applies. In this respect, the Court first finds that the Removal Action AOC

is neither a § 122(g) *de minimis* settlement nor a judicially-approved settlement. The Moving

Defendants do not dispute these facts. (<u>See</u> Reply to Pl.'s Resp. [DN 935] 4.) The parties

disagree, however, as to whether the Removal Action AOC is a § 122(h) cost-recovery settlement.

The Moving Defendants argue that the Removal Action AOC is a § 122(h) cost-recovery

settlement (and that this case thus falls within one of the § 113(g)(3) triggering events, rendering

§ 113(g)(2) inapplicable). In support, they highlight the Removal Action AOC, which provides:

> The Parties agree that this Settlement Agreement constitutes an administrative
> settlement for purposes of Section 113(f)(2) of CERCLA . . . and that Respondents
> are entitled . . . to protection from contribution actions or claims as provided by
> Sections 113(f)(2) and 122(h)(4) of CERCLA . . . for 'matters addressed' in this
> Settlement Agreement.

(Removal Action AOC [DN 776-3] 3.) According to the Moving Defendants, this language shows

that "the Plaintiff's members expressly <u>agreed</u>" that the Removal Action AOC is a § 122(h) cost-

recovery settlement. (<u>See</u> Reply to Pl.'s Resp. [DN 935] 4.) The Moving Defendants contend that

since the Removal Action AOC references § 122(h)(4), there can be no doubt that the applicable

limitations period is three years from the effective date of the Removal Action AOC.

The LWD PRP Group, by contrast, argues that the Removal Action AOC is not a § 122(h)

cost-recovery settlement (and that this case thus falls outside of the § 113(g)(3) triggering events,

rendering § 113(g)(2) applicable). The LWD PRP Group cites <u>ITT Indus., Inc.</u> in support of this

position. In that case, the Sixth Circuit analyzed an AOC that included both a work component

and a cost-reimbursement component, ultimately concluding that it was not a § 122(h) settlement

because it was executed under § 122(a). 506 at 460-61. In other words, the Sixth Circuit held that

the AOC was not a § 122(h) settlement even though the plaintiff was reimbursing the United

States for some of its response costs. Id. The LWD PRP Group argues that the Removal Action AOC is similarly not a § 122(h) settlement.

The Moving Defendants respond that ITT Indus., Inc. is distinguishable from this case. In this respect, the Moving Defendants cite Hobart Corp. v. Waste Management of Ohio, Inc., in which the court held that an AOC "could also be interpreted as an administrative order under § 122(h)," as the AOC expressly stated that it was entered into under § 122(h). 923 F. Supp. 2d 1086, 1096 (S.D. Ohio 2013) ("Hobart II"). According to the Moving Defendants, the facts of this case are more similar to Hobart II than ITT Indus., Inc. because the Removal Action AOC expressly references § 122(h).

Based on the logic of ITT Indus., Inc., the Court agrees with the LWD PRP Group that the Removal Action AOC is not properly classified as a § 122(h) cost-recovery settlement with the EPA, even though it contains a cost-reimbursement component. Instead, the purpose of the Removal Action AOC was for former LWD customers to agree to perform specified remaining time-critical removal action activities at the LWD Incinerator Site and pay for the EPA's future costs associated with the LWD Incinerator Site. (2d Am. Compl. [DN 758] ¶ 22.) It was not to reimburse the EPA's past costs. Indeed, the Court finds that the Past Costs AOC is the § 122(h) cost-recovery settlement in this case. (See Past Costs AOC [DN 914-2].) Because the Removal Action AOC is not a § 122(h) cost-recovery settlement, none of the triggering events in § 113(g)(3) have occurred. The Court must apply the statute of limitations from § 113(g)(2).

The Court's conclusion does not change in light of the Hobart II decision, as Hobart II is distinguishable from this case. In Hobart II, the reference to § 122(h) was not placed in a section that discusses how a plaintiff is entitled to protection from contribution actions or claims. Instead, the AOC stated that it was entered into pursuant to the authority delegated by the President and

authorized by "Sections 104, 107 and 122, including Section 122(h), of CERCLA," governing cost-recovery settlements. Hobart II, 923 F. Supp. 2d at 1096. Here, though, the Removal Action AOC states that it was issued "under the authority vested in the President of the United States by Sections 104, 106(a), 107 and 122 of [CERCLA] . . . ." (Removal Action AOC [DN 776-3] 3.) Section 122(h) was not expressly referenced. Therefore, contrary to the Moving Defendants' argument, the parties did not expressly agree that the Removal Action AOC was a § 122(h) settlement. Section 122(h)(4) was merely referenced in a section dealing with the LWD PRP Group's protection from contribution actions or claims. This does not transform the Removal Action AOC into a § 122(h) settlement. None of the § 113(g)(3) triggering events have occurred. Section 113(g)(2) applies.

As noted above, under § 113(g)(2), an "initial action for recovery of the costs" for a removal action must be commenced within three years after completion of the removal action. 42 U.S.C. 9613(g)(2)(A). In the instant case, because the EPA did not file a civil action or otherwise initiate a cost-recovery action against the LWD PRP Group for any removal action activities under the Removal Action AOC, the LWD PRP Group's action is the "initial action for recovery of the costs" and must be commenced within three years after completion of the Removal Action AOC. The Removal Action AOC was completed on September 29, 2009, when the EPA issued a Notice of Completion. (2d Am. Compl. [DN 758] ¶ 23.) Therefore, the three-year statute of limitations began running on that date and expired on September 29, 2012.

As noted by the LWD PRP Group, it filed its complaint naming the original *de minimis* Moving Defendants on August 31, 2012, which is before the limitations period expired on September 29, 2012. Thus, as for the *de minimis* Moving Defendants, the Court finds that the LWD PRP Group's action is timely. In addition, the LWD PRP Group filed its First Amended

Complaint naming the non-*de minimis* Moving Defendants on December 31, 2012. (1st Am. Compl. [DN 466].) While this was after September 29, 2012, the Court nonetheless finds that the LWD PRP Group's action is timely. This is because the non-*de minimis* Moving Defendants had entered into tolling agreements with the LWD PRP Group and the EPA, in which they agreed to toll the time period between April 2, 2012 to December 31, 2012 for the LWD PRP Group to bring claims against the non-*de minimis* Moving Defendants. (See Tolling Agreement [DN 914-3].) The Moving Defendants do not contest either the existence or the applicability of the tolling agreements. Thus, the Court holds that in light of the tolling agreements, the LWD PRP Group's action against the non-*de minimis* Moving Defendants is timely. The motions to dismiss the LWD PRP Group's § 113(f) contribution claim on statute of limitations grounds are **DENIED**.

### C. LWD PRP GROUP'S STATE CLAIMS FOR COST-RECOVERY AND CONTRIBUTION

The Moving Defendants next argue that the LWD PRP Group's state cost-recovery and contribution claims must be dismissed. (Moving Defs.' Mem. [DN 776-1] 11-12, 14.) In essence, the Moving Defendants argue that because K.R.S. § 224.01-400(25) "references and incorporates CERCLA and, by implication, interpreting case law thereunder, if Plaintiff has no claim for cost recovery under CERCLA § 107(a), then it has no claim for such cost recovery pursuant to state law, either." Likewise, the Moving Defendants argue that "if Plaintiff has no claim under CERCLA § 113(f), it has no claim under a state law incorporating that statute by reference." (Id.)

The Court agrees with the Moving Defendants that the viability of the LWD PRP Group's state claims depends on the viability of its federal claims. Therefore, because the Court has found that dismissing the LWD PRP Group's § 107(a) cost-recovery claim would be premature at this point in litigation, it also finds that dismissing its state cost-recovery claim would be premature. In addition, because the Court has found that dismissing the LWD PRP Group's § 113(f)

contribution claim would be improper, it also finds that dismissing its state contribution claim would be improper. The Moving Defendants' motions to dismiss the state claims are **DENIED**.

### D. EXISTENCE OF CURRENT SUBSTANTIVE CAUSE OF ACTION

The Moving Defendants' next argument is that the LWD PRP Group cannot properly seek a declaratory judgment under CERCLA because it has no current substantive cause of action. (See Moving Defs.' Mem. [DN 776-1] 14-15.) However, the Court has found that the LWD PRP Group has substantive causes of action under both § 107(a) and § 113(f) of CERCLA. As such, the Court finds that the LWD PRP Group may properly seek a declaratory judgment under CERCLA. The Moving Defendants' motions to dismiss are **DENIED** in this regard.

### E. SPECULATIVE AND UNRIPE

The Moving Defendants next argue that the LWD PRP Group cannot seek a declaratory judgment under CERCLA as to each Moving Defendant's future liability at the LWD Incinerator Site, as such claims are speculative and unripe. (See Moving Defs.' Mem. [DN 776-1] 15-17.) In this regard, the Moving Defendants focus on the LWD PRP Group's allegation that as of March 29, 2013, it was negotiating with the EPA regarding a settlement under § 122(h) of CERCLA for the EPA's past response costs at the LWD Incinerator Site, (2d Am. Compl. [DN 759] ¶ 24), and also negotiating with the KDEP on "certain remediation, monitoring and maintenance activities . . . ." (Id. ¶ 25.) The Moving Defendants argue that to the extent that the LWD PRP Group bases its claims under § 107(a) and 113(f) on these "as-yet-inconclusive negotiations," the LWD PRP Group fails to state a claim upon which relief can be granted. (Moving Defs.' Mem. [DN 776-1] 15.) The Moving Defendants also argue that in the alternative, such claims are not yet ripe. (Id.)

In support of their ripeness argument, the Moving Defendants contend that although the alleged negotiations with the EPA and the KDEP could result in a settlement, they could also

break down and result in a future enforcement action—or nothing at all. The Moving Defendants also contend that some of the members of the LWD PRP Group could settle with the EPA or the KDEP while others could decide to forego settlement. Further, the Moving Defendants contend that the KDEP or the EPA could seek cost-recovery from the members of the LWD PRP Group as well as one or more of the Defendants in this case, making any contribution claims against those Defendants moot. In sum, the Moving Defendants state that the likelihood that the alleged harm will come to pass is speculative; the Court should dismiss the LWD PRP Group's claims.

The LWD PRP Group responds that the Moving Defendants' ripeness argument is moot and without merit. In support, the LWD PRP Group states that its negotiations with the EPA over past response costs have concluded, with the LWD PRP Group having entered into a Past Costs AOC, agreeing to pay the EPA $4.116 million of its unreimbursed past response costs. (See Pl.'s Resp. [DN 914] 24.) The LWD PRP Group also states that while the Past Costs AOC has not yet finalized, it has been executed and published in the Federal Register. (See id.) In addition, the LWD PRP Group states that it has reached a "settlement-in-principle" with the KDEP for future remedial activities at the LWD Incinerator Site. (Id. at 24-25.) According to the LWD PRP Group, the exact amount of future response costs does not have to be known for the Court to enter the requested CERCLA declaratory judgment against the Moving Defendants.

In considering whether a claim is ripe for adjudication, the Court must consider: (1) "the likelihood that the harm alleged . . . will ever come to pass"; (2) "whether the factual record . . . is sufficiently developed to produce a fair and complete hearing as to the prospective claims"; and (3) the hardship that refusing to consider plaintiff's prospective claims would impose upon the parties." United Steelworkers of Am., Local 2116 v. Cyclops Corp., 860 F.2d 189, 194-96 (6th Cir. 1988). In this case, after considering these factors, the Court agrees with the LWD PRP

Group that the Moving Defendants' argument is moot and without merit. In light of the current status of the LWD PRP Group's negotiations with the EPA and the KDEP, the Court finds that there is a substantial likelihood that the alleged harm will come to pass. The Court may properly enter a declaratory judgment for the Defendant's respective equitable shares of future response costs. Further, the Court may enter a declaratory judgment as to the Moving Defendants' future liability. See, e.g., Vine Street, LLC v. Keeling, 460 F. Supp. 2d 728, 766 (E.D. Tex. 2006) (rejecting the defendants' argument that the court should decline to enter a declaratory judgment as to future liability on the grounds that: (1) § 113(g)(2) requires that the Court issue a declaratory judgment determining the parties' future liability for response costs; and (2) the plaintiff was not asking the court to determine what the future response costs would be or award those costs in a lump-sum payment). As to this issue, the Moving Defendants' motions to dismiss are **DENIED**.

## F. REAL PARTY IN INTEREST

As a final matter, the Moving Defendants argue that the LWD PRP Group cannot sue in the name of the "LWD PRP Group" because it is not the real party in interest. Fed. R. Civ. P. 17 provides that an action "must be prosecuted in the name of the real party in interest." Fed R. Civ. P. 17(a)(1). The Moving Defendants argue that here, the real parties in interest are the companies who signed the Removal Action AOC—not an association known as the "LWD PRP Group." See Boarhead Farm Agreement v. Advanced Envtl. Tech. Corp., 381 F. Supp. 2d 427, 432-33 (E.D. Pa. 2005) (holding that under CERCLA, the PRPs are the real parties in interest). As such, the Moving Defendants propose that the individual companies who signed the Removal Action AOC should be required to sue in their individual names. According to the Moving Defendants, there is no allegation that the "LWD PRP Group" is itself an incorporated entity—or that the

LWD PRP Group is anything but a loose association of companies. (See Moving Defs.' Mem. [DN 776-1] 18.)

The LWD PRP Group counters that it may properly file suit in the name of the "LWD PRP Group," its unincorporated association. According to the LWD PRP Group, voluntary PRP associations are permitted to file suits despite the fact that they are creatures of contract, created to facilitate clean-up and cost recovery efforts of cooperating PRPs. In support of this position, the LWD PRP Group cites Karras v. Teledyne Indus., Inc., 191 F. Supp. 2d 1162, 1167-68 (S.D. Cal. 2002). In Karras, the district court noted that federal courts routinely adjudicate CERCLA actions brought by unincorporated PRP associations. See id. (citing Kalamazoo River Study Grp. v. Menasha Corp., 228 F.3d 648, 650 (6th Cir. 2000) (where the plaintiff was an "unincorporated association of paper manufacturers seeking to recover . . . costs"); Ekotek Site PRP Comm. v. Self, 1 F. Supp. 2d 1282, 1289 (D. Utah 1998) (where the plaintiff was a "voluntary association of approximately 56 members" that was formed "to negotiate with the EPA to undertake response activities with respect to the [Superfund] Site")).

The Court agrees with the LWD PRP Group that it may properly file suit in the name of the "LWD PRP Group." Under Fed. R. Civ. P. 17(b), an "unincorporated association . . . may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A). Here, the LWD PRP Group is a voluntary group of PRPs that is suing to enforce a substantive right under CERCLA. There is nothing in CERCLA to prohibit a voluntary association of PRPs from enforcing this right. Indeed, as noted by the LWD PRP Group, federal courts routinely adjudicate CERCLA actions which are brought by unincorporated PRP associations. The LWD PRP Group should not be required to amend the

action's caption to substitute the names of the individual members of the LWD PRP Group for the "LWD PRP Group." The Moving Defendants' motions are **DENIED** in this respect.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motions to dismiss of the Moving Defendants [DNs 776, 857, 865, 881, 921, 934, 950] are **DENIED**. The LWD PRP Group is ordered to file an amended complaint **NO LATER THAN 20 DAYS** from the entry of this Memorandum Opinion and Order.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

February 7, 2014

cc: counsel of record