**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION**

| | |
|---|---|
| **LWD PRP GROUP,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**ACF INDUSTRIES LLC, et al.** )<br>)<br>**Defendants.** )<br>) | Civil Action No. 5:12-CV-00127-JHM-HBB |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR RECONSIDERATION
OR ALTERNATIVELY MOTION FOR INTERLOCUTORY APPEAL
OR MOTION TO STAY PENDING OUTCOME OF APPEAL**

**INTRODUCTION**

Plaintiff LWD PRP Group ("Plaintiff"), by and through counsel, respectfully submits the following Response to the pending Motion for Reconsideration or alternatively, Motion for Interlocutory Appeal or Motion to Stay Pending Outcome of Appeal, which was filed by the remaining members of the Joint Defense Group ("JDG"). The JDG merely repeats arguments that were addressed in detail by this Court in its ruling denying the JDG's Motion to Dismiss. An interlocutory appeal is not appropriate since Plaintiff has and continues to settle with most of the Defendants, including several JDG members, and the costs involved in the limitations arguments re-raised by the JDG are a minority of the response costs incurred and to be incurred by Plaintiff at the LWD Incinerator Site. A Stay pending the *Hobart* appeal is also not appropriate. This case will resolve itself quicker without another Stay.

**ARGUMENT**

**I.      The Motion for Reconsideration Simply Re-Argues the Original Motion to Dismiss**

The JDG admits that a Motion for Reconsideration under Fed. R. Civ. P. 59(e) "is not an opportunity to re-argue a case," *Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998) (*citing FDIC v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992)); and that such motions "are extraordinary and sparingly granted." *Western Kentucky Royalty Trust v. Armstrong Coal Reserves, Inc.*, No. 4:11-CV-114-M, 2013 WL 4500189, at *2 (W.D. Ky. Aug. 21, 2013); *see* Defs.' Mot. At 3. The JDG has not raised any newly-discovered evidence or pointed to an intervening change in controlling law, so the JDG can only prevail on its Motion for Reconsideration if it convinces the Court that its February 7, 2014 Memorandum Opinion and Order contains a clear error of law, or manifest injustice will occur if the Court does not reserve itself. *Western Kentucky Royalty Trust*, 2013 WL 4500189, at *1.

The JDG focuses its reconsideration argument on its previously-argued statute of limitations argument and the *Hobart* cases. *See* Defs.' Mot. for Reconsideration at 3-9. In doing so, the JDG simply restates the very arguments it made in the extensive papers it filed to argue its Motion to Dismiss. For example, the JDG spends several pages arguing that the Removal Action AOC in this case is identical to the AOC in the *Hobart* cases, based only on a couple of excerpts from both documents. *See* Defs.' Mot. for Reconsideration at 3-6. They even continue to refuse to call the AOC in this case the "Removal Action AOC" (as it is commonly known) to try to obfuscate the issue and to somehow make the Removal Action AOC sound much more like the AOC in the *Hobart* cases. *Id.* In its Memorandum in Support of its Motion to Dismiss and again in its Reply to Plaintiff's Response to its Motion to Dismiss, the JDG pointed to same exact language excerpts from both the Removal Action AOC in this case and the AOC from the

*Hobart* cases, and made the same exact arguments it is making in its Motion for Reconsideration. *Compare* Defs.' Mot. for Reconsideration at 3-6 *to* Defs' Mem. in Support of Mot. to Dismiss at 9-11 [DN 776-1] *and* Defs.' Reply to Response to Mot. to Dismiss at 2-4 [DN 935]. The JDG is doing nothing more than making the same arguments to this Court for a third time.

In its February 7, 2014 Memorandum Opinion and Order denying the JDG's Motion to Dismiss, this Court spent several pages analyzing all the relevant cases cited by both Plaintiff and the JDG, including both the *Hobart I* and *Hobart II* decisions, and properly concluded that the Removal Action AOC in this case is not a CERCLA Section 122(h) cost-recovery settlement, even though it contains a cost-reimbursement component. *See* Feb. 7, 2014 Mem. Op. and Order at 12-18 [DN 961]. All of the arguments the JDG previously made on this issue, which the JDG is re-arguing in its Motion for Reconsideration, were analyzed in detail and rejected by this Court.

The facts of this case, as presented in more detail in the Third-Amended Complaint the Court required Plaintiff to file, fully support the Court's ruling on this issue. The Section 122(h) cost-recovery settlements between Plaintiff and EPA in this case are the April 2013 EPA Past Costs AOC I whereby Plaintiff paid $4,144,120 in EPA's past response costs on August 27, 2013, and the recently finalized EPA Past Costs AOC II whereby Plaintiff has agreed to pay EPA an additional $667,845 of its past response costs. *See* Third Am. Compl. at ¶¶ 26-27 [DN 985]. This means that Plaintiff will have paid over 85% of EPA's total past response costs through EPA Past Costs AOCs I and II, not the Removal Action AOC.[1] Consequently, the Court

---

[1] EPA's total past response costs are $5,647,617, hence ($4,144,120 + $667,845)/$5,647,617 = 85.2%. The Court should note that even the $813,865 and $21,787 in EPA's past response costs Plaintiff paid to EPA in accordance with the Removal Action AOC were paid on September 23, 2009 and November 15, 2010, respectively, which dates are less than three years before Plaintiff filed this lawsuit. *See* Third Am. Compl. at ¶ 25 [DN 985].

is right by stating the Removal Action AOC was primarily an agreement whereby the Plaintiff was required to conduct time-critical removal action activities at the LWD Incinerator Site, and that the EPA Past Costs AOC I is one of the Section 122(h) cost-recovery settlements in this case. *See* Feb. 7, 2014 Mem. Op. and Order at 18 [DN 961].

**II.     An Interlocutory Appeal is Not Appropriate in this Case**

In arguing that the Court should certify the statute of limitations issue for interlocutory appeal if the Court denies the JDG's Motion for Reconsideration, the JDG incorrectly claims that the costs at issue under the Removal Action AOC constitute a "substantial portion of the Plaintiff's claims." *See* Defs.' Mot. for Reconsideration at 10. This is simply wrong. Again, as the Court required, Plaintiff filed a Third Amended Complaint further detailing Plaintiff's response costs. Plaintiff incurred $7,136,970 in response costs from March 2007 through September 2009 to conduct the time-critical removal action activities required under the Removal Action AOC. *See* Third Am. Compl. at ¶ 24 [DN 985]. As detailed above, Plaintiff has or will incur another $5,647,617 in response costs to reimburse EPA for its past response costs. *Id.* at ¶¶ 25-27. More importantly, these past response costs do not include the future response costs Plaintiff will have to incur to conduct certain remediation, monitoring and maintenance activities that KDEP is requiring to be conducted at the LWD Incinerator Site, or the reimbursement of KDEP's past and future response costs. *Id.* at ¶¶ 29, 31-32. Contrary to the JDG's assertion and based on current estimates from Plaintiff's environmental consultant, the $7,136,970 in past response costs incurred by Plaintiff under the Removal Action AOC only represent between 20-40% of the total response costs Plaintiff will incur at the LWD Incinerator Site. The remaining JDG members, as recalcitrant parties who refused to join the Plaintiff LWD

PRP Group to be involved in the process at the LWD Incinerator Site, can only speculate as to the total response costs at this Site.

As the JDG admits, the question of whether an interlocutory appeal will materially advance the outcome of this litigation is within this Court's discretion. *See, e.g., In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) ("When litigation will be conducted in substantially the same manner regardless of [the court's] decision, the appeal cannot be said to materially advance the ultimate determination of the litigation.") (*quoting White v. Nix*, 43 F.3d 374, 378-79 (8th Cir. 1994)); s*ee* Defs' Mot. for Reconsideration at 10. To answer this question, the Court need look no further than what recently has occurred on the settlement front in this case. As the Court noted in its Feb. 17, 2014 Memorandum Opinion and Order, two of the JDG members who initially joined in the JDG's motion to dismiss – AK Steel Corp. and Avery Dennison Corp. – settled with Plaintiff and were dismissed from this case with prejudice before the Court denied the JDG's Motion to Dismiss. *See* Feb. 7, 2014 Mem. Op. and Order at 1 [DN 961] and Order [DN 956]. Since then, Plaintiff has settled with and dismissed with prejudice (or moved to dismiss with prejudice) nineteen additional JDG members who joined in the JDG's original Motion to Dismiss, including eleven JDG members who joined in the JDG' instant Motion for Reconsideration or alternatively, Motion for Interlocutory Appeal or Motion to Stay Pending Outcome of Appeal. *See* Orders [DN 967, 968, 969, 970, 974, 977, 982, 983, 984, 986, 989, 990, 991]. Plaintiff continues to discuss settlement and expects to achieve more settlements with several JDG members who joined in the JDG's original Motion to Dismiss and the instant Motion. Considering the way Plaintiff continues to move this litigation rapidly along through settlements with individual JDG members and other defendants willing to discuss settlement on similar terms as other settling parties, Plaintiff respectfully submits that the best way to

materially advance this litigation is to deny the remaining JDG members' request for an interlocutory appeal on an issue involving a minority of the response costs at issue in this case.

**III.  This Case Should Move Quicker Without Another Stay or any Further Delays**

For the same reasons, the Court should deny the remaining JDG members' Motion for a Stay pending the outcome of the appeal in the *Hobart* case. In fact, Plaintiff respectfully submits the best way to continue to move this case along quickly and efficiently is to deny the remaining JDG members' instant Motion in its entirety and set a Rule 16 Scheduling Conference in this matter in the near future. The Court has already entered a three-month Stay in this matter to allow Plaintiff and the JDG members an opportunity to try to reach a group settlement through a third-party neutral. *See* Order granting Motion to Stay from August 23, 2013 through November 15, 2013 [DN 953]. While those efforts did not result in a group settlement with the JDG, Plaintiff has and continues to achieve results settling with JDG members on an individual basis. The best way to move this case along is to institute a Scheduling Order and to start the discovery process. Plaintiff is ready to actively litigate this case against all remaining defendants. Those remaining JDG members and other defendants who are truly interested in settlement will settle, while the remaining JDG members and other defendants who want to litigate this matter will have every opportunity to do so. The results Plaintiff has achieved in settlements to date speak for themselves. Plaintiff has and continues to do everything possible to move this case along, and the remaining JDG members should not be allowed to delay this case any longer.

In support of its argument that another Stay is appropriate in this case pending the outcome of the *Hobart* appeal, the remaining JDG members incorrectly state that the *Hobart* appeal is currently set for argument this Spring. While oral argument in the *Hobart* appeal was originally scheduled for March 12, 2014, the Sixth Circuit granted the *Hobart* Appellees' request

to postpone the oral argument on February 12, 2014 (before the JDG filed the instant Motion on February 18, 2014), and such oral argument has yet to been rescheduled as of this date. *See* Sixth Circuit Order (attached as Exh. B hereto).[2] Even if oral argument in the *Hobart* appeal occurs this Spring, if the Court enters a Stay pending the outcome of the *Hobart* appeal, this case could be delayed for many months, if not a year or more. Plaintiff can only imagine the remaining JDG members will ask for another Stay if the *Hobart* appeal does not turn out to their satisfaction and is further appealed (or a motion for reconsideration is filed in that appeal).

According to the Court ruling denying the JDG's Motion to Dismiss, the outcome of the *Hobart* appeal does not even affect this case. The Court already distinguished the *Hobart* cases from this case, so the Sixth Circuit's affirmation of the lower court's ruling in the *Hobart* cases would not affect this case. *See* Feb. 7, 2014 Mem. Op. and Order at 18-19 [DN 961]. As such, a Stay pending the outcome of the *Hobart* appeal is not warranted.

Some of the remaining JDG members appear to want to remain recalcitrant and may want to litigate this matter through trial and potential appeals no matter what happens in the *Hobart* appeal. The depth of the remaining JDG members' recalcitrance is exemplified by the footnote in the instant Motion to support their argument that another Stay will not have an impact on the public welfare. In this footnote, without any support whatsoever, the remaining JDG members state that "[e]ven if the KDEP order becomes final, KDEP is holding sufficient funds to cover the costs of the initial remediation activity contemplated by that order." *See* Defs.' Mot. for Reconsideration at 12, n.1. This unsupported statement is just wrong, which is why it is probably relegated to a footnote at the end of the instant Motion. As Plaintiff has alleged, Plaintiff is negotiating with KDEP to conduct certain remediation, monitoring and maintenance activities

---

[2] The undersigned confirmed these facts with lead counsel for the Appellants in the *Hobart* appeal on March 11, 2014.

7

that KDEP is requiring to be conducted at the LWD Incinerator Site, and the reimbursement of KDEP's past and future response costs. *See* Third Am. Compl. at ¶¶ 29, 31-32 [DN 985]. Under the proposed KDEP Order, Plaintiff will incur the response costs to implement the work required by the KDEP Order, not KDEP. While KDEP is holding a closure fund of approximately $1.8 million that Plaintiff can seek reimbursement from for a minor portion of the response costs Plaintiff will incur in the future at the LWD Incinerator Site, Plaintiff will spend the first dollars under the KDEP Order, not KDEP. Moreover, the process to actually obtain such reimbursement from this closure fund will take many months and any such reimbursements are within KDEP's discretion. Simply put, this footnote is incorrect and unsupportable.

This footnote exemplifies the remaining JDG members' recalcitrance since it is used to support their argument that the Court should further delay this case for many months, if not longer. Plaintiff – whose members have already incurred nearly $13.5 million in response costs and will continue to incur many more millions in response costs at the LWD Incinerator Site – remain fully cooperative with EPA and KDEP and do all the work required at the Site, while the remaining JDG members continue to refuse to cooperate or settle (unlike over 90% or all other PRPs at the Site). Indeed, if this case progresses to the allocation phase, Plaintiff will argue that the respective shares of response costs to be allocated to any remaining JDG member or other defendant should be increased significantly based on a "lack of cooperation" factor. *See, e.g., United States v. Consolidation Coal Co.*, 345 F.3d 409, 414-15 (6th Cir. 2003) (upholding district court's decision to double a non-settling PRP's allocation based on its lack of cooperation with EPA, the State environmental agency and the cooperating PRPs in a CERCLA case). The Court should deny the Motion for Stay and move this litigation along with all expediency.

## CONCLUSION

For the foregoing reasons, Plaintiff LWD PRP Group respectfully requests that this Court enter an appropriate Order denying Defendants' Motion for Reconsideration, Motion for Interlocutory Appeal and Motion to Stay Pending Outcome of Appeal, and for such other and further relief as the Court deems just and appropriate under the circumstances. A proposed Court Order to this effect is attached hereto as Exhibit A.

Dated:  March 11, 2014                                     Respectfully submitted,

/s/ Gary D. Justis
Gary D. Justis             admitted *pro hac vice*
Joshua L. Bailey           admitted *pro hac vice*
THE JUSTIS LAW FIRM LLC
5251 W. 116th Place, Suite 200
Leawood, KS  66211-7820
Telephone:  (913) 998-6102
Facsimile:  (913) 998-6101
Email:  gjustis@justislawfirm.com
Email:  jbailey@justislawfirm.com

and

W. Fletcher McMurry Schrock (Ky. Bar# 62283)
MCMURRY & LIVINGSTON, PLLC
333 Broadway, 7th Floor
P.O. Box 1700
Paducah, Kentucky  42002-1700
Telephone: (270) 443-6511
Facsimile: (270) 443-6548
Email: fletch@ml-lawfirm.com

ATTORNEYS FOR PLAINTIFF LWD PRP GROUP

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2014, a copy of the foregoing Response to the pending Motion for Reconsideration or alternatively, Motion for Interlocutory Appeal or Motion to Stay Pending Outcome of Appeal was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's Electronic Case Filing System.

                                                                                        /s/ Gary D. Justis  
                                                                                        Gary D. Justis