UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12CV-127-M

LWD PRP GROUP                                                                                                 PLAINTIFF

v.

ACF INDUSTRIES, LLC, et al.                                              DEFENDANTS

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
THIRD AMENDED COMPLAINT**
**(Electronically Filed)**

Defendants set forth on the attached Exhibit A ("Defendants"), by counsel, for their Memorandum in Support of Motion to Dismiss the Third Amended Complaint, state as follows:

**BACKGROUND**

The Court is well familiar with the background of the instant litigation from prior pleadings, and it will not be repeated in full here. In short, the members of the Plaintiff LWD PRP Group and the Defendants are all entities which shipped waste to the former LWD Site in Calvert City, Kentucky (the "Site"), and therefore became potentially responsible for environmental response costs incurred at that Site under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA").

After USEPA undertook initial removal activities at the Site, certain members of the Plaintiff entered into a settlement agreement with USEPA on March 1, 2007 (the "2007 ASAOC") pursuant to which these members agreed to conduct additional removal activity at the Site and reimburse USEPA for its oversight costs associated with such removal action.

Thereafter, in April, 2013, members of the Plaintiff, together with other private party potentially responsible parties ("PRPs") and certain federal agencies, entered into a settlement agreement pursuant to which they agreed to reimburse USEPA certain amounts incurred by it in

connection with USEPA's performance of removal activities at the Site (the so-called "EPA Past Costs AOC I"). *See Third Amended Complaint* (dkt # 985) at ¶26. Under the EPA Past Costs AOC I, USEPA agreed not to sue the signatories for any costs incurred by USEPA through October 10, 2012, a date years after the completion of USEPA's initial removal action and more than a year following conclusion of the PRP Group's removal action. *See* EPA Past Costs AOC I at ¶4 (describing dates work was completed); ¶19 (setting forth the covenant not to sue) (attached as Exhibit B).

Notwithstanding this settlement and covenant not to sue, the members of the LWD PRP Group and certain other PRPs unfathomably and voluntarily entered into a second agreement with USEPA in the fall of 2013 (the so-called "EPA Past Costs AOC II") to reimburse USEPA for additional costs that can only plausibly have been incurred by USEPA prior to October 10, 2012. *See Third Amended Complaint* at ¶27; EPA Past Costs AOC II (attached as Exhibit C).

As alleged in the recently-filed Third Amended Complaint, the Plaintiff seeks contribution for a portion of the above-referenced costs incurred by it pursuant to these settlement agreements, together with past and prospective costs to be incurred by reason of a pending settlement agreement with the Kentucky Department of Environmental Protection ("KDEP").

However, as to at least the portion of the 2007 ASAOC costs allocable to reimbursement of EPA past costs[1] and all of the EPA Past Costs AOC II costs, recovery is unavailable to the Plaintiff. The Plaintiff now admits that $835,652 of the costs incurred by it under the 2007 ASAOC were costs incurred to reimburse USEPA for its activities at the Site. *See Third*

---

[1] The Defendants maintain recovery of all of the costs incurred by reason of the 2007 ASAOC is barred by the applicable statute of limitations, for the reasons stated in its prior motion to dismiss as well as the pending motion for reconsideration.

*Amended Complaint* at ¶25. There can be no question that these are Section 122(h) costs, for which the applicable limitations period is three years from the date of the administrative order under Section 113(g)(3). Thus, even if its contribution claim for the balance of the costs incurred under the 2007 ASAOC is not time barred, even under the Plaintiff's construction of CERCLA, recovery for this $835,652 – which are admittedly costs incurred to reimburse USEPA under Section 122(h) – is barred by the applicable statute of limitations.

Secondly, the Plaintiff cannot recover, pursuant to Section 113 of CERCLA, for any of the costs paid to USEPA under the EPA Past Costs AOC II. To the extent they were signatories to the EPA Past Costs AOC I, the members of the Plaintiff[2] had already resolved their liability to the United States for the same EPA costs that are the subject of the EPA Past Costs AOC II. *See* EPA Past Cost AOC I at ¶33. Moreover, by the time the parties executed the EPA Past Cost AOC II, the applicable statute of limitations for USEPA to bring claims for the recovery of its removal action costs had long since expired. *See* CERCLA §113(g)(2)(A) (noting USEPA has three years from the completion of a removal action to bring suit against potentially responsible parties). This limitations period expired either once USEPA completed its initial removal action in 2006 and it transferred Site responsibility to the members of the Plaintiff, or at best, three years after the members of the Plaintiff completed their removal activities, completion of which was certified in September of 2009. Thus no member of the Plaintiff which was party to the EPA Past Cost AOC II was under any legal liability to USEPA to make the payments under that agreement. Given that third party liability is a prerequisite of contribution, the absence of any legal liability for the payments made strips the Plaintiff of a necessary predecate of its purported Section 113 claim, requiring the same to be dismissed. *See City of Colton v. American*

---

[2] This also raises again the question of exactly who is the "LWD PRP Group", as outlined in the Defendants original motion to dismiss. See also Section III(B), *infra*.

*Promotional Events, Inc.*, 2010 WL 4569038 (C.D. Cal. Nov. 2, 2010) at *8 ("Like traditional contribution, the recipe for CERCLA Section 113(f) contribution includes liability as a necessary ingredient") (citing *United States v. Atlantic Research Corp.*, 551 U.S. 128, 138 (2007)).

Finally, as explained further below, the Plaintiff has failed to allege which of its members have paid which amounts under which AOC that are actually disproportionate to each such member(s) equitable share of Site liability. Contribution sounds, at base, in equity and is built upon the premise that a party has paid "more than its fair share" of some third party liability. Without identifying which (if any) of the members of the Plaintiff have actually done so, it is impossible to discern if any such member possesses a valid contribution claim.

## II. STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) considers the sufficiency of the pleadings and whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009). When considering a motion to dismiss, the "district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir.1999) (citing *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995)). Taken together, the "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly,* 550 U.S. at 555 (internal citation and quotation marks omitted).

Nevertheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* Further, "the tenet that a court must accept a complaint's allegations

as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, *supra*). Where it can be shown that a claim is barred by the applicable statute of limitations, dismissal is appropriate under Fed. R. Civ. P. 12(b)(6). *See*, *e.g.*, *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (stating that dismissal is appropriate under Rule 12(b)(6) when "the allegations in the complaint affirmatively show that the claim is time barred"); *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 556 (6th Cir. 2007) (dismissing a CERCLA claim on a Rule 12(b)(6) motion because the claim was brought outside of the applicable statute of limitations).

### III. ARGUMENT

A. <u>A Portion of Plaintiff's Claims Derived from the 2007 ASAOC are clearly Section 122(h) Claims Subject to Dismissal</u>.

In its Third Amended Complaint, the Plaintiff admits that $835,652.00 of the amount paid under the "Removal Action AOC" were "past response costs" of USEPA. (Third Amended Complaint at ¶ 25). There is absolutely no question that, at least with regard to those costs, the 2007 ASAOC was entered into pursuant to Section 122(h) and that, as a result, the statute of limitations in Section 113(g)(3)(B) was triggered by such settlement. The statute of limitations for these Section 122(h) costs therefore expired on March 1, 2010, three years after the entry of the administrative settlement represented by the 2007 ASAOC. Though the Defendants continue to assert that the Court should dismiss all of Plaintiff's claims under the 2007 ASAOC for the reasons stated in its prior motion to dismiss, in the alternative the Court should at least dismiss Plaintiff's claims for the $835,652 paid to USEPA under the 2007 ASAOC.

Section 122(h) grants authority to the EPA to "settle a claim under Section 9607 of this title for costs incurred by the United States Government." 42 U.S.C. §9622(h). It is the only section of CERCLA that permits the government to compromise and settle claims with non-*de*

*minimis* parties for past costs that it has incurred. As a result, any settlement with the Plaintiff involving the payment of the government's past response costs is, by definition, a settlement under Section 122(h).

Section 113(g)(3)(B) provides that "[n]o action for contribution for any response costs or damages may be commenced more than 3 years after – the date of an administrative order under…9622(h) of this title (relating to cost recovery settlements)." 42 U.S.C. 9613(g)(3)(B). The 2007 ASAOC was dated March 1, 2007. As a result, the members of the Plaintiff's contribution claims arising under that agreement, allocable to the payment of government costs, expired on March 1, 2010, years before their filing of the complaint in this matter. Though the Court in this case has found that not all of Plaintiff's claims under the 2007 ASAOC should be dismissed (a decision upon which the Defendants have requested reconsideration), if the Court does not alter its decision regarding all of the claims under the 2007 ASAAOC, it should at least dismiss the Plaintiff's claims for contribution allocable to its payment of the government's past response costs paid under that agreement.

The Plaintiff's prior versions of the complaint did not clearly delineate which of the costs paid under the 2007 ASAOC were past response costs of the government and which were costs incurred by the members of Plaintiff[3] during the removal action it undertook by reason of its members CERCLA liability at the Site pursuant to the terms of the 2007 ASAOC. However, now that the Plaintiff has done so in its Third Amended Complaint, the Plaintiff's claim for contribution for any government response costs paid as part of the 2007 ASAOC is plainly subject to dismissal as time barred.

---

[3] As explained more fully in Section III(B)(ii) *infra*, it is still not clear who actually paid what associated with the LWD Site; however, it is clear that as to these costs, a contribution claim is not available by whomever paid them.

B. <u>The EPA Past Costs AOC II Represents Entirely Voluntary Payments for Which Contribution is not an Available Recovery Vehicle Under Section 113</u>.

    i. *The LWD PRP Group was under no legal liability to make payment to USEPA under the EPA Past Costs AOC II.*

The recently-publised EPA Past Costs AOC II represents a wholly voluntary payment by the signatories to the agreement. First, the signatories were signatories to the EPA Past Costs AOC I, and, by entry into that AOC, had resolved their liability to the United States for all costs incurred by the government prior to the October 10, 2012 cost cutoff date of the EPA Past Costs AOC I. This effective date was long after the government had stopped incurring any recoverable costs under CERCLA, since both the government and the Plaintiff had completed removal actions at the Site at the very latest by the fall of 2009. Indeed, were it not the case, the PRP Group could not bring a claim under Section 113 for the costs it incurred under that agreement. *See*, *e.g.*, *ITT Industries, Inc. v. Borg Warner, Inc.*, 506 F.3d 452, 459 (6th Cir. 2007) ("as an initial matter, § 113(f)(3)(B) requires that parties resolve "some or all" of their liability as to the United States"). And, a review of the EPA Past Costs AOC I, reveals that to be the case, with the agreement providing that "[t]he Parties further agree that this Settlement Agreement constitutes an administrative settlement for purposes of Section 113(f)(3)(B) of CERCLA, 42 U.S.C. § 9613(f)(3)(B), pursuant to which each Settling Party and each Settling Federal Agency has, as of the Effective Date, resolved liability to the United States" for Past Response Costs at the Site. EPA Past Costs AOC I at ¶33. A review of the text of the AOC further reveals that "Past Response Costs" to mean all costs incurred by USEPA, plus interest, through October 10, 2012.[4] *See id.* at ¶9. Therefore, when the signatories to the EPA Past Cost AOC I entered into

---

[4] Given that both USEPA and the members of the Plaintiff completed all removal activity at the Site as of September 29, 2009, *see* EPA Past Cost AOC I at ¶4, this represented the likely universe of all EPA past costs at the

the EPA Past Costs AOC II, they were voluntarily agreeing to pay USEPA costs for which they had already resolved their liability to USEPA (receiving a covenant not to sue) under the EPA Past Costs AOC I.

Even to the extent the members of the Plaintiff were signatories to the EPA Past Costs AOC I, by the time the parties executed the EPA Past Costs AOC II, the statute of limitations for recovery by USEPA had expired. Under CERCLA Section 113(g)(2)(A), USEPA had three years from the date of completion of the removal action to bring suit against potentially responsible parties to recover costs of the removal action. That action, as noted previously, was completed no later than September 29, 2009,[5] the date USEPA certified completion of the removal action, leaving September 29, 2012, as the last date for USEPA to initiate a cost recovery action. The EPA Past Costs AOC II was not executed until September 2013, or almost exactly one year following expiration of the limitations period.

Therefore, whether it is by reason of the execution of the first EPA Past Costs AOC I, or because of the expiration of the applicable limitations period, by the time the parties who are members of the LWD PRP Group executed the EPA Past Costs AOC II, they faced no legal liability to USEPA for those costs. A CERCLA Section 113 contribution claim, is, as stated in *Atlantic Research*, a "traditional" contribution claim based upon "common liability". *See Atlantic Research*, 551 U.S. at 138 ("Nothing in § 113(f) suggests that Congress used the term 'contribution' in anything other than this traditional sense."). Common law contribution, as it has long been understood, is built upon the idea that payment for which contribution is claimed

---

Site, as it is not plausible that USEPA incurred any recoverable response costs after the October 10, 2012 date set forth in the EPA Past Costs AOC I.

[5]    Defendants reserve the right to argue that the actual removal action completion date for statute of limtiations pruposes was prior to the September 29, 2009 date that USEPA certified the prior completion of the removal action.

was made by reason of an actual liability on the part of the payor, not voluntarily or out of whim or caprice. *See*, *e.g.*, *CSX Transportation, Inc. v. General Electric Co.*, 2009 WL 3254879 (W.D. Ky. Oct. 8, 2009 at *5) ("It is essential that the payment by one must have either been compulsory or that there must have been legal obligation."). "A voluntary payment of an amount made without legal obligation is not sufficient to compel contribution" because the fundamental basis for contribution – an inequitably distributed liability – is absent from such a situation. *Deatly's Adm'r v. Phillips*, 243 S.W.2d 918, 921 (Ky. 1951). *See also E.I. duPont de Nemours and Company v. United States*, 297 F. Supp. 2d 740, 752 (D.N.J. 2003) ("a contribution action denotes a claim by and between jointly and severally liable parties for an appropriate division of the payment one of them has been *compelled to make*.") (emphasis in original) *aff'd by* 460 F.3d 515 (3rd Cir. 2006); *vacated on other grounds and remanded by* 551 U.S. 1129 (2007). As stated by the *du Pont* court, compulsion in the contribution context means much more than cooperating in an effort to gain good will or the possibility that failing to make some sort of payment would cause economic harm, "compulsion must refer to service of process dragooning an unwilling defendant into court against his will." *Id.*

Here, there is no "common liability" that the members of the Plaintiff were compelled to satisfy, as USEPA's claim for payment against the signatories to the EPA Past Costs AOC II had lapsed, whether by reason of the EPA Past Costs AOC I or the expiration of the limitations period. Without this prerequisite third party liability, the LWD PRP Group cannot seek by way of a Section 113 contribution claim recovery of the costs paid under that agreement.

    ii. *The identity of the LWD PRP Group remains in question, and therefore its ability to seek recovery against the Defendants remains in question.*

As noted above, a contribution claim arises when "the tortfeasor has paid more than his or her proportionate share" of a common liability. *Atlantic Research*, 551 U.S. at 138. *See also*

*du Pont*, 297 F. Supp. 2d at 752 (right of contribution exists only in favor of a tortfeasor who has paid "more than his equitable share of the common liability"). Here, it cannot be discerned from the pleadings filed by the Plaintiff, the amorphous "LWD PRP Group", as to whether and what extent each of its members has made payments under each of the AOCs upon which it bases its contribution claims. A review of the three administrative settlements executed with USEPA reveals a disparate group of parties has executed the documents. *See Signatories to AOCs* (attached as Exhibit D). While the parties listed as constituting the "LWD PRP Group" in the Third Amended Complaint appear to have executed all three agreements, numerous additional private parties executed the EPA Past Costs AOC I but are not named parties to the Third Amended Complaint. Moreover, there are six companies which executed the EPA Past Costs AOC II that are not parties to the Third Amended Complaint. In order to maintain a contribution claim, it must be shown that the plaintiff has more than its share; where it cannot be determined exactly who is the plaintiff, much less whether or not he or she was compelled to overpay for a common liability, it is impossible to say whether or not that plaintiff has paid more than its share. Unless and until the Plaintiff group establishes its identity and that it has incurred a disproportionate share of Site costs, it cannot be allowed to pursue recovery against the Defendants. Accordingly, Defendants maintain the instant complaint must be dismissed for the failure of the Plaintiff's members to properly state a claim on these grounds. Alternatively, the Plaintiff must be compelled to amend its Complaint and set forth with particularity the nature and extent of each member's payments in order to demonstrate the necessary prerequisite of a contribution claim.

## CONCLUSION

At least two categories of costs sought by the Plaintiff in its Third Amended Compliant may not be recovered from these Defendants. The Plaintiff admits that $835,652 of the costs it seeks to recover under the 2007 ASAOC are past EPA response costs – Section 122(h) costs – for which the applicable limitations period expired long before the filing of the instant litigation. The damages which it seeks to recover based upon the EPA Past Costs AOC II are dollars paid entirely voluntarily to USEPA, and, simply put, a voluntary payment does not a contribution claim make. Finally, given Plaintiff's continued failure to identify which of its members have paid which amounts under which AOC, its Third Amended Complaint should be dismissed for failure to state a claim in its entirety. Unless and until the Plaintiff can demonstrate its members have made specific payments, that such payments were not voluntarily made, and that they were disproportionately high relative to the waste shipments of other parties associated with the Site, the Plaintiff has not properly pled a valid contribution complaint.

WHEREFORE, the Defendants respectfully request the Court dismiss some or all of the Plaintiff's Third Amended Complaint on the grounds set forth above.

> WHITLOW, ROBERTS, HOUSTON & STRAUB PLLC
> *Attorneys for Defendant*
>
> By: */s/ J. Duncan Pitchford*
>     J. Duncan Pitchford
>     Nicholas M. Holland
>     300 Broadway
>     Post Office Box 995
>     Paducah, Kentucky 42002-0995
>     Telephone: (270) 443-4516
>     Facsimile: (270) 443-4571
>     dpitchford@whitlow-law.com

## CERTIFICATE OF SERVICE

  I hereby certify that on this 28th day of March, 2014, I have filed the foregoing through the CM/ECF system, which will forward an electronic copy to the counsel of record.

  I further certify that I have served non-ECF participants via first class mail.

             /s/ J. Duncan Pitchford
             J. Duncan Pitchford