UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12CV-127-M

LWD PRP GROUP                                                           PLAINTIFF

v.

ACF INDUSTRIES, LLC, et al.                                            DEFENDANTS

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
FOR RECONSIDERATION OR ALTERNATIVELY
MOTION FOR INTERLOCUTORY APPEAL OR MOTION TO STAY PENDING
OUTCOME OF APPEAL**

Defendants set forth on the attached Exhibit A, by counsel, tender the following Reply to

the Plaintiff's Response to Defendants' Motion for Reconsideration or Alternatively Motion for

Interlocutory Appeal or Motion to Stay Pending Outcome of Appeal ("Response"):

Reconsideration is warranted in this case because a manifest error of fact by the Court led

to clear error by the Court in its decision.   Furthermore, while Plaintiff alleges that the

Defendants have been shirking their responsibility for the removal and remediation efforts at the

LWD Site, nothing can be further from the truth.   The Defendants have consistently shown a

willingness to pay their equitable share of actual Site costs and many recently made Rule 68

offers of judgment to the Plaintiff to pay their equitable share of the EPA Past Costs AOC I and

the pending KDEP AOC.   However, instead of negotiating reasonably regarding settlement, the

Plaintiff has demanded exorbitant "administrative fees" in addition to the Defendants' equitable

share, demanded the Defendants pay toward unknown and unlikely future risks and has not been

forthcoming regarding the actual costs incurred at the LWD Site.   The fact the Defendants have

declined to pay such inflated settlement demands does not alter the propriety of reconsideration

in this case, or alternatively, certification to the Court of Appeals or a stay.

## I.      The Request for Reconsideration Is Appropriate In This Case.

Reconsideration is appropriate where a manifest error of fact existing in the original opinion leads to a clear error by the court.  *See*, *e.g.*, *Doe v. Patton*, 381 F.Supp.2d 595, 605 (E.D. Ky. 2005) (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986)).  The distinction drawn by the Court between the 2007 ASAOC and the ASAOC at issue in the *Hobart* cases was based on a manifest error of fact, because that distinction simply does not appear on the face of the two documents.  The Court's reliance on that distinction was material to its decision that the 2007 ASAOC was a not a CERCLA Section 122(h) settlement and, therefore, did not trigger the statute of limitations under Section 113(g)(3)(B). (February 7, 2014, Memorandum Opinion and Order ("Order") at 18-19).

The Plaintiff's Third Amended Complaint in this case admits that the 2007 ASAOC is a Section 122(h) settlement.  In Paragraph 25, the Plaintiff states that $835,652.00 of the amount paid under the 2007 ASAOC were "response costs" of the U.S. Environmental Protection Agency ("USEPA").  Section 122(h) is the only section granting the USEPA authority to "settle a claim under Section 9607 of this title for costs incurred by the United States Government" with non-*de minimis* parties. 42 U.S.C. §9622(h).   Therefore, any settlement with the Plaintiff involving the payment of the government's response costs is, by definition, a settlement under Section 122(h).  The Plaintiff's attempts to characterize it as something else by referring to it as the "Removal Action AOC" or imply that there cannot be more than one Section122(h) settlement at a given site, is window-dressing that has no legal implication whatsoever.  Indeed, the Plaintiff now admits that there can be more than one past costs settlements in its response, stating that "the EPA Past Costs AOC I is *one of the Section 122(h) cost-recovery settlements* in this case.  (Response at 3-4 (emphasis added)).

Given that the 2007 ASAOC is a Section 122(h) settlement, a contribution action for costs incurred pursuant to that agreement is, just as with the *Hobart* ASAOC, barred by the applicable statute of limitations.  The Court's prior decision to the contrary being manifestly in error, reconsideration of the same is warranted in this matter.

**II.      The Plaintiff's 2007 Removal Action Costs Are the Vast Majority of the Costs in Dispute In This Case, Making Certification or Stay Proper.**

A.  The Plaintiff has Repeatedly Overstated its Costs at the Site.

The Plaintiff does little to refute the fact that the *Hobart* decision will be binding upon the Court and outcome determinative in this litigation.   Rather, the Plaintiff objects to Defendants' alternative request for a stay or interlocutory appeal by claiming that the costs at issue under the 2007 ASAOC do not constitute a "substantial portion of the Plaintiff's claims" and that such a request is evidence that Defendants are "recalcitrant parties."   (Response at 4-5). This is more bluster by the Plaintiff, which has consistently obfuscated its actual costs and demanded exorbitant settlements to avoid litigation.   The Plaintiff has regularly grossly overreached in its depiction of costs incurred at the Site and falsely characterized the Defendants' conduct in a self-serving attempt to transform what would otherwise should be an equitable exercise in cost recovery into a profit-generating enterprise unhinged from its statutory basis.

The Plaintiff's obfuscation and lack of candor with this Court is clearly evidenced by its estimate that the $7,136,970.00 it has paid for remediation under the 2007 ASAOC is between "20-40% of the total response costs Plaintiff will incur at the LWD Incinerator Site."   First, it should be noted that in pre-litigation settlement demands and in the Second Amended Complaint, the Plaintiff claimed it had incurred "$9.5 million" in removal costs at the Site.  *See*, *e.g.*, *Second*

*Amended Complaint* at ¶27.   However, the Plaintiff now states that these costs were only $7.1 million, a decrease of over 25%.[1]

Based upon the Plaintiff's contention that the $7.1 million figure represents 20-40% of total response costs, the range of potential Site costs would lie between $17,842,425 on the low end and $35,684,850 on the high end.   Being generous, the costs pled by the Plaintiff in its Third Amended Complaint equal only $13,409,587.   Publicly available data regarding the work to be completed under the KDEP Order identifies that the "preferred alternative" remedial action would cost approximately $5,600,000[2] before taking into account that the Plaintiff will also be reimbursed out of the KDEP LWD Closure Fund for approximately $1.8 million of these costs. Thus, under the most likely scenario, the Plaintiff's costs will be approximately $17.2 million after such reimbursement.   By that measure, the costs paid under the 2007 ASAOC, which include Plaintiff's own costs and the past costs it paid to the EPA for a total of $7,972,622, are nearly half of the total costs being sought in this action.   Indeed, given that the KDEP order is not yet final, those are not costs yet recoverable in this action; stripping out those estimates, the $7.97 million represents nearly 60% of the total costs which are currently subject to the instant litigation.

While it cannot be said with any certainty, it appears the additional costs that the Plaintiff is including in its sum are purely speculative costs that it members may have to pay under a possible, but highly doubtful, additional remediation action well beyond the scope of the action currently planned by KDEP.   This assumes (a) that the preferred remedy proposed for adoption

---

[1]    Similarly, the Plaintiff's implication in its Second Amended Complaint that it would be required to pay a figure that would "exceed $5 million" under a pending EPA Past cost settlement proved untrue, as the EPA Past Cost AOC I only required a payment of $4.1 million; a difference of nearly 20%.  *Second Amended Complaint* at ¶ 24.

[2]    Upon information and belief, this number is also wildly inflated given the nature and scope of the proposed remedy.

by KDEP – and the remedy advocated by the LWD PRP Group and its consulting experts – fails; (b) additional contamination is released from the Site to an unacceptable degree; and (c) then KDEP requires very substantial, additional remedial action.   Thus either the LWD PRP Group's own experts and KDEP are incorrect, and the current remediation plan will be ineffective, or, as suggested by over 30 years of groundwater monitoring at the Site, the proposed remedy will work and, in real terms, fewer dollars than suggested by the public disclosure will be spent to remediate the Site.   In any event, the speculative possibility that the present KDEP-approved remedy will fail is a contingency far removed from the current litigation, and such a speculative possibility does not present a justiciable claim in this litigation.

As to the costs actually at issue before the Court, the 2007 ASAOC represents half or more of the Site costs – unquestionably a material portion of the claims leveled by the Plaintiff. Resolution of the limitations question presented in the Defendants' original motion to dismiss would "materially advance the termination of the litigation" as it would provide finality to over half of the damages claimed in this matter. *Page Plus of Atlanta, Inc. v. Owl Wireless, LLC*, 733 F.3d 658, 660 (6th Cir. 2013) (quoting 28 U.S.C. §1292(b)).   If the Court does not reconsider its prior opinion, certification of this central legal issue to the Court of Appeals is proper, or at the least, a stay should be issued pending the decision in the *Hobart* opinion.

        **B.**  <u>Contrary to the Plaintiff's Assertions, the Defendants have Repeatedly Attempted to pay their Proportionate Share of Site Costs</u>.

Stymied by the facts and the law, in an effort to fend off the current motion, the Plaintiff filed its Response with unfounded statements depicting the Defendants as recalcitrant ne'er-do-wells who are shirking their collective liability under CERCLA at the Site.   Nothing could be further from the truth.   Prior to the filing of the current suit, and prior to the involvement of current counsel for the Plaintiff, the Defendants and the members of the Plaintiff engaged in

repeated discussions concerning resolution of liability at the Site.  The Defendants on multiple occasions executed written letters of intent in favor of the Plaintiff to pay their respective proportionate share of Site costs.  Tolling agreements were executed during the process while the members of the LWD PRP Group negotiated with USEPA as to USEPA's costs at the Site.

However, upon the involvement of current counsel, the posture of the Plaintiff changed. Prior cooperation toward Site cost resolution evaporated, and cost estimates ballooned, often by multiple-fold factors, and settlement demands were accompanied by a newfound ultimatum that each Defendant pay a five-figure "administrative fee" to resolve its liability at the Site as well as pay a full share of the completely speculative future costs that might be incurred at the behest of KDEP.  No explanation was offered for the shift, but several things were clear: (a) no additional work occurred at the Site to increase costs to the Plaintiff;[3] (b) no regulatory authority had required or was anticipated to require any additional remediation work at the Site; and (c) no new facts had been developed to alter the estimate of costs to be incurred at the Site in the future. The Plaintiff had, however, retained new counsel and set about to maximize its recovery from other PRPs at the Site through bluster and the overarching threat of litigation (and litigation cost[4]) to drive inflated settlements.

The Defendants have, as evidence by their pre-litigation letters of intent to the PRP Group, repeatedly expressed a willingness to pay their equitable share of costs <u>actually incurred</u> at the Site and which they remain legally obligated to pay.  Many of the Defendants that join in this motion have recently made a Rule 68 offer of judgment to pay their equitable share of the

---

[3]     As documented in the EPA Past Costs AOC I and elsewhere, the removal action at the site was completed at the very latest as of September 2009, when USEPA accepted the removal action as complete.

[4]     The fact that some defendants have settled with the PRP Group does absolutely nothing to demonstrate the supposed reasonableness of its settlement demands.  As the Court is well aware, often times a party will settle litigation merely for purposes of litigation cost avoidance, to obtain certainty or merely to "close the books" on a particular matter, even when armed with a stronger legal position or superior facts.

costs anticipated to be incurred by the Plaintiff under KDEP AOC and those actually incurred under the EPA Past Costs AOC I.  If the Plaintiff accepts these offers, as it should, then the only liability that will remain to be determined in this case will be 1) Plaintiff's claim for contribution as to costs under the 2007 ASAOC (which the Defendants maintain is barred by the applicable statute of limitations), 2) Plaintiff's claim for $667,845 in costs it voluntarily agreed to pay under the Past Costs AOC II (for which the Defendants have filed a separate motion to dismiss), and 3) Plaintiff's claim for contribution as to costs incurred to date for KDEP remedial action, which it estimates at $625,000.

The Rule 68 offer of judgment made by the vast majority of the Defendants in this case plainly demonstrates the willingness of the Defendants to pay their equitable share of costs owed in this action.  Instead of being recalcitrant, the Defendants have tried to work with the EPA and with the LWD PRP Group to come to settlement before the institution of litigation and since. Indeed, as shown by the comments tendered by the Defendants to the pending EPA Past Costs AOC II, the Defendants offered to pay nearly the same amount as set forth in the agreement, only to have that amount turned down by USEPA.  *See Comments on Proposed 122(h) Settlement* (attached as Exhibit B).  A rejection of inflated settlement demands does not mean the Defendants are not willing to pay their share; it only means they wish to pay just that, and not more.  The Plaintiff's strategy in this case appears to be to turn the contribution action into a profit-seeking venture and to seek to obtain a settlement that more than offsets their equitable share of the remediation costs.  As a result, the Defendants welcome a Rule 16 conference in this matter, as the Defendants may then begin discovery to compel information about just how much the Plaintiff has already collected from the other settling defendants.  If, as suspected by the Defendants, the Plaintiff has already recovered sums that more than offset its proportionate share

of costs at the Site, it will provide yet another ground for dismissal of the current Complaint. *See United States v. Atlantic Research Corp*, 551 U.S. 128, 138 (2007) (contribution is available only after a tortfeasor "has paid more than his or her proportionate share").

## CONCLUSION

The Plaintiff fails, in its Response, to refute the basic contentions of the current motion: a) that the Court's Memorandum Opinion and Order relied upon a factual distinction between the current case and the *Hobart* case that, upon examination, does not exist and b) even if the Court is not inclined to reconsider its prior opinion, certification for appeal or a stay pending the decision in *Hobart* is appropriate given the significant impact of the legal issue upon the current case. Instead, the Plaintiff attempts to obfuscate the legal issues with unfounded bombast concerning the alleged respective equitable positions of the parties. A review of the record demonstrates the Defendants have steadfastly maintained a willingness to meet their legal obligations at the Site, and have been unable to do so only but for the conduct of the Plaintiff.

WHEREFORE, the Defendants respectfully request the Court grant the pending motion for reconsideration, or alternatively, certify the matter for interlocutory appeal or stay the instant action pending the outcome of the *Hobart* appeal.

WHITLOW, ROBERTS, HOUSTON & STRAUB PLLC
*Attorneys for Defendant*

By: */s/ J. Duncan Pitchford*
        J. Duncan Pitchford
        Nicholas M. Holland
        300 Broadway
        Post Office Box 995
        Paducah, Kentucky 42002-0995
        Telephone: (270) 443-4516
        Facsimile: (270) 443-4571
        dpitchford@whitlow-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of March, 2014, I have filed the foregoing through the CM/ECF system, which will forward an electronic copy to the counsel of record.

I further certify that I have served non-ECF participants via first class mail.

/s/ J. Duncan Pitchford
J. Duncan Pitchford