# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

| | |
|---|---|
| **LWD PRP GROUP,** | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) Civil Action No. 5:12-CV-00127-JHM-LLK |
| **ACF INDUSTRIES LLC, et al.** | ) ) |
| **Defendants.** | ) ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff LWD PRP Group ("LWD PRP Group"), by and through counsel, respectfully submits the following Response to the pending Rule 12(b)(6) Motion to Dismiss [DN 1002] filed by a group of Defendants known as the Joint Defense Group (hereinafter "JDG").

## INTRODUCTION

The JDG's most recent Motion to Dismiss all or a portion of Plaintiff's claims in its Third Amended Complaint was filed on March 28, 2014 [DN 1002] by a group 68 defendants [DN 1002-2]. Since the filing of the JDG's newest Motion to Dismiss, the LWD PRP Group has settled and dismissed with prejudice (or moved to dismissed with prejudice) six of the listed 68 JDG members: Borgess Medical Center [DN10080; HCA Realty, Inc., Olympia Fields Osteopathic Hospital and Terre Haute Regional Hospital [DN 1009]; "DAP Products Inc., also improperly captioned as Tremco Inc." [DN 1016]; and "Exxon Mobil Corporation ('ExxonMobil'), also improperly captioned as Exxon Mobil Environmental Services Corporation" [DN 1017, 1018]. By Agreed Order entered by the Court on April 22, 2014 [DN 889], this Response constitutes Plaintiff LWD PRP Group's Response to the remaining JDG members' Motion to Dismiss, which was due by May 12, 2014.

**PRELIMINARY STATEMENT**

The LWD PRP Group is a group of potentially responsible parties ("PRPs") who are cooperating fully with the United States Environmental Protection Agency ("EPA") and the State of Kentucky ("State") to address environmental concerns related to the former hazardous waste incinerator area at the LWD, Inc. Superfund Site in Calvert City, Kentucky ("LWD Incinerator Site"). The LWD PRP Group is comprised of those PRPs specifically listed in paragraph 33 of the Third Amended Complaint, in their own right, along with hundreds of other PRPs who have settled with the LWD PRP Group and assigned their CERCLA and State statutory and common law rights at the LWD Incinerator Site to the LWD PRP Group members. All told, the LWD PRP Group and its assignors represent over 90% of the PRPs who have been asked to contribute to the response cost activities at the LWD Incinerator Site.

The LWD PRP Group filed this cause pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.* ("CERCLA") against the non-cooperating PRPs at the LWD Incinerator Site to recover the millions of dollars the LWD PRP Group and its assignors have spent and will spend to cooperate with EPA and the State in addressing the environmental concerns at the LWD Incinerator Site in the past and over the next 30 plus years. The remaining JDG members and the other non-cooperating defendant PRPs represent less than 10% of the PRPs who have been asked to contribute to response cost activities at the LWD Incinerator Site.

Unlike the LWD PRP Group, the JDG members are the non-cooperating PRPs at the LWD Incinerator Site. Not only do the JDG members refuse to cooperate at the LWD Incinerator Site, but they continue to try to thwart the efforts of EPA, the State and the LWD PRP Group to properly and cost-effectively address the environmental concerns at the LWD

2

Incinerator Site. The JDG's newest Motion to Dismiss and the statements made the JDG in support of this Motion represents just another step the recalcitrant JDG members have taken to continue their lack of cooperation and to avoid paying their respective equitable shares of response costs at the at the LWD Incinerator Site. As this case progresses, one of the factors for the Court to consider when allocating each PRP's respective equitable share of LWD Incinerator Site response costs is the degree of cooperation exhibited by each PRP. *See, e.g., AlliedSignal, Inc. v. Amcast Int'l Corp.*, 177 F. Supp. 2d 713, 754-56 (S.D. Ohio 2001) ("[I]in the appropriate case, a party's failure to cooperate with the cleanup of a hazardous waste site could serve as the basis for equitably allocating a greater share of response costs.").

To support their latest Motion to Dismiss, the JDG members set forth the following basic arguments: (1) despite this Court's rulings to the contrary on the JDG's first motion to dismiss and motion for reconsideration of the Court's decision on same, the JDG continues to argue the LWD PRP Group's contribution claim for a portion past response costs related to the Removal Action AOC at the LWD Incinerator Site must be dismissed because the JDG believes the limitations period on such a claim for past response costs has expired; (2) the JDG argues that the response costs the LWD PRP Group will pay EPA under EPA Past Costs AOC II are not recoverable because the JDG argues they are "completely voluntary;" and (4) the JDG continues its veiled argument that Plaintiff cannot sue in the name of the "LWD PRP Group," which this Court has rejected, by arguing the LWD PRP Group's entire Third Amended Complaint should dismissed because the JDG cannot or refuses to understand the LWD PRP Group is asserting claims on behalf of its listed members and assignors.

The Court should deny the JDG's latest Motion to Dismiss because the allegations of facts in the LWD PRP Group's Third Amended Complaint, when accepted as true and properly

viewed in the light most favorable to the LWD PRP Group demonstrate all of the following: (1) the LWD PRP Group filed this case within three years from the date of the completion of the removal action, as prescribed by Section 113(g)(2)(A) of CERCLA; (3) the LWD PRP Group's payment of EPA's remaining past response costs under EPA Past Costs AOC II is not voluntary; and (3) the "LWD PRP Group" is clearly defined in paragraph 33 of the Third Amended Complaint and the LWD PRP Group can assert contribution claims against all defendants in its own right, and as assignees of those PRPs who have settled with and assigned their rights to the LWD PRP Group, under applicable principles of the Uniform Comparative Fault Act.

## STANDARD OF REVIEW

Rule 12(b)(6) motions turn purely on legal issues, not an assessment of the evidence. *Technology Recycling Corp. v. City of Taylor,* 186 Fed. Appx. 624, 640 n.5 (6th Cir. 2006). When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must construe the complaint in a light most favorable to plaintiff and accept all the factual allegations as true. *Gunasekera v. Irwin,* 551 F.3d 461, 466 (6th Cir. 2009); *Evans-Marshall v. Bd. Of Educ. of Tipp City Exempted Village Sch. Dist.,* 428 F.3d 223, 228 (6th Cir. 2005). In doing so, the Court must "draw all reasonable inferences in plaintiff's favor." Directv v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). "A court may dismiss a complaint [under Rule 12(b)(6)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' 'Detailed factual allegations' are not required, but the Rule does call for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 663

4

(2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, when a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## ARGUMENT

**I.     This Court has already Ruled Twice that the LWD PRP Group Filed this Cause of Action in a Timely Fashion.**

The JDG continues to argue that a portion of the LWD PRP Group's past response costs incurred under the Removal Action AOC are time barred. *See* JDG's Memo at 5-6. The JDG now argues that the response costs paid by the LWD PRP Group to EPA should be separated and treated differently than the other response costs incurred by the LWD PRP Group to perform the Removal Action AOC. *Id.*

This Court already held in response to the JDG's Motion to Dismiss the Second Amended Complaint on this very same issue that "the Removal Action AOC is not properly classified as a § 122(h) cost-recovery settlement with the EPA, even though it contains a cost-recovery component." *See* 2/7/14 Mem. Op. and Order [DN 961] at 18. In doing so, the Court relied on the logic and holding in *ITT Indus., Inc. v. BorgWarner, Inc.*, 506 F.3d 452 (6th Cir. 2007). *See* 2/7/14 Mem. Op. and Order [DN 961] at 18. Like the Removal Action AOC, the AOC in *ITT Indus, Inc.* included both a work component and a cost reimbursement component, and *ITT Indus., Inc.* concluded that it was not a Section 122(h) settlement simply because the plaintiff was reimbursing the United States for response costs. *See ITT Indus., Inc.*, 506 F.3d at 460-61 (6th Cir. 2007); *see also* 2/7/14 Mem. Op. and Order [DN 961] at 18.

Dissatisfied with the Court's ruling on this issue, the JDG filed a Motion for

5

Reconsideration making the exact same arguments [DN 971], which this Court denied, again citing to the "logic of ITT Indus., Inc." *See* 4/24/14 Mem. Op. and Order [DN 1012] at 4. The Court did certify the statute of limitations issue for interlocutory appeal, however, and allowed the JDG the opportunity to try to convince the Sixth Circuit to hear the issue. *Id.* at 8; *see also* Order [DN 1014].

The JDG's latest iteration of this argument is nothing more than a third attempt at the same argument. The JDG does not cite to a single case to support its argument that the response costs paid to EPA under the Removal Action AOC should somehow be separated than the other response costs incurred by the LWD PRP Group under the Removal Action AOC. *See* JDG's Memo at 5-6. More to the point, the JDG does nothing to suggest that *ITT Indus., Inc.* or any other case segregates the EPA cost reimbursement component of an AOC such as the Removal Action AOC from other incurred response costs. *Id.* The JDG's argument on this point is nothing more than yet another motion for reconsideration on the same point this Court has ruled on twice. The Court should reject this argument for the same reasons it has done twice before.

**II.     The LWD PRP Group's Payment to EPA under EPA Past Cost AOC II is not Voluntary.**

The JDG argues that the LWD PRP Group's contribution claim for the remaining response costs the LWD PRP Group is about to pay EPA under EPA Past Costs AOC II should be dismissed because the payment is "wholly voluntary." *See* JDG Memo at 7-9. This argument is more about the reckless omissions by the JDG than the actual statements made by the JDG to support its argument.

For example, the JDG fails to inform the Court that it approached EPA in late 2013 offering to pay far less than its members' (at the time) collective equitable shares of EPA's past response costs in return for contribution protection against the LWD PRP Group's contribution

6

claims against them for their respective equitable shares of EPA's past response costs. This fact is shown in the March 28, 2014 public comment letter the JDG sent to EPA, which is attached as Exhibit B to the JDG's Reply on its Motion for Reconsideration [DN 1003]. As the JDG admits in this public comment letter, it approached EPA in the latter half of 2013 wanting to pay EPA only $625,000, or less than 11% of what the JDG perceived as EPA's $5,812,452 in total past response costs through October 10, 2012. *See* Exh. B to JDG's Reply on its Motion for Reconsideration [DN 1003]. In return, the JDG wanted contribution protection from EPA for any and all claims against them by the LWD PRP Group for any EPA past response costs. When EPA informed the LWD PRP Group of the JDG's attempt to circumvent this litigation, the LWD PRP Group had no choice but to repay EPA's past response costs in full through EPA Past Costs AOC II. Otherwise, the JDG would have ended up paying far less than their collective equitable shares of EPA's past response costs. The JDG conveniently omits this fact in support of their argument on this issue, but this is not the only pertinent fact they omit.

      The JDG also omits the fact that they entered into tolling agreements with EPA, which runs counter to their statements in support of their arguments that the limitations period for recovery by EPA has expired. *See* JDG Memo at 8-9. These tolling agreements extended the time for EPA to assert such claims well beyond the last half of 2013, when the JDG was trying to pay $625,000 to EPA to circumvent this case. The JDG also conveniently omits this fact, but there is yet another pertinent fact they omit.

      The JDG also omits the fact of their stated intentions to the LWD PRP Group to assert claims against settling PRPs, including their own former members. The JDG is well aware that the LWD PRP Group has agreed to indemnify settling PRPs against claims by EPA, because each JDG member has received settlement offers from the LWD PRP Group containing the same

types of indemnification terms. Had the JDG ended up paying only a portion of EPA's remaining responses costs, as they attempted to do in the latter half of 2013, the LWD PRP Group and other PRPs, including many former JDG members who had already settled with the LWD PRP Group, were facing potential claims from EPA for the shortfall. As the JDG admits, EPA Past Costs AOC I only provides the LWD PRP Group with contribution protection for EPA's costs through October 10, 2012. *See* JDG Memo at 7. The LWD PRP Group would have faced potential claims from EPA for all of its remaining response costs incurred after October 10, 2012, plus any shortfall as a result of being the indemnitor for other settling PRPs. Not only that, after this Court issued its February 7, 2014 ruling on the JDG's motion to dismiss the Second Amended Complaint and before the JDG filed its motion for reconsideration of same on February 18, 2014, counsel for JDG members Sumitomo Electric Wintec America, Inc. and Transmontaigne Products Services, Inc. telephoned the undersigned lead counsel for the LWD PRP Group and openly stated that the JDG was considering filing claims against former JDG members who settled with the LWD PRP Group.

  None of these facts are provided to the Court by the JDG, but all of them demonstrate why the LWD PRP Group's payment to EPA under EPA Past Costs AOC II is involuntary for several reasons. In fact, the JDG's failed tactic to settle with EPA and circumvent this case with respect to the LWD PRP Group's claims for response costs paid to EPA proves exactly what the LWD PRP Group has been saying about the JDG. The remaining JDG members continue to do everything possible to thwart the efforts of the LWD PRP Group, EPA and the State of Kentucky at the LWD Incinerator Site in an effort to pay less than their respective equitable shares of response costs at this Site. This is how recalcitrant PRPs act at a Superfund site.

  In any event, when the Court construes the allegations in the Third Amended Complaint

related to the LWD PRP Group's upcoming payment to EPA under EPA Past Costs AOC II in a light most favorable to the LWD PRP Group and accepts all such factual allegations as true, the Court should not dismiss the LWD PRP Group's contribution claims for such costs.

**III.     The LWD PRP Group is Defined in the Third Amended Complaint and the Uniform Comparative Fault Act Applies to this Case.**

The JDG continues to make arguments about the definition of the "LWD PRP Group" in the Third Amended Complaint. *See* JDG Memo at 9-10. As an initial matter, this Court has already rejected the JDG's argument that the LWD PRP Group cannot bring its claims under the "LWD PRP Group" name. See 2/ *See* 2/7/14 Mem. Op. and Order [DN 961] at 24-25. So, to the extent this is a veiled argument by the JDG on this issue, the Court has already ruled on this issue.

As far as the JDG's repeated statements that the identity of the LWD PRP Group remains in question, here are the exact allegations from paragraph 33 of the Third Amended Complaint (which were exactly the same in the original and First and Second Amended Complaints):

> The LWD PRP Group consists of the following entities in their own right, and as assignees of all entities who have or will assign their CERCLA cost-recovery and contribution rights to the LWD PRP Group: Air Products and Chemical, Inc.; Akebono Brake Corporation; Albaugh, Inc.; Arkema Inc.; Ashland Inc.; Atlantic Richfield Company/BP Products North America, Inc./The Standard Oil Company; BASF Corporation; Cognis Corporation; Goodrich Corporation, formerly The B.F. Goodrich Company; Three Rivers Management, Inc., agent for Beazer East, Inc.; Chase Brass & Copper Co.; Dart Container Corporation of KY, a MI corporation; Environmental Enterprises Inc.; DanChem Technologies, Inc.; CNA Holdings LLC; Illinois Central Railroad Company; InChem Corp.; International Specialty Products, Inc.; Koppers Inc.; Marathon Petroleum Company LP as assignee of Marathon Oil Company; Milliken & Company; NCR Corporation; The Lubrizol Corporation; Giant Resource Recovery, Inc.; PPG Industries; PepsiCo, Incorporated; Phelps Dodge Industries, Inc.; Pollution Control Industries, Inc.; Rineco; Safety-Kleen Systems, Inc.; Shell Oil Company and Its Affiliates and Subsidiaries; Motiva Enterprises LLC; Steelcase Inc.; Hamilton Sundstrand Corporation, formerly Sundstrand Aerospace; Philips Electronics North America Corporation; Givaudan Flavors Corporation; Teva Pharmaceuticals USA, Inc.; Texas Gas Transmission, LLC; Textileather Corporation; SET Environmental, Inc.; United States Steel Corporation; R.T.

> Vanderbilt Company, Inc.; Waste Control Specialists LLC; Westlake Vinyls, Inc.; and Weyerhaeuser NR Company.

*See* Third Am. Compl. at ¶ 33. In other words, as with virtually every other Superfund case, the LWD PRP Group is asserting claims against all defendants on its own behalf, and as the assignor of all CERCLA claims of PRPs who have settled with the LWD PRP Group. This is exactly what the LWD PRP Group has alleged in paragraph 33 of the Third Amended Complaint where it defines itself.

The majority of courts apply the principles of the Uniform Comparative Fault Act ("UCFA") to private party settlements in CERCLA cases. *See, e.g., Comerica Bank-Detroit v. Allen Industries, Inc.*, 769 F. Supp. 1408, 1414-15 (E.D. Mich. 1991) (adopting the majority rule of applying the UCFA in private party CERCLA settlements). Pursuant to Section 6 of the UCFA, the liability of non-settling defendants is reduced by the amount of any settling party's equitable share of the obligation. *See* Unif. Comparative Fault Act § 6, 12 U.L.A. 37, 50 (Supp. 1988). What this means is that the LWD PRP Group takes on the respective equitable shares of all PRPs it settles with at the LWD Incinerator Site. What this also means is that the respective equitable shares of the non-settling defendants, such as the JDG members, are reduced by such equitable shares. So naturally, if the LWD PRP Group has to take on the equitable shares of all of its settlers, then it stands in their stead vis-à-vis non-settling defendants.

At the LWD Incinerator Site, the only entities who have incurred response costs are the LWD PRP Group, its assignors who have settled with the LWD PRP Group, EPA and the State of Kentucky. The LWD PRP Group has paid or will pay all of EPA's past response costs and has agreed in principle to pay the State's past and future response costs. Thus, as with any Superfund site case of this type, the LWD PRP Group has or will soon possess contribution claims against all remaining defendants, including all JDG members, for all incurred response costs at the LWD

Incinerator Site. In other words, the LWD PRP Group and its assignors are currently paying 100% of the Site response costs, which is, by its very definition, more than their collective equitable shares since none of the remaining defendants, including the JDG members, have paid any Site response costs, much less their respective equitable shares.

Moreover, the individual amounts paid by the LWD PRP Group or its assignors is not relevant since the LWD PRP Group will possess these contribution claims in whole and is suing on behalf of all its group member and assignors. At a certain point in this litigation, the Court will determine the respective equitable shares of all parties. The collective equitable shares of the LWD PRP Group and its assignors will be identified as a percentage of the entire group of such PRPs, which can be applied to the total response costs (damages) incurred by the LWD PRP Group and its assignors. Each remaining defendant will also be assigned a percentage to be applied to the total response costs (damages). The JDG members and other non-settling defendants are protected from paying more than their respective equitable shares of Site response costs through the proper application of the UCFA.

Again, when the Court construes the allegations in the Third Amended Complaint related to the identification of the LWD PRP Group and its assignors, and the responses costs incurred and to be incurred by the LWD PRP Group and its assignors, in a light most favorable to the LWD PRP Group and accepts all such factual allegations as true, the Court should not dismiss the LWD PRP Group's Third Amended Complaint in its entirety.

**CONCLUSION**

For the foregoing reasons, Plaintiff LWD PRP Group respectfully requests that this Court enter an appropriate Order denying JDG's Motion to Dismiss all or a portion of Plaintiff's Third Amended Complaint, and for such other and any further relief as the Court deems just and appropriate under the circumstances.

Dated:  May 12, 2014                                Respectfully submitted,

/s/ Gary D. Justis
Gary D. Justis                    admitted *pro hac vice*
Joshua Bailey                     admitted *pro hac vice*
THE JUSTIS LAW FIRM LLC
5251 W. 116th Place, Suite 200
Leawood, Kansas  66211-7820
Telephone:  (913) 998-6100
Facsimile:  (913) 998-6101
Email:  gjustis@justislawfirm.com
         jbailey@justislawfirm.com
and

W. Fletcher McMurry Schrock   (Ky. Bar# 62283)
MCMURRY & LIVINGSTON, PLLC
201 Broadway
P.O. Box 1700
Paducah, Kentucky  42002-1700
Telephone:  (270) 443-6511
Facsimile:  (270) 443-6548
Email:  fletch@ml-lawfirm.com

ATTORNEYS FOR PLAINTIFF LWD PRP
GROUP

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 12, 2014, a copy of the foregoing Plaintiff's Response to Defendants' Rule 12(b)(6) Motion to Dismiss was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's Electronic Case Filing System.

/s/ Gary D. Justis
Gary D. Justis