UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12CV-127-M

LWD PRP GROUP                                          PLAINTIFF

v.

ACF INDUSTRIES, LLC, et al.                           DEFENDANTS

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Defendants, named on the Exhibit A attached, by counsel, tender the following Reply to Plaintiff's Response to Defendants' Motion to Dismiss:

The Defendants' Motion to Dismiss should be granted, as it identifies and requests dismissal of Plaintiff's claims regarding costs for which it is not entitled to contribution. Furthermore, though the Plaintiff continues to paint the Defendants as unreasonable bad actors, the facts simply do not support those assertions. The Plaintiff has consistently demanded more than Defendants' equitable share in settlement and has consistently shaded the actual costs incurred at the LWD Site, a pattern that continues in its claim for contribution pursuant to the Past Costs AOC II. The fact the Defendants have declined to pay Plaintiff's inflated settlement demands does not in any way impact the consideration of Defendants' motion to dismiss.

      **I.**     **At a Bare Minimum the Section 122(h) Costs Paid Pursuant to the 2007 ASAOC Are Barred by the Statute of Limitations.**

The Defendants' motion to dismiss the Section 122(h) costs that Plaintiff has paid pursuant to the 2007 ASAOC is not a veiled attempt to request reconsideration on the statute of limitations issue decision made by this Court on the 2007 ASAOC.[1] This motion to dismiss is targeted only to those Section 122(h) costs that the Plaintiff has now admitted, for the first time,

---

[1] The Defendants' do believe this decision to be in error, which is why they have pursued interlocutory appeal on the issue.

in its Third Amended Complaint were in fact paid pursuant to Section 122(h). Indeed, before this time, the Plaintiff's Complaint did not contain any breakdown of payments made under the 2007 ASAOC and it would have been difficult, if not impossible, for Defendants to identify with particularity the claim that the Plaintiff was making for these costs. In addition, this is the first time that the Defendants have argued to this Court that it should treat the Section 122(h) costs differently from the other costs paid by the Plaintiffs under the 2007 ASAOC.

Notably, the Plaintiff does not dispute that these costs are Section 122(h) costs, nor does it present any statute, case, or other argument that prohibits the application of different statutes of limitations to different categories of costs agreed to be paid under the same agreed order. The fact remains that at least some portion of the 2007 ASAOC was entered into pursuant to Section 122(h), and that, at the very least, recovery of this portion of the costs incurred ($835,652.00) should be subject to the three-year statute of limitations under Section 113(g)(3) of CERCLA.

Plaintiff's reliance on *ITT Industries, Inc. v. BorgWarner, Inc.*, 506 F.3d 452 (6th Cir. 2007) is misplaced. In that case, the Court's decision was based on its determination that the order at issue was explicitly made pursuant to Section 122(a) and that it did not otherwise meet the requirements of Section 113(f)(3)(B), a necessary prerequisite to bringing a contribution claim. *Id.* at 461 ("we find that the AOC does not fall within the §§ 122(g) or 122(h) settlements as required by the statute of limitations as enumerated under § 113(g), as it was executed pursuant to § 122(a)"). In contrast, the 2007 ASAOC is, by its terms, "an administrative settlement pursuant for purposes of Section 113(f)(3)(B) of CERCLA," underwent public notice and comment, and resolves the liability of the Plaintiff for costs paid pursuant to Section 122(h). As a result, the reimbursement component of the 2007 ASAOC is materially different from that

in the *ITT Industries* case, and the Plaintiff's claims that are based on that portion of the ASAOC should be dismissed.

> **II. None of the Arguments of the Plaintiff Change the Voluntary Nature of the Past Costs AOC II.**
>
>> A. The Plaintiff's Arguments Do Not Demonstrate its Payment was Legally Required.

The Plaintiff attempts to characterize the Past Costs AOC II as a "compelled" settlement, pointing out that (i) it might be contractually obligated to indemnify settling parties for past response costs, (ii) the Defendants attempted to enter into a settlement with the USEPA for the remainder of the past costs owed at the Site, and (iii) that certain Defendants have considered filing counterclaims in this case to ensure an equitable distribution of costs. Of course, none of these arguments actually changes the voluntary nature of the Past Costs AOC II.

Critically, at no point does the Plaintiff refute the Defendants' statement that the statute of limitations had expired as to USEPA's ability to seek recovery from the putative members of the Plaintiff. Although the Plaintiff suggests the limitations period had not expired as to the members of the JDG because of tolling agreements,[2] *see Response* at 7, at no point is there any suggestion USEPA had the legal ability to compel additional payments from the members of the Plaintiff. How, then, a payment made without legal compulsion or even the potential for such compulsion can be construed as anything other than voluntary is a logical leap apparently available only to the Plaintiff.

The fact that the Plaintiff agreed to the Past Costs AOC II allegedly in order to protect its claim for contribution under the Past Costs AOC I does not change the fact that the Plaintiff itself had already received contribution protection for most, if not all, of the costs its intends to

---

[2] Like much from the Plaintiff in its recent briefing, this is false. The tolling agreements expired prior to the offer discussed in the Plaintiff's briefing.

pay under the Past Costs AOC II. It also does not change the fact that the statute of limitations for the USEPA to file suit for these costs had already expired when the Plaintiff entered into the Past Costs AOC II.

The Plaintiff builds this argument upon the fact the moving Defendants attempted to settle their liability directly with USEPA. However, this does not transform the Past Costs AOC II in to a "compelled" settlement, one where the Plaintiff was dragooned into court by legal process. *See E.I. duPont de Nemours and Company v. United States*, 297 F. Supp. 2d 740, 752 (D.N.J. 2003) *aff'd by* 460 F.3d 515 (3rd Cir. 2006); *vacated on other grounds and remanded by* 551 U.S. 1129 (2007). Rather, it appears the Plaintiff felt its potential to maximize the profitability of its collection from the Defendants was in jeopardy if the Defendants made payment to the Government for their proportionate share of liability at the Site.

As it is wont to do, the Plaintiff deliberately mischaracterizes the offers made by the JDG during this process and conveniently ignores the fact that the JDG repeatedly offered to contribute its proportionate share to the settlement made between the alleged members of the Plaintiff and USEPA in the Past Costs AOC I. Indeed, in the fall of 2012, the JDG offered, in writing, to contribute its proportionate share toward the pending Past Costs AOC I, only to have that offer rejected by the Plaintiff. As the Defendants have repeatedly stated, they have maintained a willingness, and on numerous circumstances offered, to pay their proportionate share of costs at the site – a position affirmed by the $625,000 offer made to USEPA. The JDG offered to pay 11% of the total USEPA Site costs because the waste volume for the JDG (as then composed, or approximately 154,000,000 pounds) represented 11% of the total waste-in calculated by USEPA (1,280,000,000 pounds) for the Site. For the Plaintiff to suggest this offer represented less than the JDG's proportionate share of USEPA's Site costs is patently false.

Similarly, the Plaintiff's contractual obligations to indemnify settling parties for claims related to the USEPA's past costs have no impact on whether there is "common liability" between the Plaintiff and the Defendant's to pay those costs, which is the relevant inquiry when considering whether a party has a claim for contribution. *See U.S. v. Atlantic Research, Inc.*, 541 U.S. 128, 138 (2007). The Plaintiff's obligation to indemnify settling parties is part of the bargain it struck for obtaining the settlement payment from those parties, but it does not change the fact that the Plaintiff is under no compulsion to pay costs for which it has already settled its liability to the government and it does not constitute a "common liability" of the Plaintiff and the Defendants. Moreover, as the Plaintiff knows, the USEPA had and has no plans to bring claims against any settling parties for these costs since the statute of limitations on any such claims has expired.

Nor does the possibility that the Defendants might bring counterclaims for contribution against the settling parties transform the Past Costs AOC II into a compelled settlement. As the Plaintiff knows, counterclaims and crossclaims for contribution in CERCLA cases are commonplace when the plaintiff has a claim for cost recovery under Section 107(a). In fact, the Supreme Court agreed in *Atlantic Research* that a Section 113 counterclaim is the mechanism to trigger equitable apportionment in cases where the Plaintiff's claim is for cost recovery, noting:

> In any event, a defendant PRP in such a § 107(a) suit could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim. *459 F.3d at 835*; see also *Consolidated Edison, supra, at 100, n 9* (collecting cases). Resolution of a § 113(f) counterclaim would necessitate the equitable apportionment of costs among the liable parties, including the PRP that filed the § 107(a) action.

*Atlantic Research*, 551 U.S. at 140-41.

In its supplemental response, the Plaintiff also states that the settlement agreement under the Past Costs AOC II is broader than that under the Past Costs AOC I, noting that the Past Costs AOC II covers costs incurred after the October 10, 2012 cutoff date of the Past Costs AOC I and also includes that were incurred before October 10, 2012, but not yet paid. Oddly, despite the fact that the USEPA and the Plaintiff are the parties in the best position to know the precise amount of such "new" costs, neither the Plaintiff nor the USEPA quantify those costs at all. Perhaps some portion of the amount paid under the Past Costs AOC II is for costs not covered by the Past Costs AOC I, or perhaps not – the Plaintiff's apparent preference to obfuscation to delineation strongly suggests the alleged "new" costs are not what they seem.

### B. The Defendants have Repeatedly Attempted to Pay their Proportionate Share of Site Costs.

As noted by the Defendants in their response to Plaintiff's similar allegations in briefing on Defendants' Motion for Reconsideration, the Defendants have consistently expressed their interest in paying their proportionate share of costs at the LWD Site. Without rehashing all of those arguments here, it suffices to say that the Defendants on multiple occasions executed written letters of intent in favor of the members of the Plaintiff to pay their respective proportionate share of Site costs. However, once current Plaintiff's counsel was engaged, the prospect of paying only an equitable, proportionate share of costs evaporated and was replaced by exorbitant demands and distortions of the costs actually paid at the Site. Indeed, Plaintiff continues to obfuscate regarding the costs it has actually incurred and for which contribution is appropriately available by failing to reveal the amount of alleged "new" costs paid under the Past Costs AOC II and instead demanding contribution based on the full payment made under the Past Costs AOC II.

Furthermore, it was Plaintiff's bullying behavior, and not any effort to avoid paying an equitable share, that led Defendants to make their offer to the USEPA regarding past costs. In fact, by Defendants' calculation, as set forth above, the amount that was offered to the USEPA in settlement for past costs was proportionate to the volumetric share of the costs it would pay in contribution for the Past Costs AOC I. Simply put, the Defendants are willing to pay their share, but not more. This is further evidenced by the Rule 68 offer made by many of the remaining Defendants. Unfortunately, though the Plaintiff gives lip service to an equitable apportionment of costs, it does not act consistently with that stated goal, and instead seems intent on squeezing Defendants for excessive settlements.

### III. The Plaintiff's Steadfast Refusal to Identify its True Members or the Amounts Collected in Settlement is Fatal to the Plaintiff's Claim.

The Plaintiff continues to depict its composition in broad, ill-defined brush strokes yet argues that it can nonetheless continue with its alleged claims for contribution. It relies upon the Uniform Comparative Fault Act as a shield to protect its profit-making enterprise from disclosure to the Court, stating, in effect, it matters not how much money the Plaintiff recovers through settlement, it still can pursue contribution claims against the JDG Defendants. In short, under the Plaintiff's theory of contribution, there is no analysis of whether or not liability has been equitably distributed – it can recover from the Defendants anyway.

Such a construct bastardizes the fundamental basis for contribution as set forth in *Atlantic Research*. Under the Plaintiff's model, it can recover a multiple of its proportionate liability of Site costs, yet, because of the terms of settlement agreements it may negotiate, recover further still from the moving Defendants. While assignment of contribution rights is not unusual, nothing suggests that CERCLA permits an enterprising PRP or group of PRPs to cajole disproportionate share settlement payments, take an assignment of the settling party's

contribution rights as part of the settlement, then rely upon the fact the settlement payment was disproportionate to maintain contribution claims against other non-settling PRPs. The perversity of such a scheme is apparent on its face, yet it is the one advanced by the Plaintiff in its Response. The Plaintiff offers no support for why it should be allowed to transform equitable recovery into this type of profiteering, and the Court should not permit it to do so. If the members of the Plaintiff can demonstrate they have made disproportionate payments toward a common liability – a liability for which they were actually liable, not payments they voluntarily made to preserve a litigation business model – then, and only then, can their claims against these Defendants proceed.

## CONCLUSION

For the reasons set forth above and as set forth in the original motion, the Defendants respectfully request the Court grant their motion to dismiss.

> WHITLOW, ROBERTS, HOUSTON & STRAUB PLLC
> *Attorneys for Defendant*
>
> By: */s/ J. Duncan Pitchford*
> J. Duncan Pitchford
> Nicholas M. Holland
> 300 Broadway
> Post Office Box 995
> Paducah, Kentucky 42002-0995
> Telephone: (270) 443-4516
> Facsimile: (270) 443-4571
> dpitchford@whitlow-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of May, 2014, I have filed the foregoing through the CM/ECF system, which will forward an electronic copy to the counsel of record.

I further certify that I have served non-ECF participants via first class mail.

> /s/ J. Duncan Pitchford
> J. Duncan Pitchford