NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0047n.06

No. 14-5730

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LWD PRP GROUP,                                    )
                                                  )
     *Plaintiff-Appellee,*                    )
                                                  )
v.                                                )
                                                  )    ON APPEAL FROM THE UNITED
ALCAN CORP. ET AL.,                               )    STATES DISTRICT COURT FOR
                                                  )    THE WESTERN DISTRICT OF
     *Defendants-Appellants.*                 )    KENTUCKY
                                                  )
                                                  )
                                                  )
                                                  )

> FILED
> Jan 14, 2015
> DEBORAH S. HUNT, Clerk

Before: GIBBONS and COOK, Circuit Judges; GWIN, District Judge[*]

GWIN, District Judge.  Broadly speaking, this case deals with a party's effort to obtain reimbursement for the costs of cleaning up a Superfund site in Calvert City, Kentucky.  This appeal presents a particular legal question: whether the three year statute of limitations for contribution actions after an administrative settlement to perform a removal action–a broad term defined by CERCLA to include a variety of activities including "the cleanup or removal of released hazardous substances from the environment"–begins running when the settlement becomes effective or begins running when the removal action is completed.

----

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

In this case, if the limitations period runs from the settlement's effective date, the statute of limitations had already expired before this action was filed.  On the other hand, if the limitations period runs from the completion of the removal action, the statute of limitations defense fails.

The district court agreed with Plaintiff-Appellee that the statute of limitations for such claims runs from the completion of the removal action and denied Defendants-Appellants' motion to dismiss the contribution claims.[1]

After the district court's decision, we decided virtually the same issue in *Hobart Corp. v. Waste Management of Ohio, Inc.*[2]  In *Hobart*, we held that a contribution action brought after an administrative settlement with the United States or a State must be filed within three years of the settlement's effective date.  With *Hobart*, we agreed with Defendants-Appellants' argument regarding how CERCLA's statutes of limitations should apply.

We find nothing distinguishes this case from *Hobart* and, despite Plaintiff-Appellee's invitation, we do not have power to reverse a precedential opinion of this Court.  We therefore REVERSE the district court's denial of the motion to dismiss Plaintiff-Appellee's contribution claims.

---

[1] Although not giving a final judgment, the district court certified the question for interlocutory appeal.

[2] 758 F.3d 757 (6th Cir. 2014).

-2-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

## I.  Background

## A. CERCLA Background

Before turning to the facts of this particular case, some background on CERCLA is useful. In general, CERCLA imposes liability on parties who played a role in polluting a site: by owning and operating the site; by sending hazardous waste to the site; or by participating in transporting hazardous waste to the site.[3]  CERCLA also gives a variety of methods for liable parties to obtain reimbursement from other liable parties to apportion costs in an equitable fashion.

For example, parties that voluntarily incur costs can bring cost recovery actions under CERCLA § 107 against other liable parties.[4]  CERCLA § 113(f) separately allows contribution actions for any "person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement."[5]

We have repeatedly considered the interplay between cost recovery actions and contribution actions, including most recently in *Hobart*, where we resolved several issues relevant to this appeal.

First, in *Hobart*, we held that a response cost directly incurred by a party that is recoverable using a § 113(f) contribution action is not also recoverable under the cost recovery provisions of § 107.[6]

---

[3]CERCLA § 107(a).  For simplicity, throughout this opinion we cite to CERCLA without providing the parallel U.S. Code citation.  In general, CERCLA § 1xx can be found at 42 U.S.C. § 96xx.  For example, CERCLA § 107 is codified at 42 U.S.C. § 9607.

[4]CERCLA § 107(a)(4)(B); *see United States v. Atl. Research Corp.*, 551 U.S. 128 (2007).

[5]CERCLA § 113(f)(3)(B).

[6]*Hobart*, 758 F.3d at 767-68.

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

Second, in *Hobart*, we held that for an administrative settlement to support a contribution action, it must resolve the plaintiff's "liability to the United States or a State for some or all of a response action or for some or all of the costs of such action."[7]  This determination is case-specific, and requires the court to "interpret the settlement agreement as a contract according to state-law principles."[8]

Third, in *Hobart*, we addressed the relevant statute of limitations where the plaintiff seeks contribution after an administrative settlement.  In doing so, we considered two potentially relevant limitations provisions.

On one hand, under CERCLA § 113(g)(2)(A), a party seeking to recover the costs of a removal action under § 107 faces a three year statute of limitations running from the completion of the removal action.[9]

On the other hand, under CERCLA § 113(g)(3) (the "Contribution Limitations Provision"), a party seeking contribution after an administrative settlement with the EPA that resolves liability must satisfy a three year statute of limitations running from the settlement's effective date.[10]

---

[7] *Id.* at 768 (quoting CERCLA § 113(f)(3)(B)).

[8] *Id.* (citation omitted).

[9] CERCLA § 113(g)(2)(A) ("An initial action for recovery of the costs referred to in section [107] must be commenced– (A) for a removal action, within 3 years after completion of the removal action, except that such cost recovery action must be brought within 6 years after a determination to grant a waiver under section [104(c)(1)(C)] for continued response action . . . .").

[10] CERCLA § 113(g)(3) ("No action for contribution for any response costs or damages may be commenced more than 3 years after– (A) the date of judgment in any action under this chapter for recovery of such costs or damages, or  (B) the date of an administrative order under section [122(g)] (relating to de minimis settlements) or [122(h)] (relating to cost recovery settlements) or entry of a judicially approved settlement with respect to such costs or damages.").

-4-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

We concluded in *Hobart* that CERCLA's Contribution Limitations Provision gives a three year statute of limitations on all actions for contribution after an administrative settlement.[11]   The Contribution Limitations Provision mentions two types of administrative settlements, those reached under CERCLA § 122(g) or CERCLA § 122(h), and expressly provides that the statute of limitations begins to run on the effective date of these kinds of settlements.[12]

In *Hobart*, we also recognized that administrative settlements other than those expressly referenced in CERCLA's Contribution Limitations Provision can give rise to contribution rights. For example, although the settlement in *Hobart* was reached under § 122(a)–not a type of settlement mentioned in the Contribution Limitations Provision–it nonetheless gave rise to contribution rights because it resolved liability.[13]

In *Hobart*, we further observed that the Contribution Limitations Provision was silent on the triggering date for the statute of limitations for these types of administrative settlements.   We rejected the idea that the statute of limitations should have no starting date.  Instead, we "borrowed" an analogous triggering event.[14]   We concluded that the most similar triggering event was the effective date of the agreement that gave rise to the right to pursue the contribution action.[15]

---

[11]*Hobart*, 758 F.3d at 772 (citing *RSR Corp. v. Commercial Metals Co.*, 496 F.3d 552, 556, 558 (6th Cir. 2007)).

[12]CERCLA § 113(g)(3).

[13]*Hobart*, 758 F.3d at 774-75.

[14]*Id.*

[15]*Id.* at 775.

-5-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

In reaching these conclusions, we rejected a number of contrary arguments, including the argument that because the Contribution Limitations Provision gave some triggering events, it should not apply outside the presence of the identified triggering events.[16]

## B. Factual Background

The LWD Incinerator Site is part of the LWD, Inc. Superfund site in Calvert City, Kentucky.[17] From the 1970s to 2004, a hazardous waste incinerator operated at the site.[18] After the last-known owner and operator abandoned the site, the EPA conducted initial waste removal activities at the request of the Kentucky Department of Environmental Protection.[19]

The EPA identified potentially responsible parties ("PRPs") and, on March 1, 2007, it entered an "Administrative Settlement Agreement and Order on Consent for Removal Action" ("Settlement Agreement") with fifty-eight of the responsible parties.[20] The Plaintiff-Appellee in this case, the LWD PRP Group, is an association composed of some of these fifty-eight PRPs.[21]

Under the Settlement Agreement's terms, the fifty-eight PRPs agreed to carry out certain removal activities at the site and to compensate the EPA for future response costs.[22] On September

---

[16] *Id.* at 774-75.

[17] R. 758 at 4 (Second Amended Complaint at 4).

[18] R. 758 at 5-6 (Second Amended Complaint at 5-6).

[19] R. 758 at 6-7 (Second Amended Complaint at 6-7).

[20] R. 758 at 8 (Second Amended Complaint at 8); R. 776-3 (Settlement Agreement).

[21] R. 758 at 8 (Second Amended Complaint at 8).

[22] R. 776-3 at 9-10, 17-18 (Settlement Agreement at 9-10, 17-18).

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

29, 2009, the EPA issued a notice of completion of the removal activities specified in the Settlement Agreement.[23]

The parties respectively argue that these two dates–the September 29, 2009, completion date and the March 1, 2007, settlement date –started the statute of limitations on Appellee's claims for contribution of costs it incurred under the Settlement Agreement.  Appellee says the statute of limitations should run from the date it completed removal activities under the settlement.  Appellants argue that the statute of limitations runs from the effective date of the administrative settlement.

On August 31, 2012, Appellee filed the current lawsuit, naming many defendants, including some of the Appellants.[24]  Appellee also executed tolling agreements with other potential defendants, including the remaining Appellants.[25]  These Appellants were added in the First Amended Complaint.[26]  Appellee later filed a Second Amended Complaint, correcting the names of certain parties and adding the record title holder of the site as a new defendant.[27]

The Second Amended Complaint sought a variety of forms of relief, including cost recovery under CERCLA § 107 and contribution under CERCLA § 113(f).[28]

---

[23] R. 758 at 8 (Second Amended Complaint at 8).

[24] R. 1 (Complaint).

[25] R. 914-3 (Tolling Agreements).

[26] R. 581 (First Amended Complaint).

[27] R. 758 (Second Amended Complaint).

[28] R. 758 at 241-245 (Second Amended Complaint at 241-245).

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

Appellants sought dismissal of Appellee's § 113(f) contribution claims on statute of limitations grounds.[29]  The central question is whether the three year statute of limitations began to run on the Settlement Agreement's effective date of March 1, 2007, as Appellants contend, or on the completion of the removal action on September 29, 2009, as Appellee says.

Resolving this legal question will determine the success of Appellants' statute of limitations defense.  That is, Appellants do not appear to dispute that the defense would fail if the clock began running when the removal action was completed.  Likewise, Appellee does not appear to dispute that its § 113(f) contribution claims would be time-barred if the clock began running on the Settlement Agreement's effective date.

The district court agreed with Appellee that the completion date should start the clock, and therefore denied Appellants' motion to dismiss the § 113(f) contribution claims on statute of limitations grounds.[30]  It later denied a motion for reconsideration of this ruling, but also certified that issue for interlocutory review.[31]  We granted the petition for interlocutory review.[32]

We now consider the issue, guided by *Hobart Corp. v. Waste Management of Ohio, Inc.*,[33] which was decided after the district court denied the motion to dismiss and after the certification of the issue for interlocutory appeal.

---

[29] R. 776 (Motion to Dismiss).

[30] R. 961 (Dist. Ct. Op.).

[31] R. 1012 (Dist. Ct. Op.); R. 1014 (Dist. Ct. Order).

[32] R. 1033 (Order Accepting Appeal).  Appellee has filed a Third Amended Complaint that does not differ from the Second Amended Complaint in any respect relevant to this appeal.  R. 985 (Third Amended Complaint).

[33] 758 F.3d 757 (6th Cir. 2014).

-8-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

## II. Analysis

### A. Standard of Review

Appellants challenge the district court's denial of their motion to dismiss Appellee's § 113(f) contribution claims. The issue is properly before us under the procedures for interlocutory review set out in 28 U.S.C. § 1292(b). All issues we address in this case are purely legal, so our review is de novo.[34] In the interlocutory review setting, "'even those issues not properly certified are subject to our discretionary power of review if otherwise necessary to the disposition of the case.'"[35]

### B. *Hobart* Is on Point and Controlling

Given the similarities with *Hobart*, this case is relatively straightforward. In *Hobart* we held that an EPA settlement (the "*Hobart* Agreement") was an administrative settlement that resolved liability to the United States. The contribution action seeking costs incurred under that settlement was thus subject to a three year statute of limitations running from the agreement's effective date. We relied on four factors. Each is also present in the Settlement Agreement in this case.

First, the *Hobart* parties included language in their agreement that stated their intent that the agreement be an administrative settlement: "'The Parties agree that this Settlement Agreement constitutes an administrative settlement for purposes of *Section 113(f)(3)(B)* of CERCLA . . . pursuant to which [Appellants] have, as of the Effective Date, *resolved their liability*

---

[34] *See Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 865 (6th Cir. 2000).

[35] *In re Trailer Source, Inc.*, 555 F.3d 231, 245 (6th Cir. 2009) (quoting *Easley v. Pettibone Mich. Corp.*, 990 F.2d 905, 912 (6th Cir. 1993)).

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

to the United States for the Work, and Future Response Costs.'"[36]  The Settlement Agreement in the present case says exactly the same thing.[37]

Second, the *Hobart* Agreement provided that its settling parties were "'entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Sections 113(f)(2) and 122(h)(4) of CERCLA.'"[38]  As we explained, "[f]or this paragraph to have any meaning and Appellants to receive any protection from contribution actions, the [*Hobart* Agreement] must be an administrative agreement under § 113(f)."[39]  The Settlement Agreement in the present case includes identical language.[40]

Third, we noted in *Hobart* that "the parties titled the [*Hobart* Agreement] an "'*Administrative Settlement Agreement* and Order on Consent.'"[41]  "In doing so," we observed, "the parties precisely matched the statutory language in § 113(f)(3)(B)."[42]  Similarly, the Settlement Agreement in this case is titled "Administrative Settlement Agreement and Order on Consent for Removal Action."[43]

---

[36]*Hobart*, 758 F.3d at 768-69 (quoting the *Hobart* Agreement) (emphasis added in *Hobart*) (alteration and omission in original).

[37]R. 776-3 at 25 (Settlement Agreement at 25).

[38]*Hobart*, 758 F.3d at 769 (quoting the *Hobart* Agreement).

[39]*Id.* (citation omitted).

[40]R. 776-3 at 25 (Settlement Agreement at 25).

[41]*Hobart*, 758 F.3d at 769 (quoting the *Hobart* Agreement) (emphasis added in *Hobart*).  The full title of the *Hobart* Agreement was "Administrative Settlement Agreement and Order on Consent for Remedial Investigation/Feasibility Study."  Hobart Agreement at 1, *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, No. 3:10-00195 (S.D. Ohio May 24, 2010), ECF No. 1-1.

[42]*Hobart*, 758 F.3d at 769.

[43]R. 776-3 at 1 (Settlement Agreement at 1).

-10-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

And fourth, the *Hobart* agreement contained a covenant from the EPA "'not to sue or take administrative action against [Appellants] pursuant to Sections 106 and 107(a) of CERCLA . . . for the Work and Future Response Costs.'"[44]  The Settlement Agreement in the present case contains the same provision with almost identical language.[45]

In sum, all of the factors that led us to conclude that the *Hobart* Agreement qualified as an administrative settlement that could support a contribution action are present in the Settlement Agreement in this case.

Further, we concluded that the *Hobart* Agreement was a CERCLA § 122(a) settlement, a type of settlement not expressly mentioned in CERCLA's Contribution Limitations Provision, rather than a § 122(h) settlement, a type that is mentioned.[46]  We then concluded that because the claims in *Hobart*, like the ones at issue here, were for contribution towards costs incurred under an administrative settlement that resolved liability to the United States, the three year statute of limitations for contribution actions nonetheless applied.[47]  In the absence of a triggering event, we

---

[44]*Hobart*, 758 F.3d at 769 (quoting the *Hobart* Agreement) (alteration and omission in original).

[45]R. 776-3 at 22 (Settlement Agreement at 22).

[46]*Hobart*, 758 F.3d at 774-75.  Some of the aspects of the *Hobart* Agreement that led us to conclude it was a § 122(a) agreement apply here as well.  For example, the Settlement Agreement was not published in the Federal Register, and in listing statutory authority, the Settlement Agreement references only § 122 generally, rather than specifically mentioning § 122(h).  Appellee's Brief at 19-20 (stating that the Settlement Agreement was not published in the Federal Register); R. 776-3 at 3 (Settlement Agreement at 3) (citing § 122 generally, not § 122(h) specifically); *see Hobart*, 758 F.3d at 774.  On the other hand, some of the language in the *Hobart* Agreement that contributed to our conclusion that that agreement was a § 122(a) settlement by directly referencing § 122(a), *Hobart*, 758 F.3d at 774 (quoting the *Hobart* Agreement), does not appear in the Settlement Agreement in the current case.  We need not resolve whether the Settlement Agreement in the present case is a § 122(a) or § 122(h) settlement because *Hobart* dictates that in either case, the applicable statute of limitations is three years measured from the Settlement Agreement's effective date.

[47]*Hobart*, 758 F.3d at 774-75.

-11-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

"borrowed" the most analogous triggering event.  We then found the effective date of the Settlement Agreement the most analogous starting point.[48]

## C. Appellee's Counter-Arguments Fail

Appellee insists that the Settlement Agreement in the present case is a § 122(a) settlement primarily intended to facilitate the completion of a removal action, and that the triggering event for the statute of limitations should therefore be the completion of that removal action.  But even if Appellee is correct that the Settlement Agreement is a § 122(a) settlement–an issue we need not resolve–*Hobart* requires the application of a three year statute of limitations running from the Settlement Agreement's effective date, not from the removal action's completion.

Appellee says that the Contribution Limitations Provision should not be read to apply to contribution actions for costs incurred under types of administrative agreements it does not expressly mention.  Appellee argues that doing so would impermissibly render that provision's enumeration of certain triggering events meaningless.[49]  But as Appellee appears to recognize, we considered and rejected this argument in *Hobart*.[50]

---

[48]*Id.* at 775.

[49](Appellee's Brief at 22-27).

[50]*Id.* at 23-24 ("In effect, this Court rewrote § 113(g)(3) in *Hobart* . . . ."); *see Hobart*, 758 F.3d at 774-75 (rejecting a similar expressio unius argument).

-12-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

Appellee also argues that our decision in *ITT Industries, Inc. v. BorgWarner, Inc.*[51] prevents application of CERCLA's Contribution Limitations Provision to settlements of the type at issue here.[52]  But this argument was also rejected in *Hobart*.[53]

Further, Appellee says that our interpretation in *Hobart* insufficiently accounts for what it calls the "*Atlantic Research* gap."[54]  By this, Appellee means that it believes that a footnote in the Supreme Court's *Atlantic Research* decision established that reimbursement is sometimes available under both § 107's cost recovery provisions and § 113(f)'s contribution provisions.[55]  Accordingly, Appellee says, in such cases, CERCLA § 113(g)(2)'s statute of limitations for actions to recover the

---

[51]506 F.3d 452 (6th Cir. 2007).

[52](Appellee's Brief at 26).

[53]758 F.3d at 772 n.12 ("To the extent that *ITT Industries* holds that § 113(g)(3) governs only contribution actions stemming from § 122(g) or (h) settlements, [our prior decision in] *RSR Corporation* forecloses such a result." (internal citation omitted)).
    Moreover, *ITT Industries* was concerned with whether a § 113(f) contribution action could be brought for costs incurred under a particular § 122(a) settlement at all, not with what the statute of limitations would be.  And although there is language in that case suggesting that no contribution action was permitted for costs incurred under § 122(a) settlements, *ITT Indus. Corp*, 506 F.3d at 461 ("[W]e must interpret § 113(g)'s omission of settlements reached pursuant to § 122(a) to mean that settlements under that subsection are insufficient to constitute an administratively approved settlement under § 113(f)(3)(B)."), that language came only after we had already concluded that the settlement in question did not resolve any liability.  *Id.* at 459-60.
    We have subsequently held that "the defining feature of an 'administrative settlement' is that the agreement 'resolve[s] [the PRP's] liability to the United States or a State for some or all of a response action for some or all of the costs of such action . . . .'"  *Hobart*, 758 F.3d at 768 (quoting CERCLA § 113(f)(3)(B)) (alterations and omission in original).  On this understanding, the language in question from *ITT Industries* merely provided additional support for a holding that was already determined by the conclusion that the agreement at issue in that case did not resolve any liability.  Thus, *Hobart* concluded that a § 122(a) settlement that differed from the *ITT Industries* agreement in that it resolved liability could support a § 113(f) contribution claim.
    Both parties at least implicitly accept that interpretation here, (Appellee's Brief at 16); (Appellants' Brief at 13), and we accept it as well.

[54](Appellee's Brief at 14-17).

[55]*See Atl. Research Corp.*, 551 U.S. at 139 n.6.

-13-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

cost of removal actions, which does not begin to run until the removal action is completed, is more appropriate.[56]

But Appellee overreads *Atlantic Research*. The footnote it cites merely reserves the question of whether the remedies overlap or not.[57] Moreover, in *Hobart*, we clarified that even if a settlement requires PRPs to perform a removal action, a lawsuit to recover the costs of that removal action is a contribution action under § 113(f), not a cost recovery action under § 107, and is thus subject to the ordinary statute of limitations for contribution actions.[58]

Next, Appellee says that legislative history supports its reading of CERCLA's statute of limitations provisions.[59] Appellee did not make this argument to the district court, and it is therefore forfeited.[60] Moreover, it is foreclosed by *Hobart*, where it was raised and thus implicitly rejected.[61]

Because a panel of this Court may not overturn a prior panel's reported decision, we need not, and will not, revisit any of the above arguments, which we have already rejected in *Hobart*.

Appellee's policy arguments against the result reached in *Hobart* fare no better. Appellee says that *Hobart* has created and will continue to create premature litigation and has undermined and will continue to undermine the EPA's ability to agree to early settlements.[62] As with Appellee's

---

[56] (Appellee's Brief at 14-17).

[57] *Atl. Research Corp.*, 551 U.S. at 139 n.6 ("We do not decide whether [costs analogous to those in question here] are recoverable under § 113(f), § 107(a), or both.").

[58] *Hobart*, 758 F.3d at 772.

[59] (Appellee's Brief at 29-34).

[60] R. 914 (Response to Motion to Dismiss).

[61] *See* Appellants' Brief at 34-38, *Hobart*, 758 F.3d 757 (No. 13-3273), ECF No. 54.

[62] (Appellee's Brief at 34-38).

-14-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

other arguments for why *Hobart* should have been decided differently, only the full court, sitting

en banc, would have power to reverse *Hobart*'s holding.

Finally, Appellee argues that the parties intended the statute of limitations to run from the

completion of the removal action, rather than from the effective date of the Settlement Agreement.

In support, Appellee points to the fact that many of the Appellants signed tolling agreements more

than three years after the Settlement Agreement's effective date.[63]   Appellee argues that "[t]he

intentions of the parties to the [Settlement Agreement] (EPA and [Appellee] LWD PRP Group),

coupled with the intentions of the parties to the tolling agreements (EPA, [Appellee] LWD PRP

Group, and [some of the Appellants]), must be taken into account by this Court in interpreting these

two relevant contracts central to the statute of limitations issue."[64]

This argument fails for several reasons.  First, Appellee forfeited it by failing to advance it

before the district court.[65]

Second, even if we overlooked this forfeiture, the tolling agreements did no more than

exclude a defined "tolling period" from counting towards the statute of limitations or other time

based defenses in order to "facilitate settlement negotiations."[66]  This does not, as Appellee suggests,

necessarily mean that Appellants believed the statute of limitations had not yet run.  It could mean,

---

[63](Appellee's Brief at 20-21).

[64](Appellee's Brief at 21).  Appellee asserts that the EPA was a party to the tolling agreements, but the tolling agreements included in the record nowhere mention the EPA.  *See* R. 914-3 (Tolling Agreements). The signature pages for the tolling agreements were not filed due to volume, R. 914 at 28 n.8 (Response to Motion to Dismiss at 21 n.8), which makes it difficult to conclusively determine whether the EPA was a party to the tolling agreements.  Even if the EPA were a party to the tolling agreements our analysis would remain unchanged.

[65]R. 914 (Response to Motion to Dismiss).

[66]R. 914-3 at 1 (Tolling Agreements at 1).

-15-

No. 14-5730, *LWD PRP Group v. Alcan Corp. et al.*

for example, that Appellants valued a settlement because litigating the statute of limitations issue would be expensive and potentially uncertain.

Moreover, the limitations period is statutory, not contractual.  The EPA and Appellee did not have the power to agree to lengthen the time within which the Appellee could bring claims against third parties, even if the Settlement Agreement had clearly expressed their intent to do so.  And even if Appellee were correct that Appellants shared a mistaken understanding of the limitations period when they entered into the tolling agreements, that would not prevent Appellants from later asserting the defense as long they did so timely under the Federal Rules of Civil Procedure.

The only way that Appellee could potentially leverage the tolling agreements in this case is to assert that the parties to them intended not only to exclude the time listed, but also to waive any already accrued statute of limitations defense.  The language of the agreements, however, provides no support for such a reading.  Rather, it simply excludes a certain period of time.[67]  Furthermore, some of the Appellants did not sign tolling agreements, as they had already been named in the initial complaint.[68]

### III. Conclusion

For the foregoing reasons, we REVERSE the district court's order denying Defendants-Appellants' motion to dismiss Plaintiff-Appellee LWD PRP Group's § 113(f) contribution claim.

---

[67] *Cf. John Hancock Fin. Servs., Inc. v. Old Kent Bank*, 346 F.3d 727, 733-34 (6th Cir. 2003) (upholding a grant of summary judgment on claims for which the statute of limitations had run prior to the execution of a tolling agreement).

[68] R. 1 (Complaint) (including some of the Appellants as defendants); R. 914-3 at 5-8 (Tolling Agreements at 5-8) (not including these Appellants on the list of parties to the tolling agreements).

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: January 14, 2015

Ms. Rachel Dawn Guthrie
Justis Law Firm
5251 W. 116th Place
Suite 200
Leawood, KS 66211-7820

Mr. Gary D. Justis
Justis Law Firm
5251 W. 116th Place
Suite 200
Leawood, KS 66211-7820

Mr. Jonathan Duncan Pitchford
Whitlow, Roberts, Houston & Straub
P.O. Box 995
Paducah, KY 42001

Re:  Case No. 14-5730, *LWD PRP Group v. Alcan Corp., et al*
Originating Case No. : 5:12-cv-00127

Dear Counsel,

   The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Michelle M. Davis
for Patricia Elder, Senior Case Manager
Direct Dial No. 513-564-7025

cc:  Ms. Vanessa L. Armstrong

Enclosure

Mandate to issue