**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION**

| | |
|---|---|
| **LWD PRP GROUP,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>) Civil Action No. 5:12-CV-00127-<br>**ACF INDUSTRIES LLC, et al.** ) GNS-HBB<br>)<br>**Defendants.** )<br>) | |

**CONSENT JUDGMENT**

WHEREAS, Plaintiff LWD PRP Group ("LWD PRP Group") filed a Complaint in this cause, as amended with an operative Fifth Amended Complaint pending, which contains claims for contribution and declaratory judgment claims against all named defendants under CERCLA, seeking the recovery of past and future response costs incurred and to be incurred by the LWD PRP Group for response activities undertaken and to be undertaken at the LWD Incinerator Site;

WHEREAS, Plaintiff and several remaining Defendants (collectively "Consent Judgment Defendants") have agreed to resolve their claims against each other without the need for litigation;

WHEREAS, Plaintiff and each of the Consent Judgment Defendants, by their respective attorneys, consent to entry of this Consent Judgment without trial or adjudication of any issue of fact or law and to waive any appeal if the Consent Judgment is entered as submitted by the parties;

WHEREAS, Plaintiff and each Consent Judgment Defendant, by entering into this Consent Judgment, do not admit any allegations other than those facts of the Fifth Amended Complaint deemed necessary to the continuing jurisdiction of this Court;

NOW THEREFORE, without trial or adjudication of issues of fact or law, without this Consent Judgment constituting evidence against each Consent Judgment Defendant except as otherwise noted, and upon consent of each Consent Judgment Defendant, the Court finds that there is good and sufficient cause to enter this Consent Judgment, and that it is therefore ORDERED, ADJUDGED, AND DECREED:

## I. DEFINITIONS

For purposes of this Consent Judgment, the following definitions shall apply:

1. "Baker Hughes" means Defendant Baker Hughes Inc. and its owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

2. "Bayer" means Defendants Bayer CropScience Inc.; Bayer Healthcare LLC; Interez, Inc.; Hi-Tek, Polymers; Stauffer Chemical Co. (NPL) (Stauffer Mgmt. Co.); Berlex Laboratories; Miles Laboratories; and Miles Laboratories, Inc.-Ames Division, individually and collectively, and their respective its owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

3. "CBS" means Defendant CBS Corporation, also captioned as Defendant Viacom Inc. in previous amended complaints, and Westinghouse Electric Corporation (a predecessor in interest) individually and collectively, and their respective its owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

4. "CERCLA" means the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. § 9601 *et seq.*

2

5. "Covered Matters" means all claims and remedies which have been brought or could have been brought by the parties to this Consent Judgment against each other for the following:

    a. all past, present, and future costs of whatever nature (including expert and counsel fees, EPA and State oversight costs) incurred or to be incurred by the United States, the State, Plaintiff, or any Consent Judgment Defendant, related to the investigation, remediation and/or restoration of the LWD Incinerator Site, including, without limitation, for Response Costs;

    b. all future Response Costs of the LWD PRP Group arising from the Kentucky Agreed Order or any Future Orders at the LWD Incinerator Site; and

    c. third-party claims arising out of the LWD PRP Group's negligent implementation of the Removal Action AOC, EPA Past Costs AOC I, EPA Past Costs AOC II, the Kentucky Agreed Order, or any Future Orders conducted at the LWD Incinerator Site.

"Covered Matters" shall not mean any of the following:

    a. any claim or liability relating to the enforcement of this Consent Judgment;

    b. any costs incurred by any party with respect to natural resource damages at the LWD Incinerator Site;

    c. claims for toxic torts, personal injury or property damage claims by third-party entities who are not parties to this Consent Judgment;

    d. criminal liability of any party to this Consent Judgment;

3

  e. liability of the parties to this Consent Judgment based upon their ownership or operation of the LWD Incinerator Site, or upon the transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal, of a hazardous substance or a solid waste at or in connection with the LWD Incinerator Site, after the Effective Date of this Consent Judgment;

  f. liability for claims of any nature related to any facility other than the LWD Incinerator Site;

  g. any claims resulting from any violation of any order issued pursuant to CERCLA or the Kentucky Environmental Protection Act; and

  h. claims by any third party against any party to this Consent Judgment for contractual indemnity or related to such party's actual or alleged insurers.

  6. "Cycle Chem" means Defendant Cycle Chem, Inc. and its owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

  7. "DLD" means Defendant Drug & Laboratory Disposal, Inc. and its owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

  8. "EPA" means the United States Environmental Protection Agency.

  9. "EPA Past Costs AOC I" means the "Settlement Agreement for Recovery of Past Response Costs," CERCLA Docket No. 04-2013-3751, pursuant to Section 122(h)(1) of CERCLA, 42 U.S.C. § 9622(h)(1), entered into with EPA related to its claims for past response costs at the LWD Incinerator Site, with an effective date of July 1, 2013.

4

10. "EPA Past Costs AOC II" means the "Settlement Agreement for Recovery of Past Response Costs," CERCLA Docket No. 04-2013-3763, pursuant to Section 122(h)(1) of CERCLA, 42 U.S.C. § 9622(h)(1), entered into with EPA wherein the LWD PRP Group paid EPA the remaining balance of EPA's claims for past response costs at the LWD Incinerator Site not otherwise paid by the LWD PRP Group through the EPA Past Costs AOC I or otherwise, along with an amount for future potential EPA response costs, in return for a full Site release from EPA, with an effective date of May 8, 2014.

11. "Future Orders" means any order by EPA, KDEP, the State or any other governmental entity, other than EPA Past Costs AOC I, EPA Past Costs AOC II, the Kentucky Agreed Order, and the Removal Action AOC, that requires any response actions to the extent such response actions address any hazardous substances or other pollutants discharged or disposed of at the LWD Incinerator Site.

12. "GE" means Defendant General Electric Company and its owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

13. "Ingersoll" means Defendants Ingersoll-Rand Company and Trane US Inc., individually and collectively, and their respective owners, shareholders, officers, directors, employees, successors, predecessor, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

14. "KDEP" means the Kentucky Department of Environmental Protection.

15. "Kentucky Agreed Order" means the agreed-upon Order dated December 4, 2015 between the Commonwealth of Kentucky and various respondents, including the LWD PRP

Group members, with respect to the Commonwealth's past and ongoing response costs and work conducted and to be conducted by the LWD PRP Group at the LWD Incinerator Site.

16. "LWD Incinerator Site" means that portion of the LWD, Inc. Superfund Site at 2745 Industrial Boulevard in Calvert City, Marshall County, Kentucky, where operations at the former LWD waste incinerator occurred, as well as any area where hazardous substances that migrated from the LWD waste incinerator have come to be located.

17. "LWD PRP Group" means Plaintiff LWD PRP Group consisting of Air Products and Chemicals, Inc. for itself and on behalf of Air Products, Incorporated; Air Products, L.P.; Air Products Manufacturing Corporation; and including all other current and former subsidiaries and affiliates; Akebono Brake Corporation; Albaugh, Inc.; Arkema Inc. (f/k/a Atofina Chemicals, Inc., Elf Atochem North America Inc., Atochem North America Inc., and Pennwalt Corporation) and for Cook Composites & Polymers Co.'s former Lemont, IL facility and North Kansas City, MO facility; Ashland Inc.; Atlantic Richfield Company/BP Products North America, Inc./The Standard Oil Company; BASF Corporation on its own behalf and on behalf of Cognix USA LLC (fka Cognis Corporation); Goodrich Corporation, formerly The B.F. Goodrich Company; Three Rivers Management, Inc., agent for Beazer East, Inc.; Chase Brass & Copper Co.; Dart Container Corporation of KY, a MI corporation; Environmental Enterprises Inc.; DanChem Technologies, Inc.; CNA Holdings LLC; Illinois Central Railroad Company (f/k/a Illinois Central Gulf Railroad); InChem Corp.; International Specialty Products, Inc.; Koppers Inc.; Marathon Oil Company; Marathon Petroleum Company LP by MPC Investment LLC, its General Partner as assignee of Marathon Oil Company; Milliken & Company; NCR Corporation; The Lubrizol Corporation; Giant Resource Recovery, Inc.; PPG Industries; PepsiCo, Incorporated; Phelps Dodge Industries, Inc.; Tradebe Treatment and Recycling, LLC, as

successor to Pollution Control Industries, Inc., as successor to Pollution Control Industries of Indiana, Inc.; Tradebe Treatment and Recycling, LLC, as successor to Pollution Control Industries of Tennessee, LLC; Rineco; Safety-Kleen Systems, Inc.; Shell Oil Company and its Affiliates and Subsidiaries; Motiva Enterprises LLC; Steelcase Inc.; Hamilton Sundstrand Corporation, formerly Sundstrand Aerospace; Philips Electronics North America Corporation on behalf of T.H. Agriculture & Nutrition Co., Chicago Magnet Wire Co. and Phillips Electronics North America Corporation; Givaudan Flavors Corporation; Teva Pharmaceuticals USA, Inc.; Texas Gas Transmission, LLC; Textileather Corporation; SET Environmental, Inc.; United States Steel Corporation; Vanderbilt Minerals, LLC, f/k/a R.T. Vanderbilt Co., Inc.; Waste Control Specialists LLC; Westlake Vinyls, Inc.; and Weyerhaeuser NR Company as assignee of Weyerhaeuser Company, individually and collectively, and each of their respective owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise; in their own right, and as assignees of all claims at the LWD Incinerator Site of all other entities who have settled or will settle with and assign their LWD Incinerator Site claims to the LWD PRP Group.

18. "PDC" means Defendants PDC Laboratories, Inc. and Peoria Disposal Company, individually and collectively, and their respective owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

19. "Perma-Fix" means Defendants Perma-Fix Environmental Services, Inc., alternatively, Perma-Fix of Dayton, Inc., Perma-Fix of Orlando, Inc., and Perma-Fix of South Georgia, Inc., individually and collectively, and their respective owners, shareholders, officers,

7

directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

20. "Rail Services" means Defendant Rail Services, Inc. and its owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

21. "Removal Action AOC" means the Administrative Settlement Agreement and Order on Consent for Removal Action with EPA, styled *In the Matter of: LWD, Inc. Site, Calvert City, Marshall County, KY*, CERCLA Docket No. CERCLA-04-2007-3759, ordered and agreed to on February 28, 2007, with an effective date of March 1, 2007.

22. "Response Costs" mean all past, present, and future costs of whatever nature incurred or to be incurred by the LWD PRP Group related to the investigation, remediation and/or restoration of the LWD Incinerator Site and which would be recoverable by the LWD PRP Group in a contribution action pursuant to CERCLA Section 113(f) minus any such costs reimbursed to the LWD PRP Group by the Commonwealth of Kentucky from a closure fund established for LWD Incinerator Site monitoring, maintenance, and remediation. Response Costs shall include, without limitation but only to the extent the same would be recoverable by the LWD PRP Group in a contribution action pursuant to CERCLA Section 113(f), the following: removal and remedial response costs; costs of operation, maintenance and monitoring of any removal or remedial action; oversight costs; administrative costs; legal costs closely tied to the investigation, remediation and/or restoration of the LWD Incinerator Site to the extent such constitute a necessary cost of response; and any other costs of complying with the Removal Action AOC, EPA Past Costs AOC I, EPA Past Costs AOC II, the Kentucky Agreed Order or any Future Orders.

8

23. "Spirit Services" means Defendant Van Dyne & Crotty Co. d/b/a Spirit Services Co. of Ohio, also captioned as Spirit Services Company and Van Dyne & Crotty, Inc. in previous amended complaints, individually and collectively, and their respective owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

24. "State" means the Commonwealth of Kentucky and all of its agencies, departments and subdivisions, including, but not limited to, KDEP.

25. "Wheeler Lumber" means Defendant Wheeler Lumber, LLC and its owners, shareholders, officers, directors, employees, successors, predecessors, agents, affiliates and assigns, whether pursuant to contract, by operation of law, or otherwise.

## II.     JURISDICTION

26. This Court has jurisdiction over the subject matter of this action pursuant to pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), providing jurisdiction over controversies arising under CERCLA; and pursuant to 28 U.S.C. § 1331, providing for jurisdiction over controversies involving federal questions of law, and over each Consent Judgment Defendant. The Fifth Amended Complaint states a claim upon which relief may be granted against each Consent Judgment Defendant. Venue is proper in this district pursuant to Sections 107(a) and 113(b) of CERCLA, 42 U.S.C. §§ 9607(a) and 9613(b), and 28 U.S.C.§§ 1391(b) and (c), because the release or threatened release of hazardous substances occurred at or from the LWD Incinerator Site located in this judicial district.

## III.     FINANCIAL TERMS

27. Within sixty (60) days after judicial entry of this Consent Judgment, the Consent Judgment Defendants shall pay the following respective amounts to the "LWD Incinerator Site

9

Trust Account" care of Gary D. Justis, The Justis Law Firm LLC, 10955 Lowell Ave., Suite 520, Overland Park, Kansas 66210-2336:

| | |
|---|---|
| GE | $ 112,477.00 |
| Bayer | $ 98,571.00 |
| Baker Hughes | $ 82,651.00 |
| PDC | $ 16,191.00 |
| Rail Services | $ 7,602.00 |
| Cycle Chem | $ 6,972.00 |
| Spirit Services | $ 6,751.00 |
| DLD | $ 5,414.00 |
| Perma-Fix | $ 3,436.00` |
| CBS | $ 3,263.00 |
| Ingersoll | $ 3,164.00 |
| Wheeler Lumber | $ 1,423.00 |

These payments represent each respective Consent Decree Settling Defendant's agreed-upon share of the Response Costs incurred by the LWD PRP Group through September 1, 2016. These payments take into account the benefit of all reimbursements to the LWD PRP Group through September 1, 2016 from the LWD Incinerator Site closure fund maintained by the Commonwealth of Kentucky, as more fully set forth in the definition of Response Costs.

28. The Consent Judgment Defendants shall also pay the following respective percentages of Response Costs incurred by the LWD PRP Group after September 1, 2016:

| | |
|---|---|
| GE | 1.8497% |
| Bayer | 1.6210% |
| Baker Hughes | 1.3592% |
| PDC | 0.2663% |
| Rail Services | 0.1250% |
| Cycle Chem | 0.1147% |
| Spirit Services | 0.1110% |
| DLD | 0.0890% |
| Perma-Fix | 0.0565% |
| CBS | 0.0537% |
| Ingersoll | 0.0520% |
| Wheeler Lumber | 0.0234% |

10

By May 1, 2017, the LWD PRP Group will provide each Consent Judgment Defendant with a statement for its respective share of Response Costs incurred by the LWD PRP Group from September 2, 2016 through December 31, 2016. Thereafter, by March 1 of each subsequent year, the LWD PRP Group will provide each Consent Judgment Defendant with an annual statement for its respective share of Response Costs incurred by the LWD PRP Group for the previous calendar year. Each annual statement shall itemize the Response Costs incurred by the LWD PRP Group for the time period covered by the invoice, along with the calculation of such Consent Judgment Defendant's share of such response costs based on its respective percentage as detailed in this Paragraph. Each annual statement will also itemize the vendor, invoice date, invoice number, invoice amount, and payment date for each Response Cost invoice incurred by the LWD PRP Group. The LWD PRP Group shall also provide copies of each Response Cost invoice and proof of payment of same with the annual statements issued to each Consent Judgment Defendant. Each Consent Judgment Defendant shall remit full payment for each annual statement it receives from the LWD PRP Group, to the listed payee and address recipient on each such annual statement, within sixty (60) days of its receipt of each such annual statement, unless a Consent Judgment Defendant disputes all or part of its annual statement and timely invokes the dispute resolution procedures in Section IV of this Consent Judgment.

29. A Consent Decree Defendant that fails to make any timely payments under Paragraph Nos. 27 or 28 herein agrees to pay interest at ten percent (10%) per annum until any such payment is made, unless a Consent Judgment Defendant disputes all or part of its annual statement and timely invokes the dispute resolution procedures in Section IV of this Consent Judgment.

11

30. The respective percentages for each Consent Judgment Defendant in Paragraph No. 28 are not subject to change under any circumstances, including, but not limited to, the contribution of any Response Costs incurred by the LWD PRP Group by any other person, entity or any other source. Notwithstanding the above, it is understood and agreed that each Consent Judgment Defendant will receive a credit for its respective *pro rata* share (based on its percentage share in Paragraph No. 28) of any future reimbursements to the LWD PRP Group after September 1, 2016 from the LWD Incinerator Site closure fund maintained by the Commonwealth of Kentucky, as more fully set forth in the definition of Response Costs.

## IV. DISPUTE RESOLUTION

31. Unless otherwise expressly provided for in this Consent Judgment, the dispute resolution procedures of this Section shall be the exclusive mechanism between the LWD PRP Group and Consent Judgment Defendants arising under or with respect to this Consent Judgment.

32. Any dispute which arises under or with respect to this Consent Judgment shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute.

33. If a dispute cannot be resolved through informal negotiations between the parties within thirty (30) days from the time the disputes arises, then the disputing party shall have an additional thirty (30) days to file an appropriate motion with the Court for ruling with respect to the dispute. In any such dispute, the party that substantially prevails in the dispute shall be

entitled to costs and attorneys' fees incurred in connection with the dispute, running from the date of filing the Notice of Dispute.

## V. RELEASES

34. Plaintiff and each Consent Judgment Defendant have agreed, in consideration for the terms provided herein, to mutually release each other for all Covered Matters as defined herein. These mutual releases will be effective upon judicial entry of this Consent Judgment, and shall remain in effect as long as the parties continue to comply with all terms of this Consent Judgment.

35. Nothing in this Consent Judgment is intended to release the liability in any way at the LWD Incinerator Site of any person or private or public entity that is not a party to this Consent Judgment.

36. The parties to this Consent Judgment agree that compliance with the terms of this Consent Judgment shall satisfy the claims and remedies of the parties to this Consent Judgment against one another only and that Plaintiff intends to reserve and pursue all claims and actions against non-participants to this Consent Judgment.

37. Each Consent Decree Defendant agrees that it is accepting responsibility only for only the persons and entities included in its respective definition in this Consent Decree.

38. Each party to this Consent Judgment expressly reserves the right to take such actions as against any other party to this Consent Judgment as may be necessary to enforce this Consent Judgment.

## VI. OTHER TERMS

39. This Court retains jurisdiction for the duration of this Consent Judgment to enforce its terms. The parties may jointly seek to modify the terms of this Consent Judgment,

13

subject to the approval of this Court. This Consent Judgment may be modified only by order of this Court.

40. The Effective Date of this Consent Judgment shall be the date on which the Consent Judgment has been entered by the Court and has become final and non-appealable. An order entering the Consent Judgment shall be deemed final and non-appealable for this purpose if there is no party with a right to appeal the order on the day it is entered.

41. This Consent Judgment shall remain in full force and effect until all of Plaintiff's obligations at the LWD Incinerator Site under the Kentucky Agreed Order and any and all Future Orders at the LWD Incinerator Site have been completed and all Consent Judgment Defendants have fulfilled all their payment and other obligations under this Consent Judgment.

42. Each party to this Consent Judgment shall bear its own attorney's fees and costs associated with this litigation.

43. Nothing in this Consent Judgment shall relieve Plaintiff or any Consent Judgment Defendant of their obligations to comply with applicable state and federal law.

44. This Consent Judgment shall be binding upon the successors and assigns of each party to this Consent Judgment. No assignment or delegation by a party to this Consent Judgment of its obligations under this Consent Judgment or of this Consent Judgment will release the assigning party without the prior written consent of the opposing party and an appropriate Order from this Court.

45. Each party to this Consent Judgment represents that it has sought and obtained any appropriate legal advice it deems necessary prior to entering into this Consent Judgment.

46. The parties to this Consent Judgment warrant to each other that all necessary authorizations and all other actions have been taken such that execution, delivery and

14

performance of this Consent Judgment and all other actions taken or to be taken in connection with this Consent Judgment have been fully authorized.

47. All written communications to each party to this Consent Judgment shall be sent to the following respective designated representative(s) for each party to this Consent Judgment.

As to Plaintiff:

Gary D. Justis
The Justis Law Firm LLC
10955 Lowell Ave.
Suite 520
Overland Park, KS 66210-2336
(913) 955-3712
gjustis@justislawfirm.com

and

Patricia T. Barmeyer, Esq.
Amelia S. Magee, Esq.
King & Spalding LLP
1180 Peachtree Street, NE
Atlanta, GA 30309
(404) 572-3562 Patricia
(404) 572-3357 Amy
PBarmeyer@kslaw.com
AMagee@kslaw.com

As to Baker Hughes:

Dina C. Kuykendall
Director of Environmental Affairs
Health Safety & Environmental
(713 439-8789
dina.kuykendall@bakerhughes.com

15

As to Bayer:

Chintan K. Amin
Senior Counsel
HSE Law and Governance
Bayer U.S. LLC
100 Bayer Road
Building 14
Pittsburgh, Pennsylvania 15205
(412) 777-2715
chintan.amin@bayer.com

As to CBS:

William D, Wall
Vice President, Senior Counsel
CBS Corporation
20 Stanwix Street
Pittsburgh, PA 15222
(412) 642-3580
william.wall@cbs.com

As to Cycle Chem:

Terry Earnest
Vice President Treatment and Disposal Services
Cycle Chem, Inc.
550 Industrial Drive
Lewisberry, PA 17339
(717) 938-4700
TEarnest@acvenviro.com

As to DLD:

Mr. Brent Walter
President
Drug & Laboratory Disposal, Inc.
331 Broad Street
Plainwell MI 49080
(269) 685-9824
bwalter@dld-inc.com

16

As to GE:

Kirk R. Macfarlane
Executive Counsel – Property and Risk Management
Global Operations, Environment, Health & Safety
GE
640 Freedom Business Center
King of Prussia, PA 19406
(610) 566-7976
kirk.macfarlane@ge.com

As to Ingersoll:

Michael Goldstein
Ingersoll Rand Company
800 Beaty Street, Building E
Davidson, NC  28036
(704) 724-3805
Michael.Goldstein@irco.com

As to PDC :

Ron Welk
Peoria Disposal Company
P.O. Box 9071
Peoria, Illinois 61612-9071
(309) 688-0760
RWelk@pdcarea.com

As to Perma-Fix:

Legal Department
Attention: Scott Ellis
2800 Solway Road
Knoxville, TN 37931
(865) 251-2091
sellis@perma-fix.com

As to Rail Services:

Shawn Holt
Rail Services, Inc.
PO Box 35
Calvert City, KY  42029
(270) 395-8326
shawnholt@rsiky.com

17

As to Spirit Services:

Van Dyne Crotty dba Spirit Services Co. of Ohio
Larry Wright
2150 Fairwood Avenue
Columbus, OH 43228
(614) 684-0048 Ext. 356
lwright@getspirit.com

As to Wheeler Lumber:

Timothy Blount
Wheeler Consolidated, Inc.
3620 SW 61st Street, Suite 330
Des Moines, IA 50321-2419
(515) 223-1861
tblount@wheeler1892.com

Any party to this Consent Judgment that changes its designated notice recipient(s) shall notify all other parties to this Consent Judgment in writing and file the appropriate pleading with the Court.

48. This Consent Judgment embodies the entire agreement and understanding of the parties to this Consent Judgment with respect to the subject matter herein, and supersedes any and all prior agreements, arrangements and understandings entered into with respect to the subject matter herein.

SO ORDERED this March 31, 2017

**Greg N. Stivers, Judge**
**United States District Court**

18

For Plaintiff:

*/s/* Gary D. Justis
Gary D. Justis             admitted *pro hac vice*
Rachel D. Guthrie          admitted *pro hac vice*
Matthew T. Merryman        admitted *pro hac vice*
THE JUSTIS LAW FIRM LLC
10955 Lowell Ave.
Suite 520
Overland Park, KS  66210-2336
Telephone:  (913) 955-3712
Facsimile:  (913) 955-3711
Email:  gjustis@justislawfirm.com
        rguthrie@justislawfirm.com
        mmerryman@justislawfirm.com

and

W. Fletcher McMurry Schrock (Ky. Bar# 62283)
MCMURRY & LIVINGSTON, PLLC
201 Broadway
P.O. Box 1700
Paducah, Kentucky  42002-1700
Telephone: (270) 443-6511
Facsimile: (270) 443-6548
Email:  fletch@ml-lawfirm.com


For Consent Judgment Defendants:

/s/ Nicholas M. Holland
Nicholas M. Holland
WHITLOW, ROBERTS, HOUSTON & STRAUB, PLLC
300 Broadway
P.O. Box 995
Paducah, Kentucky 42002-0995
Telephone: (270) 443-4516
Facsimile: (270) 442-1712
Email:  nholland@whitlow-law.com

19